1 | Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
2 | Kerry A. Moynihan, State Bar No. 250571
kerry@kamlegal.com
3 | **WEILAND GOLDEN GOODRICH LLP**
650 Town Center Drive, Suite 600
4 | Costa Mesa, California 92626
Telephone:    (714) 966-1000
5 | Facsimile:    (714) 966-1002

6 | Attorneys for Chapter 7 Trustee
Thomas H. Casey

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SANTA ANA DIVISION**

11 | In re

12 | ICE ENERGY HOLDINGS, INC., a
Delaware corporation,

13 | Debtor.

Case No. 8:19-bk-14865-MW

Chapter 7

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:**

(1) **APPROVING ASSET PURCHASE
AGREEMENT AND AUTHORIZING SALE OF
DEBTOR'S ASSETS FREE AND CLEAR OF
LIENS, CLAIMS AND INTERESTS PURSUANT
TO 11 U.S.C. § 363(b) AND (f);**
(2) **APPROVING COMPROMISE OF SECURED
CREDITOR'S CLAIM PURSUANT TO F. R.
BANKR. PROC. 9019;**
(3) **REJECTING OR ASSUMING AND ASSIGNING
CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES;**
(4) **APPROVING BUYER, SUCCESSFUL BIDDER,
AND ANY BACK-UP BIDDERS, AS GOOD-
FAITH PURCHASERS PURSUANT TO
11 U.S.C. § 363(m);**
(5) **AUTHORIZING PAYMENT OF UNDISPUTED
LIENS AND OTHER ORDINARY COSTS OF
SALE, EXCEPT AS TO PURPORTED JUNIOR
SECURED CREDITORS**

**MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATIONS OF THOMAS H. CASEY IN
SUPPORT**

DATE:    **February 19, 2020**
TIME:     **9:00 a.m.**
PLACE:    **Courtroom 6C**
              **411 W. Fourth Street**
              **Santa Ana, CA 92701**

*Sidebar (vertical text):* **Weiland Golden Goodrich LLP** | 650 Town Center Drive, Suite 600 | Costa Mesa, California 92626 | Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTS ................................................................................................................2

    A.    Procedural Background ..............................................................................2

    B.    The Debtor's Business ...............................................................................3

    C.    Secured Claim of Buyer's Subsidiary, Ice Bear ...........................................4

    D.    Proposed Sale ..........................................................................................4

    E.    Marketing and Value of the Property ..........................................................9

    F.    Liens, Claims, and Interests ......................................................................9

III.  RESERVATION OF RIGHTS ..............................................................................10

IV.   PROPOSED OVERBID PROCEDURE .................................................................10

V.    MEMORANDUM OF POINTS AND AUTHORITIES ..............................................11

    A.    The Compromise of the Secured Claim is Fair and Equitable ....................11

    B.    The Sale is in the Best Interest of the Estate and Should be
Approved ................................................................................................13

    C.    The Trustee May Sell the Property Free and Clear of Liens,
Claims and Interests ...............................................................................15

    D.    The Court Should Authorize the Trustee to Assume and Assign
or Reject the Executory Contracts Listed in Exhibit B to the
Agreement ..............................................................................................16

    E.    Adequate Notice of the Sale is Proposed .................................................17

    F.    The Buyer of the Property Should be Deemed a "Good Faith
Purchaser" Pursuant to 11 U.S.C. § 363(m) .............................................17

    G.    The Trustee Should be Authorized to Make Distributions of the
Sale Proceeds to Secured Creditors with Allowed, Undisputed
Claims, Except as to the Purported Junior Secured Claims ......................18

VI.   THE WAIVER OF THE STAY IS APPROPRIATE .................................................19

VII.  CONCLUSION ..................................................................................................19

DECLARATION OF THOMAS CASEY ........................................................................21

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

i

TABLE OF AUTHORITIES

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

## CASES

4

*Community Thrift & Loan v. Suchy (In re Suchy),*
     786 F.2d 900 (9th Cir. 1985) ................................................................ 16

*Ewell v. Diebert (In re Ewell),*
     958 F.2d 276 (9th Cir. 1992) ................................................................ 16

*Garrett v. Coast & S. Fed. Sav. & Loan Assn.,*
     9 Cal. 3d 731 (1973) ............................................................................ 14

*In re 240 North Brand Partners, Ltd.,*
     200 B.R. 653 (B.A.P. 9th Cir. 1996) ............................................... 10, 11

*In re Abbotts Dairies of Pennsylvania, Inc.,*
     788 F.2d 143 (3d Cir. 1986) ................................................................. 16

*In re America West Airlines,*
     166 B.R. 908 (Bankr. D. Ariz. 1994) .................................................... 10

*In re Crown Corporation,*
     679 F.2d 774 (9th Cir. 1982) ................................................................ 17

*In re DWS Investments, Inc.,*
     121 B.R. 845 (Bankr. C.D. Cal. 1990) ................................................. 15

*In re Ernst Home Center, Inc.,*
     209 B.R. 974 (Bankr. W.D. Wash. 1997) ............................................ 11

*In re Lionel Corp.,*
     722 F.2d 1063 (2d Cir. 1983) ............................................................... 10

*In re Onouli-Kona Land Co.,*
     846 F.2d 1170 (9th Cir. 1988) .............................................................. 16

*In re Vest Assocs.,*
     217 B.R. 696 (Bankr. S.D.N.Y. 1998) .................................................. 15

*In re Walter,*
     83 B.R. 14 (B.A.P. 9th Cir. 1988) ........................................................ 11

*In re Wilde Horse Enterprises, Inc.,*
     136 B.R. 830 (Bankr. C.D. Cal. 1991) ................................................. 11

*Ridgley v. Topa Thrift & Loan Ass'n,*
     17 Cal. 4th 970 (1998) ......................................................................... 14

## STATUTES

11 U.S.C. § 363(b) ....................................................... 1, 10, 11, 19, 22, 27

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

11 U.S.C. § 363(b)(1) ...................................................................................... 17

11 U.S.C. § 363(f) .............................................................. 1, 9, 12, 19, 22, 27

11 U.S.C. § 363(h) ........................................................................................ 19

11 U.S.C. § 363(m) .......................................................... 1, 16, 17, 19, 22, 27

## OTHER AUTHORITIES

Federal Rule of Bankruptcy Procedure 9019(a) ............................................. 19

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

iii

TABLE OF AUTHORITIES

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, DEBTOR'S COUNSEL, AND ALL INTERESTED PARTIES:**

Thomas H. Casey, the Chapter 7 trustee (the "Trustee") of the estate (the "Estate") of Ice Energy Holdings, Inc. (the "Debtor") submits the *Chapter 7 Trustee's Motion for Order: (1) Approving Asset Purchase Agreement and Authorizing Sale of Debtor's Assets Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Compromise of Secured Creditor's Claim Pursuant to Federal Rule of Bankr. Procedure 9019; (3) Rejecting or Assuming and Assigning Certain Executory Contracts and Unexpired Leases; (4) Approving Buyer, Successful Bidder, and any Back-Up Bidders, as Good Faith Purchasers Pursuant to 11 U.S.C. § 363(m); and (5) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion").  In support of the Motion, Trustee submits the following memorandum of points and authorities and his declaration (the "Casey Declaration").

## I.    INTRODUCTION

By this Motion, Trustee requests approval of an asset purchase agreement (the "Agreement") entered into between Trustee, on the one hand, and ACP Thule Investments, LLC ("Buyer") and Ice Bear SPV #1, LLC ("Ice Bear"), a wholly owned subsidiary of Buyer, on the other hand.  Prior to the Petition Date, the Debtor was in the business ("Business") of developing, manufacturing, distributing, installing, and maintaining specialized Ice Bear Units ("Units"), which generally operate alongside commercial heating, ventilating, and air conditioning units ("HVACs") sourced by Debtor from a third-party manufacturer. The Units are designed to significantly reduce utility costs by using electricity purchased at lower "off-peak" nighttime utility rates to cool refrigerant and create ice for daytime use in large commercial and industrial air conditioning applications.

A true and correct copy of the Agreement, including its Exhibits, is attached as Exhibit "1" to this Motion.  The Agreement provides for the sale ("Proposed Sale") to

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Buyer, subject to overbid by other prospective purchasers, all rights, titles and interests of the Estate in and to substantially all personal property (tangible and intangible), owned, leased, used or held by Debtor prior to the Petition Date in connection with the Business, (the "Sale Assets"[1]), including: (1) inventory, finished goods, work in progress, materials, parts, supplies, equipment, shipping materials, patents, trademarks, copyrights, licenses, technologies, marketing materials, intellectual property, packaging materials and open purchase orders ("Business Assets"), as more particularly described on Exhibit "A" to the Agreement; (2) the real property leases ("Assigned Leases") described on Exhibit "B" to the Agreement; and (3) the executory contracts, if any, ("Assigned Contracts") described on Exhibit "C" attached to the Agreement; but **not** any Excluded Assets or Excluded Liabilities as defined in the Agreement, for the purchase price ("Purchase Price") of $3,500,000.00, plus release of Buyer and Ice Bear, effective upon the closing of the Proposed Sale ("Closing"), of all unsecured Claims held by them against the Estate, as a sale and conveyance free and clear of Liens and Interests pursuant to 11 U.S.C. §§ 363(b) and (f).

As discussed herein, Trustee believes the Purchase Price represents fair value for the Sale Assets, and that the Agreement and Proposed Sale are reasonable and in the best interest of the Estate. Moreover, pursuant to the Agreement, in addition to the Purchase Price, the Estate will retain certain assets, including cash and cash equivalents, and will be entitled to receive 30% of the net proceeds, if any, obtained on account of certain Claims held by the Estate that Buyer and Ice Bear have represented to Trustee may have value over and above the cost of pursuing such Claims for the shared benefit of Buyer and the Estate. Buyer is also waiving its right to any recovery on account of an alleged unsecured claim.

---

[1] All terms as defined in the Agreement are incorporated herein by this reference.

MOTION FOR SALE OF DEBTOR'S ASSETS

## II.    FACTS

### A.    Procedural Background

On December 17, 2019, Debtor filed a voluntary skeletal petition for relief under Chapter 7 of Title 11 of the United States Code. Thomas H. Casey was duly appointed as the Chapter 7 Trustee. On December 30, 2019, Debtor filed its Schedules and Statement of Financial Affairs.

### B.    The Debtor's Business

Debtor is a corporation organized under the laws of the State of Delaware with its principal place of business in California. Prior to the Petition Date, the Debtor developed, manufactured, distributed, installed, and maintained specialized the Units, with each being paired with one or more HVAC Units sourced by Debtor from a third-party manufacturer. The Units are designed to significantly reduce utility costs by using electricity purchased at lower "off-peak" nighttime utility rates to cool refrigerant and create ice for daytime use in large commercial and industrial air conditioning applications. Ice Bear was Debtor's largest customer.

In or about June 2018, Debtor entered into a Master Goods and Services Agreement ("MGSA") with Ice Bear, a wholly owned subsidiary of Buyer, pursuant to which Debtor was to manufacture, install, and deliver all goods and services that Ice Bear required in order to perform under various agreements between Ice Bear and Southern California Edison ("SCE") ("Energy Service Agreements" or "ESAs"), including, but not limited to, customer acquisition, manufacturing and installation of the Ice Bear Units, and post-installation inspections, maintenance, and repairs.

Debtor's Schedules list potentially significant assets. In addition to approximately $110,000 in cash, some or all of which might be encumbered, Debtor listed numerous assets, including:

- Inventory of a total value in excess of $11 million, consisting of approximately $6 million in Ice Bear Units, $4.4 million in "Installation and Service Parts", and $771,000 for Ice Bear Units "needing rework";

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

- Various intellectual property, namely 16 US patents and 32 international patents, valued at $9.4 million;

- Various machinery valued at approximately $215,000.

### C.   Secured Claim of Buyer's Subsidiary, Ice Bear

In or about February 5, 2016, Debtor and DHN Capital, LLC dba Nations Interbanc ("Nations") entered into a factoring and security agreement pursuant to which Nations agreed to provide Debtor with up to $1,000,000 of funding, secured by all of the Debtor's assets.  On or about February 10, 2016, Nations perfected its security interest in all of the Debtor's assets by filing a UCC Financing Statement with the Delaware Department of State as Document No. 2016 0811040.

In or about December 2019, Ice Bear purchased Nations' claim, and on December 17, 2019, Ice Bear recorded a UCC-3 Statement amending the UCC Financing Statement to reflect Ice Bear as the secured party. Ice Bear asserts the current amount of its secured claim is $1,297,665.49 ("Secured Claim").

However, on or about October 9, 2019, Ice Bear recorded additional UCC financing statements in Delaware and California, which Debtor asserts were unauthorized and not supported by any underlying security agreement ("Unauthorized UCCs"). As part of the Sale Agreement, immediately following execution, Ice Bear is required to immediately release and terminate the Unauthorized UCCs, regardless of whether Buyer is the Successful Purchaser.

### D.   Proposed Sale

By this Motion, Trustee seeks approval of the Agreement and the Proposed Sale of all right, title and interest of the Estate in and to the Sale Assets, including as more fully described in the Agreement: (1) inventory, finished goods, work in progress, materials, parts, supplies, equipment, shipping materials, patents, trademarks, copyrights, licenses, technologies, marketing materials, intellectual property, packaging materials and open purchase orders ("Business Assets"), as more particularly described on Exhibit "A" to the Agreement; (2) the real property leases ("Assigned Leases") described on Exhibit "B" to

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

the Agreement; and (3) the executory contracts, if any, ("Assigned Contracts") described on Exhibit "C" attached to the Agreement; but **not** any Excluded Assets or Excluded Liabilities, as defined in the Agreement.  Casey Decl., Ex. "1."

The salient terms of the compromise and Sale Agreement are as follows:

1.    The Agreement is contingent upon Bankruptcy Court approval of this Motion and the Agreement, as well as the Bidding Procedures, Break-Up Fee and Expense Reimbursement.  If Court approval is not received by February 28, 2020, the Parties may, but are not required to, rescind the Agreement such that it will have no binding effect on the Parties.

2.    The Purchase Price of the Sale Assets consists of the following:

a.    Buyer's assumption of the Assigned Liabilities;

b.    Buyer's obligations under the Trust Agreement;

c.    Buyer and Ice Bear's waiver of the Conditionally Waived Unsecured Claims, as set forth in Section 3.7 of the Agreement;

d.    Buyer's payment of Cure Costs pursuant to Section 3.4;

e.    The Carve-Out, as described in Section 5.4; and

f.    Payment of $3,500,000, comprised and payable by Buyer to Seller as follows, and subject to overbid:

i.    On or prior to on the Execution Date, the Initial Deposit in the amount of $350,000.00, by way of cashier's check;

ii.    A credit bid of Buyer Secured Claim, as defined in the agreement, in the amount of $1,297,665.49; and

iii.    Prior to or at Closing, the Final Deposit of $1,852,334.51.

3.    The sale of the Sale Assets is subject to overbid, and the specific procedures for overbidding shall be determined by the Bankruptcy Court in advance of the hearing on this Sale Motion in its Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order;

4.    Under the terms set forth in the Agreement, Buyer's Secured Claim will be

MOTION FOR SALE OF DEBTOR'S ASSETS

1   deemed allowed in the amount of $1,297,665.49 and secured as a first priority lien against

2   all assets pledged by Debtor to secure the Secured Claim, and shall be credit bid in its

3   entirety toward the Purchase Price and deemed satisfied and paid;

4       5.      As set forth more specifically in the Agreement and in the Trust Motion filed

5   concurrently herewith, Buyer shall i) take immediate possession of the Trust HVACS, and

6   thereafter hold the Trust HVACS, in trust, for the benefit of the Estate, pending the Closing

7   or the consummation of an Alternative Transaction, ii) cause those Trust HVACS to be

8   removed from the Trust Premises before the Trust Removal Deadline, iii) use

9   commercially reasonable good faith best efforts to properly, safely and securely store the

10  Trust HVACS pending the Closing or consummation of an Alternative Transaction, iv)

11  advance payment to the Trust Premises Lessor; v) and maintain liability insurance in

12  accordance with the Agreement;

13      6.      Notwithstanding the foregoing, Buyer is may directly pay any Ordinary

14  Course Expenses reasonably necessary to preserve and maintain the Sale Assets,

15  including any moving, storage, security service, utility costs, rents, and internet service

16  provider fees, not otherwise paid by Buyer under the Trust Agreement;

17      7.      Trustee may utilize the Initial Deposit to fund the payment by the Estate of

18  any Ordinary Course Expenses, with the prior written consent of Buyer, and in the event

19  any portion of the Initial Deposit is used by Trustee to pay any expenses payable by Buyer

20  under the Agreement, Buyer will promptly replace the portion of the Initial Deposit so

21  applied, which replacement will not reduce or be credited toward the payment of the

22  Purchase Price;

23      8.      As set forth in the Agreement, any and all cure payments or adequate

24  protection payments will be paid by Buyer; provided however, that in the event of an

25  Alternative Transaction, Buyer will be entitled to include any adequate protection

26  payments in Buyer's Expense Reimbursement;

27      9.      In the event the Sale is terminated on account of Buyer's default, Trustee

28  and the Estate are entitled to keep and retain the entire Initial Deposit in the amount of

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

$350,000 as liquidated damages, and Buyer's Secured Claim will be subject to the Carve-Out set forth in <u>Section 5.4</u>;

10.     As set forth in Section 3.7 of the Agreement, effective upon Closing, Buyer and Ice Bear waive any right to recovery from the Estate, including any recovery on account of the Conditionally Waived Unsecured Claims;

11.     if Buyer is the successful purchaser, effective upon Closing, Trustee and the Estate shall be deemed to have waived and released their claims against Buyer and Ice Bear, and Buyer and Ice Bear shall be deemed to have waived any claims against the Debtor, Trustee, and the Estate;

12.     Buyer shall release, terminate and otherwise remove from record its separate UCC Financing Statements recorded with the California Secretary of State on October 19, 2019 and with the Delaware Department of State on October 9, 2019;

13.     The Sale is "as is, where is," and free and clear of all liens and interests pursuant to 11 U.S.C. § 363(b) and (f);

14.     Trustee requests that the Court determine Buyer to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m);

15.     The Sale is subject to Bankruptcy Court approval and entry of a Final Order granting this Motion;

16.     The leases described in Exhibit B and the executory contracts, if any, described in Exhibit C, shall be assumed and assigned pursuant to 11 U.S.C. § 365(a), and Buyer shall have thirty (30) days to designate any executory contracts as assumed and assigned or as excluded, and designate any other Excluded Assets and Excluded Liabilities;

17.     Certain leases described in Exhibit C shall be rejected pursuant to Section 11 U.S.C. § 365;

18.     Upon Notice of request by Seller, Buyer will fund the cost, not to exceed $100,000.00 absent Buyer's further written approval ("Investigation Payment"), of Seller's

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  investigation of potential claims against Debtor's current and former directors and officers

2  (or related insurance) ("D&O Claims");

3      19.    The Purported Junior Secured Claims will be subject to the proof of claim

4  filing requirements established in the Bankruptcy Case. If the Seller does not contest a

5  Purported Junior Secured Claim or the related liens within thirty (30) days of the filing of

6  that proof of claim, Buyer and Ice Bear have standing to do so; however, if within ninety

7  (90) days of the proof of claim filing, no objection or challenge has been made, the

8  Purported Junior Secured Claim will be deemed allowed and the holder will be entitled to

9  its share of the Sale proceeds. The Sale proceeds that would go to pay the Purported

10  Junior Secured Claims shall be held in escrow pending resolution of the Purported Junior

11  Secured Claims as set forth in the Agreement;

12      20.    If the Purported Junior Secured Claims are not allowed, any Sale proceeds

13  that would otherwise be payable to Purported Junior Secured Claims shall first be used to

14  reimburse Buyer for the Investigation Payment (if any and to the extent not already

15  reimbursed), and then any remaining amount shall be distributed 70% to Ice Bear and

16  30% to the Estate;

17      21.    Similarly, any proceeds of D&O Claims shall first be used to reimburse

18  Buyer for the Investigation Payment (if any and to the extent not already reimbursed), and

19  then any remaining amount shall be distributed 70% to Ice Bear and 30% to the Estate;

20      22.    As set forth in the Bidding Procedures, Break-Up Fee and Expense

21  Reimbursement Procedures, and subject to approval of the Bankruptcy Court, in the event

22  that Buyer is not in breach or default of the Agreement, and an Alternative Transaction is

23  consummated, then Trustee will pay to Buyer, solely from the proceeds of the Sale, as

24  consideration for Buyer having incurred the costs of submitting a "stalking horse" offer and

25  negotiating and executing the Agreement, the cash sum of $105,000.00 (the "Break-Up

26  Fee") or such lesser sum as may be approved by the Bankruptcy Court, and Buyer's

27  Expense Reimbursement, if and as approved by the Bankruptcy Court.

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

8

MOTION FOR SALE OF DEBTOR'S ASSETS

1   23.   Seller agrees not to raise through Closing, and to waive effective upon

2   Closing, any claims, including Avoidance Claims, against customers or vendors of the

3   Business, including Crucial Vendors;

4   24.   Releases as set forth in the Agreement;

5   The complete terms of the Agreement are set out in the *Asset Purchase*

6   *Agreement* attached as Exhibit "1."

7   **E.    Marketing and Value of the Property**

8   Based on the nature of the Debtor's assets, Trustee believes that the proposed

9   Sale, with the opportunity for overbid, is in the best interest of the Estate and will result in

10   the highest and best recovery for the Estate.  Trustee and his counsel have engaged in

11   extensive conversations with at least two potential purchasers for the Debtor's assets, and

12   Trustee continues to encourage interest in the assets and solicit other potential

13   purchasers to submit overbids. Based on the interest in the Property, Trustee determined

14   that it would be possible to sell the Property without the services of a broker, thus saving

15   the Estate unnecessary administrative expenses.

16   Moreover, Trustee is conscious of the fact that any substantial delay in the sale

17   process may likely result in the loss of Buyer's offer. As set forth herein, the Ice Bear Units

18   were manufactured, and the HVACs ordered, specifically to meet the requirements of Ice

19   Bear's ESAs, and are not as readily marketable or easily liquidated as the HVAC Units.

20   Moreover, Buyer asserts Ice Bear holds a significant unsecured claim against the Estate,

21   which is being waived as part of the Agreement with Buyer.

22   Under the circumstances, given the nature and specialization of certain of the

23   Debtor's assets, the reason for Buyer's interest in the Sale Assets, and the current lack of

24   unencumbered funds for the Estate to protect and preserve the Debtor's assets, Trustee

25   believes that a prolonged marketing period is not in the best interests of the Estate. This

26   expeditious sale is the best chance of recovery for unsecured creditors. Other potential

27   buyers have been informed that they will have an opportunity to overbid.  *See* Casey

28   Declaration.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

9                                    MOTION FOR SALE OF DEBTOR'S ASSETS

**F.     Liens, Claims, and Interests**

Trustee seeks to sell the Property free and clear of any and all liens, claims, and interests.  Trustee conducted a search of public records with the California and Delaware Secretary of State, which revealed the following UCC filings ("Liens"):

| Date | Secured Party | State | Filing No. | Status/Comments/Amount |
|------|---------------|-------|-----------|------------------------|
| 02/10/16 | Ice Bear SPV #1 (previously DHN Capital, LLC) | DE | 2016 0811040 2019 9004560 | Assignment recorded 12/17/2019 $1,297,665.49 |
| 04/21/17 | Diane Stewart | DE | 2017 2633136 | Scheduled as $457,780.00 |
| 05/03/17 | Royal Bank America Leasing, LP | DE | 2017 2910468 | Not scheduled. Debtor believes this lien was paid in full. Any claim secured by certain tooling equipment |
| 01/02/18 | Secured Lender Solutions, LLC | DE | 2018 0041836 | Scheduled as $3,932.94 |
| 10/19/19 10/09/19 | Ice Bear SPV #1 | CA DE | 19-7739635585 2019 7067171 | Disputed by Debtor as unauthorized filings – Ice Bear/ Buyer to terminate per Agreement |
| 12/16/19 | Joseph Draper | CA DE | 19-7752285268 2019 8956562 | Estimated at $105,000 |
| 12/16/19 | David Heatley | CA DE | 19-7752285400 2019 8956786 | Estimated at $250,000 |
| 12/16/19 | Minakami Trust | CA DE | 19-7752285521 2019 8956968 | Estimated at $300,000 |
| 12/16/19 | Voyager Ocean Ltd | CA DE | 19-7752285763 2019 8957131 | Estimated at $35,000 |
| 12/16/19 | David Zezza | CA DE | 19-7752285884 2019 8957214 | Estimated at $375,000 |

A copy of the UCC searches for California and Delaware are attached as Exhibit "2."  *See* Casey Declaration.

**III.     RESERVATION OF RIGHTS**

Except as set forth in the Sale Agreement, Trustee reserves the right to object to all or any portion of each and every claim or encumbrance that has been or will be asserted against the Property.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

1  **IV.    PROPOSED OVERBID PROCEDURE**

2      Trustee filed, concurrently herewith, a separate motion for approval of bidding

3  procedures ("Bidding Procedure Motion"), which was set for hearing pursuant to the Local

4  Rules on seven (7) days' notice. The Sale shall be conducted according to the order on

5  the Bidding Procedure Motion.

6

7  **V.     MEMORANDUM OF POINTS AND AUTHORITIES**

8      **A.     The Compromise of the Secured Claim is Fair and Equitable**

9      Inherent in the grant of jurisdiction over civil proceedings arising under, arising in or

10  related to cases under Title 11 is the Court's authority, under Section 105(a) of the

11  Bankruptcy Code, to enter orders approving compromises.  This power is expressly

12  recognized in the Federal Rules of Bankruptcy Procedure 9019(a), which provides that a

13  court may approve a compromise or settlement after notice is provided under Rule 2002.

14  Approval of the compromise is a 'core proceeding' under 28 U.S.C. Section 157(b)(2)(A)

15  and (O).  Lastly, Section 323 of the Bankruptcy Code authorizes Trustee to compromise a

16  controversy.

17      The approval or rejection of a proposed compromise is within the discretion of the

18  Court and is to be determined by the particular circumstances of each case.  *See U.S.A.*

19  *v. Alaska Nat'l Bank of the North (In re Walsh Constr. Inc.)*, 669 F.2d 1325, 1328 (9th Cir.

20  1982).  The burden of establishing the fairness of the compromise rests on the proponent.

21  The Movant is required to demonstrate that legal evaluations have been made by counsel

22  experienced in such matters and that sufficient investigation has been conducted to

23  enable such counsel to make an informed decision.  *See Feder v. Harrington*, 58 F.R.D.

24  171, 174-75 (S.D.N.Y. 1972).  Trustee satisfies his burden in this case.

25      In determining the acceptability of a proposed compromise, the following four

26  factors should be considered:

27      (a)    The probability of success in the litigation;

28      (b)    The difficulties if any to be encountered in the matters of collections;

MOTION FOR SALE OF DEBTOR'S ASSETS

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1      (c)     The complexity of the litigation fault; and the expense, inconvenience and

2   delay necessarily attending it; and

3      (d)     The paramount interest of the creditors and the proper deference to their

4   reasonable views.  *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th

5   Cir. 1986).

6      This Court is not required to decide the questions of law and fact in dispute, but

7   instead to canvas the issues to see whether the "settlement falls below the lowest point in

8   a range of reasonableness."  *Anaconda-Ericsson Inc. (In re Teletronics Servs., Inc.)*, 762

9   F.2d 185, 189 (2d Cir. 1983).  When applying the standards, "the Court must consider the

10  principle that 'law favors compromise.'" *In re Carson,* 82 B.R. 847, 853 (Bankr. S.D. Ohio

11  1994) (citations omitted).

12     Applying these standards to the instant case, the compromise should be approved

13  as reasonable and in the best interests of the Estate. First, Trustee has no evidence that

14  the validity of Buyer's Secured Claim is in dispute. The Debtor did not list Buyer's Secured

15  Claim as disputed, contingent or unliquidated and has not indicated to Trustee that

16  Buyer's Secured Claim is not owed. In addition, Ice Bear has provided Trustee with the

17  underlying Factoring Agreement dated February 2016 supporting Buyer's Secured Claim,

18  evidence of perfection of the security interest, a copy of the agreement pursuant to which

19  Ice Bear purchased the Secured Claim, and a recorded assignment of the UCC financing

20  statement. *See* Casey Decl., Exs. 3-6.

21     As for any claims against Buyer or Ice Bear, Trustee is informed and believes that it

22  will be time consuming and fact intensive to prove any claims and to disprove any

23  asserted defenses, and further believes that Trustee would incur additional costs in

24  attempting to recover any judgment against Ice Bear or Buyer, such that the claims are

25  not likely to yield a significant value for the Estate. Moreover, as part of the Agreement,

26  upon Closing of the Sale of Assets to Buyer, Buyer has agreed to conditionally waive any

27  unsecured claim it may have against the Estate, such that the proceeds of the Sale

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

1  remaining after payment of secured and administrative claims will be paid to other

2  unsecured creditors, without Buyer sharing in the recovery.

3       In addition, the settlement also eliminates any risk or burden that the Sale Assets

4  may cause to the Estate. The Estate is incurring administrative costs for rent and utilities

5  at the various warehouses at which the Sale Assets are stored, and the estate does not

6  have sufficient funds to cover these costs. Buyer is assuming those costs pending the

7  Closing of the Sale of the Assets.

8       Upon review of all these different factors, including the risks attendant with

9  litigation, Trustee has agreed to settle the amount of the Secured Claim as part of the sale

10  of the Sale Assets, and permit Buyer to credit bid the Secured Claim toward the Purchase

11  Price.

12       The settlement resolves any and all claims and controversies between the parties,

13  disallows any additional claims of Buyer or Ice Bear against the Estate, including its

14  alleged general unsecured claim (which it claims is in excess of $39 million) and includes

15  a mutual release.  Accordingly, Trustee believes that this compromise represents a

16  reasonable settlement of the matter and it is in the best interest of the creditors of the

17  Estate.

18      **B.**    **The Sale is in the Best Interest of the Estate and Should be**

19            **Approved**

20       Pursuant to 11 U.S.C. § 363(b), a trustee may, with court approval, sell property of

21  the estate outside the ordinary course of business.  A proposed sale of estate property will

22  be approved if it is in the best interests of the estate, based on the facts and history of the

23  case.  *In re America West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994), citing *In re*

24  *Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).  A court has broad discretion to

25  authorize a sale under 11 U.S.C. § 363(b).  *See In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th

26  Cir. 1988); *See also In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993); *New Haven*

27  *Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2nd Cir. 1985); *Lionel*,

28  722 F.2d at 1069; *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390-91 (6th Cir. 1986).

MOTION FOR SALE OF DEBTOR'S ASSETS

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   Generally, courts will find that a proposed sale is in the best interests of the estate where

2   the trustee has a valid "business justification" for the proposed sale.  *See e.g.*, *Stephens*

3   *Indus., Inc.*, 789 F.2d at 390; *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr. S.D.

4   Ohio 1984).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for

5   abuse of discretion. *See In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988).

6       The proposed sale of the Sale Assets is supported by a valid business justification

7   and is in the best interest of the Estate. Certain of the Assets are not readily marketable,

8   and Trustee has not yet received any other written offers for the Assets, although Trustee

9   has had some interested parties and may continue to solicit prospective overbidders.

10  Moreover, as part of the sale of the Sale Assets, Buyer and Ice Bear will waive its

11  asserted unsecured claim, which they purport to be in excess of $39 million, thereby

12  lessening the pool of unsecured claims and increasing the share of recovery for the

13  remaining general unsecured claimants.

14      Trustee believes that the Purchase Price is reasonable. *See* Casey Declaration.

15  After accounting for the credit bid of Buyer's Secured Claim, and after payment of the

16  various secured claims, if allowed, and various administrative claims, Trustee anticipates

17  that the proceeds from the Proposed Sale are sufficient to make a meaningful distribution

18  to general unsecured creditors.

19      Moreover, in addition to purchasing the Assets, as part of the Agreement, Buyer

20  has agreed to fund an Investigation Payment of up to $100,000 for Trustee's expenses for

21  the investigation and the potential litigation of D&O Claims. This structure is such that

22  Buyer assumes the risk that the D&O Claims may not result in any recovery, but in the

23  event that there is a recovery, the Estate will be entitled to thirty percent (30%) of any

24  such recovery.

25      Finally, the Agreement provides that the purchase of the Assets is subject to

26  overbid, thereby ensuring that the Estate receives the highest and best price for the

27  Assets.  The Agreement is being proposed in good faith and is the result of extensive

28  arms-length negotiations.  There is no downside to the Estate or creditors by Trustee

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

14                                          MOTION FOR SALE OF DEBTOR'S ASSETS

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  entering into the Agreement.  Accordingly, Trustee believes the proposed sale is fair and

2  reasonable and within the proper exercise of his business judgment

3  **C.**    **The Trustee May Sell the Property Free and Clear of Liens,**

4  **Claims and Interests**

5  Trustee seeks authority to sell the Property free and clear of all liens and

6  encumbrances pursuant to 11 U.S.C. § 363(f) which provides:

7  The Trustee may sell property under subsection (b) or (c) of
   this section free and clear of any interest in such property of an
8  entity other than the estate, only if –

9  (1)    applicable nonbankruptcy law permits sale of
   such property free and clear of such interest;

10  (2)    such entity consents;

11

12  (3)    such interest is a lien and the price at which such
   property is to be sold is greater than the aggregate value of all
13  liens on such property;

14  (4)    such interest is in bona fide dispute; or

15  (5)    such entity could be compelled, in a legal or
   equitable proceeding, to accept a money satisfaction of such
   interest.

16

17  Because subsections (1) through (5) of Bankruptcy Code section 363(f) are written

18  in the disjunctive, authority to sell the Property free and clear of any and all interests

   should be granted if, with respect to the lienholder, any of the conditions are met.

19

20  The Court should authorize the Sale free and clear of liens based upon § 363(f)(3)

21  as the Purchase Price exceeds the secured debt against the Property.  As set forth in

   Section II.F. above, the total amount of the alleged secured debt is approximately

22  $2,824,378, leaving proceeds of approximately $675,000 for the Estate. As the Purchase

23  Price is more than the total Secured Claims against the Estate and is sufficient to pay the

24  aggregate of all liens on the Property, the Sale is permissible under Section 363(f)(3).

25  For these reasons, Trustee believes in his business judgment that the proposed

26  Sale Agreement is fair, reasonable, adequate, and therefore is in the best interests of the

27  Estate and creditors, and should be approved.

28

Motion for Sale of Debtor's Assets

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    The Court Should Authorize the Trustee to Assume and Assign or Reject the Executory Contracts Listed in Exhibit B to the Agreement**

Sections 365(a) and 107(a) authorize a trustee "'[to] assume or reject any executory contract or unexpired lease of the debtor."  A trustee's decision whether to assume or reject is judged by the "business judgment test," which generally requires the trustee acted in good faith and with the honest belief that such actions were in the best interests of the estate.  *See In re Pomona Valley Medical Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007).  The Court "need engage in 'only a cursory review of the [trustee]'s decision…'" and should approve the decision unless it finds that the decision is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  *Id.*

Pursuant to Section 365(f)(2) of the Bankruptcy Code, a trustee may assign the debtor's executory contracts and unexpired leases, provided he or she first assumes those agreements in accordance with Section 365(b)(1), and provides adequate assurance of future performance by the assignee. Section 365(b)(1), in turn, requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(l); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (B.A.P. 9th Cir. 1993).

Attached as Exhibit "B" to the Agreement is a schedule which identifies each of the Debtor's unexpired leases and executory contracts to be assumed and assigned or rejected.  Any "cure" payments which Trustee believes must be paid to enable him to assume and assign those agreements are set forth in the Bidding Procedures Motion or in the notice to be served in accordance with that motion. Any party that opposes the computation of the cure amount must file an opposition with the Court in accordance with the date set by the Court in its order approving the Bidding Procedures Motion. Otherwise, the "cure" amounts asserted by Trustee will be deemed by the Court to constitute the

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

1  "cure" amounts which must be cured by Trustee in connection with the assumption and

2  assignment of the unexpired leases and executory contracts.  Since Trustee will not know

3  the identities of the winning bidder(s) at the auction until the completion of the auction, if

4  any disagreement arises over the ability of the winning bidder(s) to demonstrate adequate

5  assurance of future performance, a subsequent Court hearing may need to be held on this

6  issue.

7  **E.    Adequate Notice of the Sale is Proposed**

8  Trustee proposes to provide notice of the sale to be posted by the Clerk's Office

9  and to serve notice of the sale on the Office of the United States Trustee, all creditors, and

10  all other parties who have requested special notice in this case.  Further, the sale is

11  subject to overbid, and the ability of other potentially interested parties to provide

12  competing offers for the Assets ensures that the proposed sale will not result in a lucrative

13  "windfall" to the Purchaser at the expense of creditors of the Estate.  *See In re Onouli*

14  *Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

15  **F.    The Buyer of the Property Should be Deemed a "Good Faith**

16  **Purchaser" Pursuant to 11 U.S.C. § 363(m)**

17  Section 363(m) of the Bankruptcy Code provides:

18  The reversal or modification on appeal of an authorization
   under subsection (b) or (c) of this section of a sale or lease of
19  property does not affect the validity of a sale or lease under
   such authorization to an entity that purchased or leased such
20  property in good faith, whether or not such entity knew of the
   pendency of the appeal, unless such authorization and such
21  sale or lease were stayed pending appeal.

22  A good faith buyer "is one who buys 'in good faith' and "for value.'"  *Ewell v. Diebert*

23  *(In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of*

24  *Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically]

25  shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an

26  attempt to take grossly unfair advantage of other bidders.'"  *Id.* (quoting *Community Thrift*

27  *& Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)).  In the instant case,

28  Buyer is buying in good faith and has offered to pay fair value for the Property.  The

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Motion for Sale of Debtor's Assets

1  proposed sale of the Sale Assets has been negotiated with Buyer in "arm's-length"

2  discussions. *See* Casey Declaration.  Based on such facts and circumstances, Trustee

3  believes that this Court can properly determine Buyer, the Successful Bidder, and the

4  Back-Up Bidder as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

5       **G.**     **The Trustee Should be Authorized to Make Distributions of the Sale**

6                **Proceeds to Secured Creditors with Allowed, Undisputed Claims,**

7                **Except as to the Purported Junior Secured Claims**

8       The Agreement provides that distribution of the proceeds of the Sale on account of

9  the Purported Junior Secured Claims will not be paid immediately upon Closing, but

10  rather, will be held in escrow by Seller pending the resolution of such Purported Junior

11  Secured Claims as set forth in this Section 3.6.  The Purported Junior Secured Claims will

12  be subject to the proof of claim filing requirement and any claims allowance process

13  established by the Bankruptcy Court.

14       If, within sixty (60) days of the filing of a proof of claim with respect to any

15  Purported Junior Secured Claim or related liens ("Junior Claim"), Trustee does not object

16  to, or otherwise contest, the allowance of such Junior Claim or the related liens, Buyer

17  and Ice Bear will have standing to make such objection to, or otherwise contest, the

18  allowance of such Junior Claim and the related liens, with the ability to assert, settle, and

19  otherwise resolve any related Estate claims or causes of action with respect to such

20  Junior Claim.

21       If within ninety (90) days of the Junior Claim, no objection or challenge to the

22  allowance of such Junior Claim or the related liens has been raised by any person, such

23  Junior Claim will be deemed allowed.  Upon the allowance of any Junior Claim, the holder

24  of the Junior Claim will be entitled to its appropriate share of the proceeds of the Sale.

25       Except as set forth herein, the Trustee requests authorization to pay from the

26  proceeds of the Sale any costs of sale or other secured claims which he deems to be

27  valid, allowed claims.

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

## VI.    THE WAIVER OF THE STAY IS APPROPRIATE

Under Rule 6004(h), an order authorizing the use or sale of property is stayed for 14 days after the entry of the order, *unless the court orders otherwise*. Fed. R. Bankr. P. 6004(h).  The Advisory Committee Note states that the court may, in its discretion, order that the stay is inapplicable so that the sale or assumption may take place immediately upon entry of the order.  Fed. R. Bankr. P. 6004(g) Advisory Committee's Note.

Here, the waiver of the stay imposed by Rule 6004(h) is appropriate.  The Court's order granting this Motion must become a final order before the proposed Sale can close. Accordingly, Trustee requests that the Court waive the stay imposed by Rule 6004(h).

Moreover, Trustee further requests a waiver of Local Rule 9021-1(b)(3), if applicable, to the extent any lodging period is required before entry of the order on this motion. Given the urgency of the Closing of the Sale to Buyer, Trustee requests that any lodging periods be waived, so as to avoid any delay in the closing of the Sale.

## VII.    CONCLUSION

Based on the foregoing, Trustee respectfully requests that this Court enter an order granting the Motion in its entirety, as follows:

1.    The notice of the Motion is proper and adequate;

2.    The Sale Agreement, a copy of which is attached as Exhibit 1, and the sale of the Property to the successful bidder pursuant to that Agreement, including pursuant to 11 U.S.C. § 363(b) and (f), is approved in its entirety;

3.    The compromise of Buyer's Secured Claim is approved as set forth herein and in the Agreement;

4.    Trustee is authorized to sell the Assets and execute any documents and take any other actions reasonably necessary to consummate the Sale and effectuate the terms of the Sale;

5.    Trustee is authorized to reject or assume and assign the unexpired leases and executory contracts as set forth in Exhibits B and C to the Agreement;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

6.    The sale and conveyance of the Assets will be strictly "as is," "where is," without warranty or representation by Seller, and pursuant to 11 U.S.C. § 363(b) and (f), free and clear of any and all liens and interests, including free and clear of the Liens.

7.    Buyer is determined to be "good faith purchasers" pursuant to 11 U.S.C. § 363(m);

8.    Trustee reserves all rights to object to the validity, scope and priority of all liens, claims and interests, except as set forth in the Sale Agreement;

9.    The Trustee is authorized to take any and all necessary or reasonable actions to consummate the sale of the Property;

10.    Except as set forth in the Agreement regarding the Purported Junior Secured Claims, Trustee is authorized make distributions of the Sale Proceeds to secured creditors with allowed, undisputed claims without further court order;

11.    Any distributions of proceeds from the Sale that would go to pay Purported Junior Secured Claims if allowed will be held in escrow by Trustee pending the resolution of such Purported Junior Secured Claims in accordance with the terms of the Agreement;

12.    To the extent there is any tax liability to the Estate from the sale, Trustee is authorized, but not required, to pay such taxes from the Net Proceeds;

13.    Any requirements for lodging periods of the order approving this Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy rules are waived;

14.    The stay of the order approving this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules is waived; and

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

1         15.    For such other and further relief as the Court may deem just and proper.

2

3                     Respectfully submitted,

4    Dated:  January 24, 2020        WEILAND GOLDEN GOODRICH LLP

5

6                  By:  /s/ JEFFREY I. GOLDEN

7                     JEFFREY I. GOLDEN
                      KERRY MOYNIHAN

8                     Attorneys for Chapter 7 Trustee,
                      Thomas H. Casey

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

MOTION FOR SALE OF DEBTOR'S ASSETS

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

## DECLARATION OF THOMAS H. CASEY

I, Thomas H. Casey, declare as follows:

1.      I am the Chapter 7 Trustee of the bankruptcy estate of Ice Energy Holdings, Inc. (the "Debtor").  Except as stated otherwise, I know each of the following facts to be true of my own personal knowledge or based on information and belief and a review of records received in this case, and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Approving Asset Purchase Agreement and Authorizing Sale of Debtor's Assets Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Compromise of Secured Creditor's Claim Pursuant to Federal Rule of Bankr. Procedure 9019; (3) Rejecting or Assuming and Assigning Certain Executory Contracts and Unexpired Leases; (4) Approving Buyer, Successful Bidder, and any Back-Up Bidders, as Good Faith Purchasers Pursuant to 11 U.S.C. § 363(m); and (5) Authorizing Payment of Undisputed Liens and Other Ordinary Costs of Sale* (the "Motion").  All terms as defined in the Motion are incorporated herein by this reference.

2.      Trustee seeks approval of the *Asset Purchase Agreement* ("Agreement") executed by and between Trustee, on the one hand, and ACP Thule Investments, LLC ("Buyer") and Ice Bear SPV #1, LLC ("Ice Bear"), on the other hand, for the sale ("Proposed Sale") of all right, title and interest of the Estate in and to the sale assets more fully described in the Agreement ("Sale Assets"), including: (1) inventory, finished goods, work in progress, materials, parts, supplies, equipment, shipping materials, patents, trademarks, copyrights, licenses, technologies, marketing materials, intellectual property, packaging materials and open purchase orders ("Business Assets"), as more particularly described on Exhibit "A" to the Agreement; (2) the real property leases ("Assigned Leases") described on Exhibit "B" to the Agreement; and (3) the executory contracts, if any, ("Assigned Contracts") described on Exhibit "C" attached to the Agreement; but **not**

any Excluded Assets or Excluded Liabilities, as defined in the Agreement. A true and correct copy of the Agreement is attached as <u>Exhibit 1</u>.

3.      Prior to the Petition Date, the Debtor developed, manufactured, distributed, installed, and maintained specialized the Units, with each being paired with one or more HVAC Units sourced by Debtor from a third-party manufacturer. The Units are designed to significantly reduce utility costs by using electricity purchased at lower "off-peak" nighttime utility rates to cool refrigerant and create ice for daytime use in large commercial and industrial air conditioning applications. Ice Bear was Debtor's largest customer.

4.      In or about June 2018, Debtor entered into a Master Goods and Services Agreement ("MGSA") with Ice Bear, a wholly owned subsidiary of Buyer, pursuant to which Debtor was to manufacture, install, and deliver all goods and services that Ice Bear required in order to perform under various agreements between Ice Bear and Southern California Edison ("SCE") ("Energy Service Agreements" or "ESAs"), including, but not limited to, customer acquisition, manufacturing and installation of the Ice Bear Units, and post-installation inspections, maintenance, and repairs.

5.      On December 17, 2019, Debtor filed a voluntary skeletal petition for relief under Chapter 7 of Title 11 of the United States Code. Thomas H. Casey was duly appointed as the Chapter 7 Trustee. On December 30, 2019, Debtor filed its Schedules and Statement of Financial Affairs.

6.      Debtor's Schedules list potentially significant assets. In addition to approximately $110,000 in cash, some or all of which might be encumbered, Debtor listed numerous assets, including inventory of a total value in excess of $11 million, consisting of approximately $6 million in Ice Bear Units, $4.4 million in "Installation and Service Parts", and $771,000 for Ice Bear Units "needing rework"; various intellectual property, namely 16 US patents and 32 international patents, valued at $9.4 million; and various machinery valued at approximately $215,000, among other things.

7.      In or about February 5, 2016, Debtor and DHN Capital, LLC dba Nations Interbanc ("Nations") entered into a factoring and security agreement pursuant to which

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 │ Nations agreed to provide Debtor with up to $1,000,000 of funding, secured by all of the

2 │ Debtor's assets.  A true and correct copy of the Factoring and Security Agreement

3 │ provided by Buyer is attached hereto as <u>Exhibit 3</u>.

4 │ 　　　8.　　On or about February 10, 2016, Nations perfected its security interest in all

5 │ of the Debtor's assets by filing a UCC Financing Statement with the Delaware Department

6 │ of State as Document No. 2016 0811040.  A true and correct copy of UCC Financing

7 │ Statement recorded February 10, 2016, is attached hereto as <u>Exhibit 4</u>.

8 │ 　　　9.　　In or about December 2019, Ice Bear purchased Nations' claim, and on

9 │ December 17, 2019, Ice Bear recorded a UCC-3 Statement amending the UCC Financing

10 │ Statement to reflect Ice Bear as the secured party. Ice Bear asserts the current amount of

11 │ its secured claim is $1,297,665.49 ("Secured Claim"). A true and correct copy of the UCC

12 │ Amendment reflecting the assignment to Ice Bear is attached hereto as <u>Exhibit 5</u>. A true

13 │ and correct copy of the purchase agreement provided by Buyer is attached hereto as

14 │ <u>Exhibit 6</u>.

15 │ 　　　10.　　However, on or about October 9, 2019, Ice Bear recorded additional UCC

16 │ financing statements in Delaware and California, which Debtor asserts were unauthorized

17 │ and not supported by any underlying security agreement ("Unauthorized UCCs"). As part

18 │ of the Sale Agreement, immediately following execution, Ice Bear is required to

19 │ immediately release and terminate the Unauthorized UCCs, regardless of whether Buyer

20 │ is the Successful Purchaser.

21 │ 　　　11.　　A true and correct copy of the UCC Search Results for the States of

22 │ California and Delaware are attached as <u>Exhibit 2</u>.

23 │ 　　　**12.**　　Based on the nature of the Debtor's assets, I believe that the proposed Sale,

24 │ with the opportunity for overbid, is in the best interest of the Estate and will result in the

25 │ highest and best recovery for the Estate.  My counsel and I have engaged in extensive

26 │ conversations with at least two potential purchasers for the Debtor's assets, and I

27 │ continue to encourage interest in the assets and solicit other potential purchasers to

28 │ submit overbids. Based on the interest in the Property, I have determined that it would be

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   possible to sell the Sale Assets without the services of a broker, thus saving the Estate

2   unnecessary administrative expenses.

3        13.    Moreover, I am conscious of the fact that any substantial delay in the sale

4   process may likely result in the loss of Buyer's offer. As set forth herein, the Ice Bear Units

5   were manufactured, and the HVACs ordered, specifically to meet the requirements of Ice

6   Bear's ESAs, and do not appear to be as readily marketable or easily liquidated as the

7   HVAC Units. Moreover, Buyer asserts that Ice Bear holds a significant unsecured claim

8   against the Estate, which is being waived as part of the Agreement with Buyer.

9        14.    Under the circumstances, given the nature and specialization of certain of

10   the Debtor's assets, the reason for Buyer's interest in the Sale Assets, and the current

11   lack of unencumbered funds for the Estate to protect and preserve the Debtor's assets, I

12   believe that a prolonged marketing period is not in the best interests of the Estate. Rather,

13   this expeditious sale is the best chance of recovery for unsecured creditors.

14        15.    Other potential buyers have been informed that they will have an opportunity

15   to overbid.

16        16.    I have no evidence that the validity of Buyer's Secured Claim is in dispute.

17   The Debtor did not list Buyer's Secured Claim as disputed, contingent or unliquidated and

18   has not indicated to Trustee that Buyer's Secured Claim is not owed.

19        17.    As for any claims against Buyer or Ice Bear, I am informed and believe that

20   it will be time consuming and fact intensive to prove any claims and to disprove any

21   asserted defenses, and further believe that the Estate would incur additional costs in

22   attempting to recover any judgment against Ice Bear or Buyer, such that the claims are

23   not likely to yield a significant value for the Estate.

24        18.    Moreover, as part of the Agreement, upon Closing of the Sale of Assets to

25   Buyer, Buyer has agreed to conditionally waive any unsecured claim it may have against

26   the Estate, such that the proceeds of the Sale remaining after payment of secured and

27   administrative claims will be paid to other unsecured creditors, without Buyer sharing in

28   the recovery.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1099246.2                    25                    DECLARATION

19.     The settlement also eliminates any risk or burden that the Sale Assets may cause to the Estate. The Estate is incurring administrative costs for rent and utilities at the various warehouses at which the Sale Assets are stored, and the estate does not have sufficient funds to cover these costs. Buyer is assuming those costs pending the Closing of the Sale of the Assets.

20.     Buyer has agreed to fund an Investigation Payment of up to $100,000 for Trustee's expenses for the investigation and the potential litigation of D&O Claims. This structure is such that Buyer assumes the risk that the D&O Claims may not result in any recovery, but in the event that there is a recovery, the Estate will be entitled to thirty percent (30%) of any such recovery.

21.     Upon review of all these different factors, including the risks attendant with litigation, I have agreed to settle the amount of Buyer's Secured Claim as part of the sale of the Sale Assets, and permit Buyer to credit bid Buyer's Secured Claim toward the Purchase Price.

22.     The settlement resolves any and all claims and controversies between the parties, disallows any additional claims of Buyer or Ice Bear against the Estate, including its alleged general unsecured claim (which it claims is in excess of $39 million) and includes a mutual release.  Accordingly, I believe that this compromise represents a reasonable settlement of the matter and it is in the best interest of the creditors of the Estate.

23.     I am informed and believe that certain of the Assets are not readily marketable, and I have not yet received any other written offers for the Assets, although I have had some interested parties and may continue to solicit prospective overbidders.

24.     I believe the Purchase Price is reasonable. After accounting for the credit bid of Buyer's Secured Claim, and after payment of the various secured claims, if allowed, and various administrative claims, I anticipate that the proceeds from the Proposed Sale are sufficient to make a meaningful distribution to general unsecured creditors.

25.      The Agreement provides that the purchase of the Assets is subject to

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

26

1 | overbid, thereby ensuring that the Estate receives the highest and best price for the

2 | Assets.  The Agreement is being proposed in good faith and is the result of extensive

3 | arms-length negotiations.

4 |      26.    I believe the Proposed Sale is fair and reasonable and within the proper

5 | exercise of my business judgment as Trustee. The Proposed Sale of the Sale Assets has

6 | been negotiated with Buyer in extensive, "arm's-length" discussions.

7 |      27.    Attached as Exhibit "B" and "C" to the Agreement are schedules which

8 | identify each of the Debtor's unexpired leases and executory contracts to be assumed and

9 | assigned or rejected, as designated therein.  Any "cure" payments which must be paid to

10 | enable me to assume and assign those agreements will be set forth in the Bidding

11 | Procedures Motion or in the notice to be served in accordance with the order approving

12 | the Bidding Procedures Motion.

13 |     I declare under penalty of perjury that the foregoing is true and correct.

14 |     Executed on this 24th day of January, 2020, at Rancho Santa Margarita, California.

Thomas H. Casey

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (**"Agreement"**) is made, executed and entered into effective as of January 24, 2020 (**"Execution Date"**), by and between:

Thomas H. Casey (**"Seller"**), acting solely in his capacity as the duly appointed chapter 7 trustee of the bankruptcy estate (**"Estate"**) of Ice Energy Holdings, Inc., a Delaware corporation (**"Debtor"**), in that certain bankruptcy case pending before the United States Bankruptcy Court, Central District of California, Santa Ana Division (**"Bankruptcy Court"**), as Case No. 8:19-bk-14865-MW (**"Bankruptcy Case"**);

ACP Thule Investments LLC, a Delaware limited liability company (**"Buyer"**); and

Ice Bear SPV #1, LLC, a Delaware limited liability company and wholly owned subsidiary of Buyer (**"Ice Bear"**)

(each, individually, a **"Party"**, and both, collectively, the **"Parties"**), with regard to the following facts, circumstances, understandings, beliefs, intentions and desires (collectively, **"Recitals"**):

### R E C I T A L S :

**A.**     Section 1.1 identifies certain words and phrases which, when capitalized and used in this Agreement, have specifically assigned meanings for purposes of this Agreement.

**B.**     Prior to the filing of the Bankruptcy Case, Debtor was engaged in the business of developing, manufacturing and distributing thermal energy storage units (**"Units"**), servicing and maintaining installed Units, developing related intellectual property, and engaging in other business activities permitted by its organizational documents (collectively the **"Business"**).

**C.**     Prior to the Petition Date, Ice Bear was the largest customer of Debtor, and pursuant to a Master Goods and Services Agreement between Debtor and Ice Bear, dated as of June 26, 2018 (as amended, supplemented or otherwise modified, the **"MGSA"**), Debtor provided Ice Bear with Units and associated components, parts, supplies, intellectual property licenses, customer origination services, and maintenance services.

**D.**     Subject to Buyer's Designation Rights, Buyer desires to purchase from Seller, and subject to the approval of the Bankruptcy Court and possible overbidding by other prospective purchasers as discussed in Article 2 of this Agreement, Seller desires to sell to Buyer, on the terms and conditions set forth in this Agreement, as a sale free and clear of Liens and Interests pursuant to 11 U.S.C. § 363(b) and (f), all rights, titles and interests of the Estate in, to, and under substantially all assets and property (tangible and intangible) owned, leased, held or used by Debtor or the Estate (the "Sale Assets"), including: (1) all inventory, finished goods, work in progress, raw materials, parts, supplies, equipment, shipping materials, stock in trade, patents, trademarks, copyrights, licenses, technologies, marketing materials, Intellectual Property Rights, work in process, packaging, open purchase orders, Books and Records (subject to Section 3.15), and all other assets and property related to the Business, including those described on the attached Exhibit "A" (**"Business Assets"**), in each case wherever located or held; (2) the real property leases described on the attached Exhibit "B" (**"Assigned Leases"**); (3) the executory contracts, if any, described on the attached Exhibit "C" (**"Assigned Contracts"**); (4) all rights to any Claims of any nature available to or being pursued by Seller or the Estate or otherwise belonging to the Estate to the extent related to the Business, the Sale Assets, or the Assumed Liabilities, whether arising by way of counterclaim or otherwise (other than Avoidance Claims); (5) all accounts receivable, notes receivable and other

APA for All Assets

receivables owned or held by the Estate related to the Sale Assets; (6) unapplied security deposits, if any, under any Assigned Contracts or Assigned Leases; (7) all third party property, casualty and liability insurance proceeds and all rights to third party property, casualty and liability insurance proceeds, in each case to the extent received or receivable in respect of the Sale Assets or the Assumed Liabilities; (8) all rights of Seller or the Estate under or pursuant to all warranties, indemnities, representations and guarantees made by suppliers, manufacturers and contractors and other third parties to the extent relating to any of the Sale Assets; and (9) any Claims (including Avoidance Claims) belonging to the Estate against any current or former officers or directors of Debtor that are not brought, sold, sought to be sold, compromised and settled, or sought to be compromised and settled, by Seller within ninety (90) days of the date of the Closing. Notwithstanding the foregoing, the Sale Assets will not include any Excluded Assets or Excluded Liabilities, and if and to the extent there is any conflict between the definition of Sale Assets and the definition of Excluded Assets, the definition of Excluded Assets will prevail.

E.      Section 2.4 provides for a competitive bidding process for the Sale Assets pursuant to which Seller may solicit, propose, negotiate, counter and accept competing offers for the Sale Assets in accordance with Bidding Procedures to be approved by the Bankruptcy Court.  Seller will seek, in connection with approval of the Bidding Procedures, approval by the Bankruptcy Court of the Break-Up Fee and Buyer Expense Reimbursement.

F.      Regardless of whether the Sale is approved by the Bankruptcy Court or is consummated, this Agreement includes an independent Trust Agreement (as described in Section 2.3), which survives even if this Agreement is terminated.

        **PURSUANT TO THE RECITALS**, and in consideration of the covenants, agreements, representations, warranties, indemnities, waivers and releases set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound by this Agreement, hereby covenant, agree, warrant, represent and declare as follows:

## ARTICLE 1
## DEFINITIONS, CONVENTIONS AND CONSTRUCTION

**1.1     Definitions.**  The following words and phrases, when capitalized and used in this Agreement or in any other document incorporating by reference the definitions set forth in this Agreement, will have the following meaning, unless the context reasonably prohibits the application of such meaning:

        **"Affiliate"** means, with respect to any person, any other person that: (a) owns or controls, is owned or controlled by, or is under common ownership or control with  such person, directly or indirectly, with ownership of 5% or more of the equity of a person constituting ownership, and control of 5% or more of the voting interests of a person constituting control; (b) is an officer, director, manager, managing member, managing partner or general partner of the person; (c) is, if the person is any of the persons described in clause (b), the entity for which the person acts in such capacity; (d) is legally related to the person by birth, adoption or marriage; or (e) is an "affiliate" as defined in the Bankruptcy Code; provided, however, that the Buyer Released Parties will not be considered Affiliates of Debtor.

        **"Agreement"**, as defined in the Preamble, means this Agreement.

        **"Alternative Transaction"** means the sale of all or a material portion of the Sale Assets to a person other than Buyer or Ice Bear, including pursuant to the competitive bidding process described in Section 2.4.

**"Appeal"** means and will be construed broadly to include any appeal or motion to reverse, vacate, set aside, modify, amend or remand for further action an entered order, including any motion for reconsideration of an entered order.

**"Assigned Contracts"** is defined in <u>Recital "D"</u>.

**"Assigned Leases"** is defined in <u>Recital "D"</u>.

**"Assumed Liabilities"** means the following liabilities which will be assigned to, assumed by, and deemed to have been assigned to and assumed by Buyer, effective as of the Closing: (a) all Assumed Post-Closing Liabilities; and (b) all Assumed Pre-Closing Liabilities.

**"Assumed Pre-Closing Liabilities"** means and includes any Claims that Buyer hereafter agrees, in writing, will be either paid by Buyer prior to or upon the Closing or will be assigned to and assumed by Buyer effective as of the Closing.

**"Assumed Post-Closing Liabilities"** means any Claims arising after the Closing with respect to the Sale Assets, or any of them, this is not an Assumed Pre-Closing Liability and does not relate to any act, error or omission of any person prior to the Closing.

**"Avoidance Claims**" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Estate pursuant to chapter 5 of the Bankruptcy Code.

**"Bankruptcy Case"** is defined in the Preamble.

**"Bankruptcy Code"** means Title 11 of the United States Bankruptcy Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statue.

**"Bankruptcy Court"** is defined in the Preamble.

**"Best Offer"** means the Qualifying Offer determined by the Bankruptcy Court, or by Seller pursuant to authority granted Seller by an order of the Bankruptcy Court, to be the most favorable to the Estate after considering all differences among competing Qualifying Offers, including those set forth in <u>Section 2.4</u>.

**"Best Offer Condition"** means either: (a) a determination by the Bankruptcy Court, or by Seller pursuant to authority granted Seller by an order of the Bankruptcy Court, that Buyer's Offer is the Best Offer; or (b) Notice by Seller to Buyer that Seller has elected to proceed with a sale of the Sale Assets to Buyer pursuant to this Agreement following a revocation or default by each Qualifying Bidder that tendered a more highly ranked Qualifying Offer.

**"Bidding Procedures"** is defined in <u>Section 2.2</u>.

**"Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Motion"** is defined in <u>Section 2.2</u>.

**"Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order"** is defined in <u>Section 2.2</u>.

**"Bill of Sale"** means a combined bill of sale and assignment and assumption agreement, properly executed in identical counterpart by the Parties, for the sale, transfer and assignment

of the Sale Assets by Seller to Buyer, including the assignment to and assumption by Buyer of the Assigned Contracts, if any, the Assumed Liabilities, if any, and the Assigned Leases, that does not expand, reduce, waive or otherwise modify the obligations, representations, warranties, guaranties, indemnities, releases, disclaimers and waivers set forth in this Agreement, and is otherwise in form and content reasonably acceptable to the Parties.

**"Books and Records"** means all books and records of the Estate relating to the conduct of the Business by Debtor prior to the Petition Date, including vendor contracts, customer contracts, customer and prospective customer lists, sales and service histories, purchase inquiries, product pricing schedules, manufacturing procedures and records, and maintenance procedures and records, including financial and accounting records, ledgers, and banking records, but excluding any books, records, documents or information covered by the attorney-client privilege of confidentiality or constituting attorney work product.

**"Breach"** is defined in Section 5.1.

**"Break-Up Fee"** is defined in Section 2.2.

**"Brokerage Commission"** means and will be construed broadly to including any fee, commission or other compensation payable to any broker, sales agent or finder as consideration for having introduced Buyer to the Sale Assets or for having procured the Sale.

**"Business"** is defined in Recital "B".

**"Business Assets"** is defined in Recital "D".

**"Business Day"** means any day other than a Saturday or Sunday upon which a majority of federally insured banks within the State of California are open for business.

**"Buyer"** is defined in the Preamble.

**"Buyer Released Claims"** is defined in Section 4.4.

**"Buyer Released Parties"** means Buyer, Ice Bear, Argo Infrastructure Parties LP, Agro Infrastructure Partners LLC, and ACP (O) 2017 GP LLC.

**"Buyer's Agents"** means and will be construed broadly to include all principals, directors, officers, employees, contractors, attorneys, advisors, agents and representatives of any of the Buyer Released Parties.

**"Buyer's Expense Reimbursement"** is defined in Section 2.2.

**"Buyer's Offer"** means the purchase offer set forth in this Agreement, increased by any higher purchase price offered by Buyer in writing or orally before the Bankruptcy Court, including in connection with the competitive bidding process described in Section 2.4.

**"Buyer's Representations"** is defined in Section 4.1.

**"Buyer's Secured Claim"** is identified on the attached Exhibit "D".

**"Carve-Out"** is defined in Section 5.4.

**"Claim"** means and will be construed broadly to include debts, obligations, agreements, contracts, covenants, representations, warranties, guaranties, indemnities, acts, errors, omissions, breaches, defaults, damages, injuries, losses, demands, lawsuits, arbitrations, inquiries, audits, causes of action, actions, notices of violation, proceeding litigation, citations, summonses, subpoenas, investigations of any nature, orders, judgments, encumbrances, liens, levies, writs, charges, costs, expenses, rights of offset, cross-claims, counter claims and other claims and liabilities of any kind of any nature, civil, criminal, administrative, regulatory or otherwise, whether legal or equitable, contingent or non-contingent, or known, suspected or unknown.

**"Closing"** is defined in <u>Section 3.12</u>.

**"Conditionally Waived Unsecured Claims"** means any unsecured Claims that have been, or may be, owned or held by Buyer, Ice Bear, or any of the other Buyer Released Parties, against Seller or the Estate, including any such Claims arising under the MGSA; provided that, for the avoidance of doubt, the Conditionally Released Unsecured Claims will not include any Claims against any current or former officers or directors of Debtor, or any owner or holder of a Purported Junior Secured Claim.

**"Crucial Vendor"** means any vendor providing goods or services to Debtor immediately prior to the Petition Date listed on the "Crucial Vendors List" attached hereto as <u>Exhibit "E"</u>.

**"Cure Costs**" means the amounts necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from such defaults, under the Assigned Contracts, if any, and the Assigned Leases, in each case as of the Petition Date and to the extent required under section 365 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court.

**"Debtor"** is defined in the Preamble.

**"Default"** is defined in <u>Section 5.2</u>.

**"Deposit"** means any deposit of funds required or provided for in this Agreement.

**"Designation Rights"** is defined in <u>Section 3.4</u>.

**"Designation Rights Termination Event"** is defined in <u>Section 3.4</u>.

**"Estate"** is defined in the Preamble.

**"Excluded Assets"** means: (a) all cash and cash equivalents owned or held by Debtor, Seller or the Estate, including in any savings accounts, checking accounts, certificates of deposit, money market accounts, or other bank accounts maintained by Debtor, Seller or the Estate; (b) all deposits, including utility deposits and lease deposits, owned or held by Debtor, Seller or the Estate, but excluding therefrom the unapplied security deposits, if any, under any Assigned Contracts or Assigned Leases, which unapplied security deposits, if any, under any Assigned Contracts or Assigned Leases, will be included as part of the Sale Assets; (c) all insurance policies owned or held by the Estate; (d) all Claims in favor of or for the benefit of the Estate to the extent relating to any Excluded Assets or Excluded Liabilities; (e) all Avoidance Claims; and (f) all contracts and leases that are not Assigned Contracts or Assigned Leases, respectively.

**"Excluded Liabilities"** means all liabilities other than the Assumed Liabilities.

**"Execution Date"** is defined in the Preamble.

**"Final Order"** means an order entered by a court of competent jurisdiction, including the Bankruptcy Court, that has not been reversed, vacated or remanded for further action, and is not stayed pending: (a) the expiration of the fourteen (14) day stay set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, if the fourteen (14) day stay set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is not waived; or (b) Appeal.

**"Ice Bear"** is defined in the Preamble.

**"Initial Deposit"** is defined in Section 3.2(a).

**"Intellectual Property Rights"** means all of the Estate's intellectual property, including: (a) patents, patent applications and patent rights; (b) trademarks (registered and at common law), trademark registrations and applications, trade names, logos, trade dress, brand names, service marks (registered and at common law), service mark registrations and applications, websites, domain names and other indicia of source and all goodwill associated therewith; (c) works of authorship, copyrights, copyright registrations and applications for registration, and moral rights; (d) know-how, trade secrets, customer lists, proprietary information, proprietary processes and formulae, databases and data collections; (e) all source and object code, software, algorithms, architecture, structure, display screens, layouts, inventions, development tools; (f) all documentation and media constituting, describing or relating to the above, including manuals, memoranda and records; and (g) all other intellectual property rights related to the Business.

**"Interest"** means and will be construed broadly to include any directly or indirectly held right, title, interest, ownership, community property interest, purchase option, right of first refusal, indicia of title, indicia of ownership, right of possession, or other legal, equitable, possessory or other interest of any kind, including as defined in the Bankruptcy Code.

**"Law"** means and will be construed broadly to include any statute, code, ordinance, regulation, rule, common law principal, order or other law that is binding upon the Sale Assets or any Party, as amended from time to time.

**"Lien"** means and will be construed broadly to include any encumbrance, pledge, hypothecation, mortgage, deed of trust, security interest, judgment lien, statutory lien, equitable lien, covenant, condition, restriction, notice of pending action or other lien of any kind, including as defined in the Bankruptcy Code.

**"Liquidated Damages"** means any damages payable to Seller pursuant to Section 5.3.

**"MGSA"** is defined in Recital "C".

**"Notice"** means and will be construed broadly to include any notice, inquiry, request, demand, acknowledgement, approval, consent, acceptance, admission, ratification, determination, response, disapproval, objection, rejection, denial, protest, refusal, waiver or other communication required, desired or intended pursuant to the Agreement.

**"Notice Receipt Date"** means the date upon which a Notice to a Party is deemed to have been received by the Party pursuant to Section 6.13.

**"Ordinary Course Expenses"** is defined in <u>Section 3.3</u>.

**"Party"** and **"Parties"** are defined in the Preamble.

**"Petition Date"** means December 17, 2019, the date on which Debtor filed the Bankruptcy Case with the Bankruptcy Court.

**"Preamble"** means the first paragraph of this Agreement.

**"Purchase Price"** is defined in <u>Section 3.2</u>.

**"Purported Junior Secured Claims"** means the purported secured claims against the Estate related to the UCC-1 statements filed by Joseph Draper (filing number: 19-7752285268), David Zezza (filing number: 19-7752285884), Minakami Trust (filing number: 19-7752285521), David Heatley (filing number: 19-7752285400), and Voyager Ocean Limited (filing number: 19-7752285763).

**"Qualifying Bidder"** means any person determined by Seller or the Bankruptcy Court to be qualified to purchase the Sale Assets pursuant to the competitive bidding process described in <u>Section 2.4</u> and the Bidding Procedures.

**"Qualifying Offer"** means a written offer by a Qualifying Bidder to purchase the Sale Assets (a) in compliance with the Bidding Procedures, (b) not revoked or in default by the offeror, and (b) determined by the Bankruptcy Court, or by Seller pursuant to an order of the Bankruptcy Court, to be an acceptable offer to purchase the Sale Assets.

**"Recitals"** is defined in the Preamble.

**"Sale"** means the sale of the Sale Assets pursuant to this Agreement.

**"Sale Assets"** is defined in <u>Recital "D"</u> and, for purposes of clarity, includes the Business Assets described on the attached <u>Exhibit "A"</u>, the Assigned Leases described on the attached <u>Exhibit "B"</u>, and the Assigned Contracts, if any, described on the attached <u>Exhibit "C"</u>, but not any of the Excluded Assets or Excluded Liabilities; provided, however, that if and to the extent there is any conflict between the definition of Sale Assets and the definition of Excluded Assets, the definition of Excluded Assets will prevail.

**"Sale Approval Motion"** is defined in <u>Section 2.1</u>.

**"Sale Approval Order"** is defined in <u>Section 2.1</u>.

**"Seller"** is defined in the Preamble.

**"Seller Released Claims"** is defined in <u>Section 4.6</u>.

**"Seller's Agents"** means the principals, directors, officers, employees, representatives, agents, architects, engineers, accountants, attorneys, consultants and advisors of Seller.

**"Subordinated Replacement Lien"** is defined in <u>Section 5.4</u>.

**"Seller's Representations"** is defined in <u>Section 4.2</u>.

**"Trust Agreement"** is defined in <u>Section 2.3</u>.

**"Trust Approval Motion"** is defined in <u>Section 2.3</u>.

**"Trust Approval Order"** is defined in <u>Section 2.3</u>.

**"Trust HVACS"** is defined in <u>Section 2.3</u>.

**"Trust Premises"** is defined in <u>Section 2.3</u>.

**"Trust Premises Landlord"** is defined in <u>Section 2.3</u>.

**"Trust Removal Deadline"** is defined in <u>Section 2.3</u>.

**"Units"** is defined in <u>Recital "B"</u>.

1.2    <u>**Conventions**</u>.  This Agreement incorporates the following conventions:

(a)    The words **"include"**, **"includes"** and **"including"** will be deemed and construed to be immediately followed by the words "without limitation".

(b)    The words **"will"** and **"shall"** refer to a mandatory act or obligation, unless the context in which the word is used logically prohibits the application of this convention.

(c)    The word **"person"** includes humans, trusts, estates, receiverships, corporations, limited liability companies, partnerships, joint ventures, agencies, labor unions, and federal, state, county or municipal governmental authorities and agencies of competent jurisdiction.

(d)    The word "**Dollars**" and the symbol **"$"** refer to United States Dollars.

(e)    Words or phrases denoting the **singular** will include the plural, those denoting the **plural** will include the singular, and those denoting **gender** will include all genders unless applying this convention would be contrary to the obvious intent of this Agreement.

(f)    Unless otherwise expressly stated, all references to **"days"** will mean calendar days, and all references to **"years"** will mean calendar years.

(g)    The term **"Estate**" will be deemed to include **"Debtor**".

1.3    <u>**Construction**</u>.  This Agreement will be liberally construed to effectuate the intended Sale. Article and Section headings are for convenience only and will not be given undue consideration in resolving questions of construction or interpretation.  Each Party is deemed to have had equal bargaining strength in the negotiation of this Agreement and equal responsibility for the preparation of this document, such that neither this document, nor any uncertainty or ambiguity therein, will be arbitrarily construed or resolved against any Party pursuant to any rule of construction or other Law to the effect that ambiguities in documents are to be construed against the drafter of the document.

**ARTICLE 2
BANKRUPTCY COURT APPROVAL**

2.1    <u>**Sale Approval**</u>.  The Sale and any obligation of Seller to consummate the Sale is subject to and contingent upon an order (**"Sale Approval Order"**) being entered by the Bankruptcy Court in the Bankruptcy Case and becoming a Final Order, that: (a) approves this Agreement and the Sale as a sale and assignment of all rights, titles and Interests of the Estate in and to the Sale Assets, free and clear of Liens and Interests pursuant to 11 U.S.C. §363(b) and (f), to Buyer; (b) approves,

as part of the Sale, the assumption by the Estate of, and the assignment to Buyer of, the Assigned Leases, the Assigned Contracts, if any, and the Assigned Liabilities; (c) determines the Cure Costs for all Assigned Contracts and Assigned Leases (without prejudice to Buyer's right to designate any such Assigned Contracts and Assigned Leases as Excluded Assets pursuant to Section 3.4) after providing non-debtor counterparties to such Assigned Contracts and Assigned Leases a Bankruptcy Court-approved period of time in which to object to such Cure Costs; (d) excludes any sale or assignment of any Excluded Assets and any assignment or assumption of any Excluded Liabilities; (e) approves, in the event of a Default by Buyer, the Carve-Out and Subordinated Replacement Lien; (f) includes a determination by the Bankruptcy Court that Buyer is a good faith purchaser within the meaning 11 U.S.C. § 363(m); (g) includes any other provisions explicitly required to appear in the Sale Order under this Agreement; and (h) is otherwise in form and substance reasonably acceptable to the Parties.  Accordingly, within one (1) Business Day following the Execution Date, Seller will prepare and file with the Bankruptcy Court a duly noticed motion (**"Sale Approval Motion"**) seeking entry of the Sale Approval Order, with a request that the Sale Approval Motion be heard on the first available hearing date following the expiration of the twenty-one (21) day notice period set forth in Federal Rule of Bankruptcy Procedure 2002(a)(2) and the Local Rules of the Bankruptcy Court, and seek to have the entered Sale Approval Order become a Final Order.  The Sale Approval Motion will include a request that the Bankruptcy Court waive the fourteen (14) day stay set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

**2.2** **Bidding Procedures, Break-Up Fee and Buyer Expense Reimbursement Approval.** Buyer's Offer and any obligation of Buyer to consummate the Sale is subject to and contingent upon an order in form and substance acceptable to Buyer (**"Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order"**) being entered by the  Bankruptcy Court in the Bankruptcy Case and becoming a Final Order that: (a) approves procedures (**"Bidding Procedures"**) to govern the competitive bidding process referenced in Section 2.4, in the form attached as Exhibit "F" or as otherwise agreed to by the Parties (such agreement not to be unreasonably withheld, conditioned, or delayed); (b) provided that this Agreement has not been terminated according to its terms due to a Default by Buyer, approves the payment to Buyer upon the consummation of an Alternative Transaction, from the proceeds of the Alternative Transaction, of an earned fee (**"Break-Up Fee"**) in the amount of **One Hundred Five Thousand Dollars ($105,000.00)**, or such lesser amount as agreed by the Parties, as compensation for the value realized by the Estate as the result of Buyer helping to create, including by tendering Buyer's Offer, the competitive bidding environment that resulted in the consummation of an Alternative Transaction; (c) approves, in addition to the payment of the Break-Up Fee, reimbursement to Buyer upon the consummation of an Alternative Transaction, from the proceeds of the Alternative Transaction (**"Buyer's Expense Reimbursement"**), the following expenses incurred by Buyer after the Execution Date and prior to any approval of the Alternative Transaction by the Bankruptcy Court, with Buyer's Expense Reimbursement entitled to an allowed administrative claim pursuant to 11 U.S.C. §§503(b) and 507(a)(2): (1) any Ordinary Course Expenses paid by Buyer pursuant to Section 3.3 or otherwise; (2) any adequate protection payments or other amounts required to be paid in order to preserve the right to assume or reject leases or contracts pursuant to Section 3.4 paid by Buyer; and (3) any Investigation Payment paid by Buyer pursuant to Section 3.16; (d) includes any other provisions required to appear in the Bidding Procedures, Break-Up Fee and Expense Reimbursement Order pursuant to this Agreement; and (e) is otherwise in form and substance reasonably acceptable to the Parties.  The Bidding Procedures, Break-Up Fee and Expense Reimbursement Order must also provide, and the Parties hereby agree, that Buyer and Ice Bear are permitted to directly contact service providers of Debtor (e.g., telecom, data, and electrical/mechanical service providers) that are essential to the Energy Services Agreements

described in the MGSA for the purpose of continuing services, responding to safety situations and safeguarding Ice Bear thermal storage units that have been installed for the purpose of operating implementing such Energy Services Agreements. Accordingly, within one (1) Business Day following the Execution Date, Seller will prepare and file with the Bankruptcy Court a duly noticed motion (**"Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Motion"**), which may also be the Sale Approval Motion, seeking entry of the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order as described in this Agreement, and request that the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Motion be heard by the Bankruptcy Court on shortened time at the Bankruptcy Court's first available hearing date following the Execution Date, and Seller will seek to cause the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order to become a Final Order.

**2.3   Trust Agreement.** The Parties are informed and therefore believe that approximately ninety-five (95) heating, ventilating and air condition units manufactured by a third party vendor and in the possession of the Estate (the **"Trust HVACS"**) are stored within the leasehold premises (**"Trust Premises"**) located at 1040 W 17th St., Unit B, Costa Mesa, California 92626, and that the lessor of the Trust Premises (**"Trust Premises Lessor"**) has demanded that the Trust HVACS be removed from the Trust Premises and possession of the Trust Premises be surrendered to the Trust Premises Lessor, by no later than the close of business on Friday, January 31, 2020 (**"Trust Removal Deadline"**). Seller is informed and therefore believes that the Trust HVACS have significant value to the Estate, and Buyer desires that the Trust HVACS be included as a portion of the Sale Assets. However, the Estate presently lacks the financial and other resources required to properly remove, store and secure the Trust HVACS pending their sale. Therefore, in order to preserve, protect and safeguard the Trust HVACS pending the Closing or the consummation of an Alternative Transaction, the Parties desire and hereby agree that, subject to the entry in the Bankruptcy Case of an order (**"Trust Approval Order"**), in form and substance acceptable to Buyer, approving the agreement set forth in this <u>Section 2.3</u> (**"Trust Agreement"**), which may also be the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order, and the Trust Agreement Approval Order becoming a Final Order: (a) Buyer will take immediate possession of the Trust HVACS, and thereafter hold the Trust HVACS, in trust, for the benefit of the Estate, pending the Closing or the consummation of an Alternative Transaction; (b) Buyer will cause the Trust HVACS to be removed from the Trust Premises prior to the Trust Removal Deadline; (c) Buyer will exercise commercially reasonable efforts to cause the Trust HVACS to be properly, safely and securely stored pending the Closing or the consummation of an Alternative Transaction; and (d) subject to the Trust Approval Order and provided Buyer obtains and maintains commercially reasonable general public liability and vehicle insurance with coverage in the amount of not less than One Million Dollars ($1,000,000.00), naming Seller and the Estate as named insured, against any Claims arising from such use, Buyer may use any vehicles, trailers or fork lifts owned by the Estate in connection with the removal and relocation of the Trust HVACS; and (f) if the Closing occurs, then Buyer will bear all costs incurred by Buyer in connection with the performance of Buyer's obligations pursuant to this Trust Agreement and the Trust Approval Order or, if an Alternative Transaction is consummated, then in addition to the Break-Up Fee and any other permitted Buyer Expense Reimbursement, Buyer will be reimbursed by the Estate, directly from the sale proceeds from the Alternative Transaction, as part of Buyer's Expense Reimbursement, for all costs incurred by Buyer in connection with the performance of Buyer's obligations under the Trust Agreement. Accordingly, within one (1) Business Day following the Execution Date, Seller will prepare and file with the Bankruptcy Court a duly noticed motion (**"Trust Approval Motion"**), which may also be the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Motion, seeking the entry of the Trust Approval Order, and request that the Trust Approval Motion be heard by the Bankruptcy Court

on shortened time at the Bankruptcy Court's first available hearing following the Execution Date, and Seller will seek to cause the Trust Approval Order to become a Final Order.  The Trust Approval Motion will include a request that the Bankruptcy Court waive the fourteen (14) day stay set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.  The Trust Agreement is an independent agreement between the Parties and will be binding and enforceable regardless of whether the Sale is consummated or this Agreement is terminated; provided that, within thirty (30) days of this Agreement being terminated or an Alternative Transaction being consummated, Seller will effectuate the transfer of the Trust HVACs to a location such that the Trust HVACs will no longer be in the possession of Buyer at the expense of Seller or the Estate; provided, further, that after such thirty (30) day period, Buyer's obligations pursuant to the Trust Agreement will terminate and Buyer will have no liability (and no person will have any Claims against Buyer) in connection with the Trust Agreement arising after the expiration of such period.  If this Agreement is terminated, in addition to the surviving provisions specified in Section 5.6, solely with respect to the Trust Agreement, Section 4.1, Section 4.2, Section 4.3, and Section 4.8 will survive termination as well and all rights and remedies are preserved with respect to any Default by Buyer of the terms of the Trust Agreement.

**2.4    Continued Marketing, Competitive Bidding and Sale Pursuant To Best Offer Received**. Prior to any approval by the Bankruptcy Court of the Sale Approval Motion, Seller may solicit, propose, negotiate, counter and accept competing offers for the Sale Assets in accordance with the Bidding Procedures, and not be in Breach or Default, or be deemed to have acted unreasonably, improperly or in bad faith by reason of any such conduct.  Seller may rank, in order of desirability as viewed from the perspective of Seller and the Estate, all Qualifying Offers, including Buyer's Offer, taking into consideration all differences between competing offers deemed relevant by Seller, including: (1) the amount of the purchase price offered; (2) whether the Sale Assets would be sold subject to, or free and clear of Liens and Interests; (3) the amount of any Brokerage Commissions, cure amounts, adequate protection payments, storage costs, repair costs, or other costs of sale payable by Seller pursuant to any such Qualifying Offers; and (4) the date by which the Closing would occur.  Seller may request that the Sale Approval Order authorize the sale of the Sale Assets pursuant to the Best Offer, and that if a Sale pursuant to the Best Offer fails to occur, then pursuant to the next most highly ranked Qualifying Offer not revoked or in breach or default by the offeror.

**2.5    Cooperation.**  Buyer will promptly, diligently and in good faith perform all acts reasonably requested by Seller or required by the Bankruptcy Court to cause each of the Sale Approval Order, Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order, and Trust Approval Order, to be entered in the Bankruptcy Case and become a Final Order, including providing any declarations, documents and information reasonably requested by Seller or required by the Bankruptcy Court in connection therewith, and by appearing as requested by Seller at any related hearings before the Bankruptcy Court, and unless and until the Bankruptcy Court denies the entry of any such order, or this Agreement is terminated in accordance with Section 5.5, Buyer will refrain from committing, permitting, authorizing, or assisting with the commission of, any acts in frustration or contravention of this Agreement.  Seller will provide Buyer with a copy of the proposed Sale Approval Motion, Break-Up Fee and Expense Reimbursement Approval Motion, and proposed Trust Approval Motion, prior to the filing of those Motions, and will work in good faith with Buyer to reflect any changes requested by Buyer prior to the filing of such motions that do not seek to increase, reduce, waive, limit or otherwise modify the rights and obligations set forth in this Agreement.

**ARTICLE 3**
**SALE TERMS**

**3.1    Purchase and Sale Obligation.**  Subject to the terms and conditions of this Agreement, Seller will sell and assign to Buyer, and Buyer will purchase, accept and assume from Seller, all

rights, titles and interests of the Estate in and to the Sale Assets, as a sale and assignment free and clear of Liens and Interests pursuant to 11 U.S.C. § 363(b) and (f), on an "AS IS", "WHERE IS" and "WITH ALL FAULTS" basis and condition as set forth in <u>Section 4.3</u>, and the Sale will include the assumption by Seller and the Estate of, and the assignment to Buyer of, the Assigned Leases and the Assigned Contracts and the transfer to Buyer of the Assigned Liabilities, but the Sale will exclude any sale or assignment of any Excluded Assets and any assignment or assumption of any Excluded Liabilities.

**3.2**     **Purchase Price**.  The purchase price (**"Purchase Price"**) payable by Buyer to Seller as consideration for the sale and assignment to Buyer of all rights, titles and interests of the Estate in and to the Sale Assets, as a sale, transfer and assignment free and clear of Liens and Interests pursuant to 11 U.S.C. §363(b) and (f), including the assignment to Buyer of the Assigned Leases, and the Assigned Contracts and the performance by Seller of the other obligations of Seller under this Agreement, is (i) the assumption of the Assigned Liabilities, (ii) the Buyer's obligations under the Trust Agreement, (iii) Buyer and Ice Bear's waiver of the Conditionally Waived Unsecured Claims as set forth in <u>Section 3.7</u>, (iv) Buyer's payment of Cure Costs pursuant to <u>Section 3.4</u>, (v) the Carve-Out; and (vi) the sum of **Three Million Five Hundred Thousand Dollars ($3,500,000.00)**, comprised and payable by Buyer to Seller as follows:

> **(a)**     **Initial Deposit**.  Within one (1) Business Day of the Execution Date, Buyer will deposit directly with Seller a deposit (**"Initial Deposit"**) in the sum of **Three Hundred Fifty Thousand Dollars ($350,000.00)**, by delivering to Seller a valid Cashier's Check payable to "Thomas H. Casey, Trustee" in said amount.  If the Sale is consummated, then the Initial Deposit will be retained by Seller for the benefit of the Estate and credited toward the payment of the Purchase Price.  If this Agreement is terminated by Seller by reason of a Default by Buyer, then the Initial Deposit will be forfeited to Seller as "Liquidated Damages" as provided in <u>Section 5.3</u>, and Buyer's Secured Claim will be subject to the Carve-Out set forth in <u>Section 5.4</u>.   If this Agreement is validly terminated pursuant to <u>Section 5.5</u> other than by Seller by reason of a Default by Buyer, an Alternative Transaction is consummated, or a Default by Seller occurs, then Seller will promptly return the Initial Deposit to Buyer.

> **(b)**     **Credit Bid of Buyer's Secured Claim.**  The Sale Approval Motion will request that the Sale Approval Order provide that Buyer's Secured Claim will be deemed allowed by the Bankruptcy Court in the amount of **One Million Two Hundred Ninety-Seven Thousand Six Hundred Sixty-Five Dollars and Forty-Nine Cents ($1,297,665.49)** and deemed secured pursuant to a valid senior (i.e., first priority) Lien against all assets of the Estate. Subject to entry of the Sale Approval Order, Buyer's Secured Claim will (1) be applied and credited in said amount, at Closing, toward the payment by Buyer of the Purchase Price; (2) be deemed satisfied and paid by reason of such crediting; (3) remain allowed and secured pursuant to the terms of the Sale Approval Order in all circumstances; and (4) be subject to the Carve-Out provided for in Section 5.4 if the Sale to Buyer pursuant to this Agreement fails to occur as the result of a Default by Buyer.

> **(c)**     **Final Payment**.  Prior to or at Closing, Buyer will transfer to Seller the remaining cash portion of the Purchase Price in the sum of **One Million Eight Hundred Fifty-Two Thousand Three Hundred Thirty-Four Dollars and Fifty-One Cents ($1,852,334.51)**, by delivering to Seller a valid Cashier's Check payable to "Thomas H. Casey, Trustee" in said amount, in full and final satisfaction of the Purchase Price.

Any other payment obligations of Buyer under this Agreement, including the Cure Costs and any Ordinary Course Expenses paid by Buyer are in addition to the Three Million Five Hundred Thousand

Dollar ($3,500,000.00) cash portion of the Purchase Price set forth in this <u>Section 3.2</u>.

**3.3** **<u>Ordinary Course Expenses</u>**.  From the period from the Execution Date until the earliest to occur of the Closing, the approval by the Bankruptcy Court of an Alternative Transaction, or the termination of this Agreement pursuant to <u>Section 5.5</u>, Buyer may directly pay, settle, or otherwise resolve any ordinary course expenses owed by the Estate to any third party reasonably necessary to preserve and maintain the Sale Assets, including any moving, storage, security service, utility costs, rents, and internet service provider fees not otherwise paid by Buyer pursuant to the Trust Agreement (the **"Ordinary Course Expenses"**).  Further, Seller may utilize the Initial Deposit to fund the payment by the Estate of any Ordinary Course Expenses, with the prior written consent of Buyer.  In the event any portion of the Initial Deposit is used by Seller to pay any expenses payable by Buyer pursuant to <u>Section 2.3</u> or this <u>Section 3.3</u>, Buyer will promptly replace the portion of the Initial Deposit so applied (which replacement will not reduce or be credited toward the payment of the Purchase Price).  Prior to the Closing, no portion of the Initial Deposit may be used to pay (a) the fees of Seller, in its capacity as Chapter 7 trustee, or any professional or advisor of the Estate, or (b) any other costs and expenses, including the costs and expenses of maintaining the Excluded Assets.  The Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order will provide that Buyer will be entitled to an allowed administrative claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code for any amounts paid by Buyer for Ordinary Course Expenses, whether directly or for reimbursement of the Initial Deposit, which will be immediately paid with the proceeds of an Alternative Transaction, if any, or the proceeds of any other sale of Estate assets.  If, pursuant to this <u>Section 3.3</u>, Buyer pays rents and other obligations with respect to any Assigned Lease, whether directly, or indirectly by reimbursement of the Initial Deposit, Buyer will be deemed pursuant to the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order a sub-lessee with respect to such Assigned Lease and will granted all related rights, including the right of access to, and use of, the property subject to such Assigned Lease through the earlier of Closing, termination of this Agreement, and consummation of an Alternative Transaction.

**3.4** **<u>Buyer's Designation Rights and Payment of Cure Costs</u>**.  Until the occurrence of the earliest to occur of the thirty (30) day anniversary of the date of the Closing, a Default by Buyer, the denial by the Bankruptcy Court of the Sale Approval Motion, the denial by the Bankruptcy Court of the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Motion, the approval by the Bankruptcy Court of an Alternative Transaction, or the termination of this Agreement in accordance with the terms hereof (each, a **"Designation Rights Termination Event"**), Buyer may designate, by providing Notice of such designation to Seller, of: (1) any lease between the Estate and any third party in effect at the time of the designation to be deemed an Assigned Lease or an Excluded Asset and Excluded Liability; (2) any contract between the Estate and any third party in effect at the time of the designation to be deemed an Assigned Contract or an Excluded Asset and Excluded Liability; (3) any other asset of the Estate to be deemed an Excluded Asset; and (4) any other liability of the Estate to be deemed an Excluded Liability (collectively, **"Designation Rights"**); <u>provided</u> and on the condition that any and all adequate protection payments and other amounts required to be paid in order to preserve the right to assume or reject any such leases or contracts pending and following the exercise of any such Designation Rights will be timely advanced and paid by Buyer, and: (A) if the Closing occurs, will be payable by Buyer in addition to the Purchase Price, without being credited toward the payment of the Purchase Price; or (B) if an Alternative Transaction is consummated, will be reimbursed by the Estate as part of Buyer's Reimbursable Expenses in accordance with the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order.  Subject to Buyer timely advancing and paying such amounts, prior to the occurrence of a Designation Rights Termination Event, Seller will not reject, abandon, or transfer to any person other than Buyer, any lease between the Estate and any third party, any contract between the Estate and

any third party, or any other Sale Asset.  Upon the binding election by Buyer to purchase any Assumed Contract or Assumed Lease, Buyer will pay to the non-debtor counterparty to such Assumed Contract or Assumed Lease the associated Cure Costs.

**3.5** **Crucial Vendors**.  Seller will take all reasonable actions to maintain Debtor's relationships and good standing with Crucial Vendors prior to Closing; provided that Seller will not be responsible for making any payments to Crucial Vendors except as permitted under Section 3.3.

**3.6** **Distribution to Purported Junior Secured Claims**.  The Purported Junior Secured Claims will be subject to the proof of claim filing requirements and other claims allowance process established by the Bankruptcy Court in the Bankruptcy Case.  If, within sixty (60) days of the filing of a proof of claim with respect to any Purported Junior Secured Claim, Seller does not object to, or otherwise contest, the allowance of such Purported Junior Secured Claim or the related liens, Buyer and Ice Bear will be automatically granted standing (without requirement to make a demand) to object to, or otherwise contest, the allowance of such Purported Junior Secured Claim and the related liens with the ability to assert, settle, and otherwise resolve any related Estate claims or causes of action with respect to such Purported Junior Secured Claim; provided that the foregoing will not impair or otherwise impact (i) any other person's ability to object to, or otherwise challenge, any Purported Junior Secured Claim or (ii) Buyer and Ice Bear's right to file a joinder to, or otherwise support, any objection or other challenge to any Purported Junior Secured Claim.  The Sale Order will provide that, if within ninety (90) days of the filing of a proof of claim with respect to any Purported Junior Secured Claim, no objection or challenge to the allowance of such Purported Junior Secured Claim or the related liens has been raised by any person, such Purported Junior Secured Claim will be deemed allowed.  Upon the allowance of any Purported Junior Secured Claim, the holder of the Purported Junior Secured Claim will be entitled to its appropriate share of the proceeds of the Sale.  Any distributions of proceeds from the Sale to Buyer that would go to pay Purported Junior Secured Claims if allowed will be held in escrow by Seller pending the resolution of such Purported Junior Secured Claims as set forth in this Section 3.6.

**3.7** **Waiver of Conditionally Waived Unsecured Claims**.  Effective upon Closing, Ice Bear will waive any recovery on account of the Conditionally Waived Unsecured Claims.  As consideration for such waiver, (a) amounts that would otherwise be distributed to the Purported Junior Secured Claims to the extent such Purported Junior Secured Claims are not allowed as set forth in Section 3.6 and (b) proceeds of any Claim against current or former officers or directors of Debtors will, in each case, first be paid to reimburse Buyer and/or Ice Bear, as applicable, for any out of pocket expenses (including professional fees) incurred in pursuing any objection or other challenge to the Purported Junior Secured Claims or Actions against current or former officers or directors of Debtors, as applicable, and second any remaining amounts and proceeds will be distributed seventy percent (70%) to Ice Bear and thirty percent (30%) to the Estate.  For the avoidance of doubt, notwithstanding the foregoing waiver, if an Alternative Transaction is consummated or this Agreement is terminated, Buyer and Ice Bear reserve all rights to assert and enforce the Conditionally Waived Unsecured Claims, and the waiver of the Conditionally Waived Unsecured Claims set forth in this Section 3.7 will be enforceable and binding solely with respect to this Agreement and the Purchase Price specified herein; if Buyer or Ice Bear submits a higher bid in connection with the competitive sale process described in Section 2.4, all of Buyer and Ice Bear's rights are reserved with respect to the Conditionally Waived Unsecured Claims, including the option to alter the terms of this waiver (including removing it entirely) in connection with any such higher bid. However, notwithstanding the foregoing waiver of the Conditionally Waived Unsecured Claims, prior to the date of any auctioned sale of the Sale Assets pursuant to the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order, Seller will work in good faith with Buyer and Ice Bear to develop and communicate, orally or in writing, to Buyer and Ice Bear, a non-binding opinion of value of the

Conditionally Waived Unsecured Claims (including their estimated pro rata share of distributions to holders of general unsecured claims), but nothing in this sentence will impair Seller's ability to later form a different opinion of such value, including in response to information and/or legal theories provided by other persons.

**3.8    Brokerage Commissions**.  There are no Brokerage Commissions payable to any person pursuant to this Agreement.

**3.9    Closing Performance**.  Each Party will perform all acts required of it under this Agreement to enable the Closing to occur on or before Closing.

**3.10    Seller's Conditions to Closing**.  The obligation of Seller to consummate the Closing is subject to the fulfillment of each of the following conditions (except to the extent waived by Seller in its sole discretion):

**(a)**    Delivery by Buyer of the cash component of the Purchase Price to Seller;

**(b)**    Receipt by Seller of Buyer's signature to the Bill of Sale;

**(c)**    Buyer's Representations being true and correct in all material respects;

**(d)**    All other acts required of Buyer pursuant to this Agreement to enable the Closing to occur having been performed as contemplated by this Agreement;

**(e)**    The Trust Approval Order, the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order, and the Sale Order each having become a Final Order; and

**(f)**    There not being any Law or order restraining, enjoining or otherwise prohibiting or making illegal the consummation of the Sale.

**3.11    Buyer's Conditions to Closing**.  The obligation of Buyer to consummate the Closing is subject to the fulfillment of each of the following conditions (except to the extent waived by Buyer in its sole discretion):

**(a)**    Receipt by Buyer of Seller's signature to the Bill of Sale;

**(b)**    Seller's Representations being true and correct in all material respects;

**(c)**    All other acts required of Seller pursuant to this Agreement to enable the Closing to occur having been performed as contemplated by this Agreement;

**(d)**    The Trust Approval Order, the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order, and the Sale Order each having become a Final Order; and

**(e)**    There not being any Law or order restraining, enjoining or otherwise prohibiting or making illegal the consummation of the Sale.

**3.12    Closing**.  The consummation of the Sale (**"Closing"**) will consist of all of the following events, which the Parties will cause to occur concurrently: (i) the payment of the Purchase Price to Seller in accordance with this Agreement; (ii) the exchange of duly executed identical counterpart originals of the Bill of Sale; and (iii) the delivery by Seller to Buyer of any other documentation reasonably requested by Buyer to effectuate the Sale.

**3.13    Delivery and Removal of the Sale Assets**.  Any Sale Assets located within a premises leased pursuant to an Assigned Lease will be deemed delivered to Buyer effective as of the Closing. For a period of twenty (20) Business Days following the date of the Closing, Seller will make available for pick-up and removal by Buyer during normal business hours, including if necessary on a Saturday, any Sale Assets not located within a premises leased pursuant to an Assigned Lease. Prior to the expiration of said twenty (20) Business Day period, Buyer, at Buyer's cost, will cause all Sale Assets not located within a premises leased pursuant to an Assigned Lease to be relocated to a premises maintained by Buyer, and any damage occasioned by such relocation to be remedied.

**3.14    Alternate Vestee**.  Not later than two (2) Business Days prior to the hearing on the Sale Motion, Buyer may designate another person to accept title to the Sale Assets upon the Closing, by providing Notice of such designation to Seller and the Bankruptcy Court, provided that: (a) such action will not release Buyer from any obligation or liability under this Agreement, (b) Buyer's designee assumes all obligations and liabilities of Buyer under this Agreement pursuant to a written assignment and assumption agreement executed by Buyer (as assignor) and Buyer's designee (as assignee) and delivered to Seller in form and content reasonably acceptable to Seller, (c) Buyer's designee is not an Affiliate of Debtor unless properly disclosed to and approved by Seller and the Bankruptcy Court prior to the Closing, and (d) Buyer will provide Seller with all information regarding Buyer's designee required to lawfully transact the Sale.

**3.15    Books and Records; Inspection Rights**.  Following the Execution Date, upon request by Buyer, Seller will: (a) deliver to Buyer any contracts between Buyer or Ice Bear and their customers to which Debtor is not a party, and any business records owned by Buyer or Ice Bear, within Seller's possession or control; and (b) Seller will make the Books and Records reasonably available for copying by Buyer and Buyer's Agents, solely at Buyer's cost, during normal business hours.  From Closing through the resolution of the Bankruptcy Case, Buyer will promptly provide Seller with copies of any Books and Records reasonably requested by Seller to administer the Estate.  From the Execution Date through Closing, Buyer, Ice Bear and Buyer's Agents will be allowed, at Buyer's cost, to inspect the Sale Assets (including data and collection of data), wherever located.  Unless and until the Closing occurs, Buyer and Ice Bear will keep strictly confidential, and will cause Buyer's Agents to keep strictly confidential, all proprietary or confidential information regarding the Business accessed, provided or disclosed pursuant to this Section 3.15.

**3.16    Investigation Support.**  In addition to the payment of the Purchase Price and any other amounts payable by Buyer pursuant to this Agreement, upon Notice of request by Seller prior to Closing and so long as Seller has not consummated an Alternative Transaction and this Agreement has not terminated in accordance with its terms, Buyer will promptly fund the cost, not to exceed the sum of **One Hundred Thousand Dollars ($100,000.00)** absent Buyer's further written approval ("**Investigation Payment**"), of Seller's investigation into any potential Claims against any current or former directors or officers of Debtor and against any liability insurance maintained by Debtor related to any such potential Claims, and otherwise use commercially reasonable efforts to support any such investigation.  In the event Seller undertakes any such investigation, then within thirty (30) days of the completion of the investigation, Seller will deliver a comprehensive written report to Buyer summarizing Seller's findings with respect to the investigation.  If Seller sells any such Claim to a person other than Buyer, the Investigation Payment will be included as part of Buyer's Expense Reimbursement and will be repaid from the proceeds of such sale.  Nothing in this Section 3.16 will be construed as limiting Buyer or any other person's right to conduct their own investigation of potential Claims against current or former directors or officers of Debtor.  Nothing in this Section 3.16 will obligate Seller to initiate any such investigation, or obligate Seller to pursue any such Claim, and in no event will Seller have any liability to any person with respect to any such investigation, the results of any such investigation, or any such report.

**3.17** __Waiver of Certain Avoidance Claims__.  Seller, on behalf of himself and the Estate, agrees not to raise from the Execution Date through Closing, and to waive effective as of Closing, any Avoidance Claims or any other Claims against customers, suppliers or vendors of the Business (including the Crucial Vendors), including Claims arising out of Seller or the Estate's post-petition payments to vendors and suppliers and post-petition performance of warranty service for customers.

**3.18** __Ice Bear UCC-1 Filings__.  Within two (2) Business Days of the Execution Date, Ice Bear will withdraw or terminate all UCC Financing Statements filed by Ice Bear against Debtor, including the UCC Financing Statement filed with the California Secretary of State's Office on October 9, 2019, as Document No. 19-7739635585, and the UCC Financing Statement filed with the Delaware Secretary of State's Office on October 9, 2019, as Document No.2019-7067171.

**3.19** __Maintenance of Initial Deposit__.  Unless and until the Initial Deposit is applied, forfeited or returned pursuant to this Agreement, Seller will maintain the Initial Deposit in a federally insured bank approved for such purpose by the Office of the United States Trustee.  No interest will be earned by or payable to Buyer with respect to any funds deposited with Seller.

## ARTICLE 4
## WARRANTIES, REPRESENTATIONS, DISCLAIMERS AND WAIVERS

**4.1** __Representations and Warranties by Buyer__.  Buyer hereby makes the following representations and warranties (**"Buyer's Representations"**) to Seller:

    **(a)** __Legal Capacity of Buyer__.  Buyer has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Agreement and to perform its obligations under this Agreement.  Any person executing and delivering this Agreement on behalf of Buyer is duly authorized to do so.  Neither this Agreement nor the performance by Buyer of any obligation of Buyer under this Agreement will violate any provision of any article, by-law, operating agreement or partnership agreement of Buyer or any other contract, covenant, agreement, condition, restriction, injunction or order by which Buyer is bound.

    **(b)** __Buyer Represented by Legal Counsel__.  Buyer acted pursuant to the advice of its own independent legal counsel in connection with the negotiation and documentation of this Agreement, or was advised to obtain the advice of counsel, had reasonable opportunity to obtain the advice of counsel, and willfully declined to obtain the advice of counsel.

    **(c)** __Due Diligence and Approval of the Sale Assets__.  Buyer has conducted, completed and approved all research, investigation, review, analysis and other due diligence required or desired by Buyer in connection with this Agreement, the Sale Assets and the Sale, and hereby confirms Buyer's approval of the Sale Assets and all matters related to the Sale.

    **(d)** __Ability To Perform__.  Buyer has all funds required to timely purchase the Sale Assets, and the ability to timely perform all other obligations of Buyer pursuant to this Agreement.

    **(e)** __No Undisclosed Inducements__.  Buyer entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and no representations, warranties or promises other than those set forth in this Agreement were made by Seller or any of Seller's Agents to induce Buyer to enter into this Agreement.

    **(f)** __Buyer's Brokerage Commission Representation__.  Buyer has not engaged or utilized the services of any broker, sales agent or finder in connection with this Agreement or

the Sale, and no Brokerage Commission will be payable to any person in connection with this Agreement or the Sale by reason of any conduct of Buyer.

**(g)** **No Financing Contingency.**  Seller is not providing Buyer with any financing, Buyer is not assuming any existing financing, and Buyer's obligation to purchase the Sale Assets pursuant to this Agreement is not contingent upon Buyer obtaining any financing.

**(h)** **Ownership of Buyer's Secured Claim.**  Buyer is the owner and holder in due course of Buyer's Secured Claim, free and clear of Liens and Interests. Buyer has not sold, transferred, pledged or encumbered Buyer's Secured Claim or any interest therein. Buyer has not agreed to sell, transfer, pledge or encumber Buyer's Secured Claim or any interest therein.  Pending the consummation of the Sale or termination of this Agreement, Buyer will not sell, transfer, pledge or encumber, or agree to sell, transfer, pledge or encumber Buyer's Secured Claim, or any interest therein.

**(i)** **Ownership of Conditionally Waived Unsecured Claims**.  Buyer and/or Ice Bear are the owners and holders in due course of the Conditionally Waived Unsecured Claims, free and clear of Liens and Interests.  Buyer and Ice Bear have not sold, transferred, pledged or encumbered the Conditionally Waived Unsecured Claims or any interest therein.  Buyer and Ice Bear have agreed not to sell, transfer, pledge or encumber the Conditionally Waived Unsecured Claims or any interest therein.  Pending the consummation of the Sale or termination this Agreement, Buyer and Ice Bear will not sell, transfer, pledge or encumber, or agree to sell, transfer, pledge or encumber the Conditionally Waived Unsecured Claims or any interest therein.

**4.2** **Representations and Warranties by Seller**.    Seller hereby makes the following representations and warranties (**"Seller's Representations"**) to Buyer:

**(a)** **Legal Capacity of Seller.**  Subject only to the Sale Approval Order being entered and becoming a Final Order: (1) Seller is a Chapter 7 bankruptcy trustee duly appointed by the Bankruptcy Court to administer the Estate and has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Agreement and to perform the obligations of Seller under this Agreement, (2) any person executing and delivering this Agreement on behalf of Seller is duly authorized to do so; and (3) neither this Agreement nor the performance by Seller of any obligation of Seller under this Agreement will violate any provision of any article, by-law, operating agreement or partnership agreement of Seller or any contract, covenant, agreement, condition, restriction, injunction or order by which Seller is bound.

**(b)** **Seller Represented by Legal Counsel.**  Seller acted pursuant to the advice of its own independent legal counsel in connection with the negotiation and documentation of this Agreement, or was advised to obtain the advice of counsel, had reasonable opportunity to obtain the advice of counsel, and willfully declined to obtain the advice of such counsel.

**(c)** **No Undisclosed Inducements.**  Seller entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and no representations, warranties or promises other than those set forth in this Agreement were made by Buyer or any of Buyer's Agents to induce Seller to enter into this Agreement.

**(d)** **Seller's Brokerage Commission Representation.**  Seller has not engaged or utilized the services of any broker, sales agent or finder in connection with this Agreement or

the Sale, and no Brokerage Commission will be payable to any person in connection with this Agreement or the Sale by reason of any conduct of Seller.

**4.3    WAIVER OF IMPLIED WARRANTIES AND REPRESENTATIONS, AND "AS IS" SALE**. BUYER IS PURCHASING THE SALE ASSETS **"AS IS"**, **"WHERE IS"**, **"WITH ALL FAULTS"**, AND IN THEIR PRESENT CONDITION AND LOCATION.  SELLER MAKES AND WILL BE DEEMED TO HAVE MADE NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, REGARDING THE SALE ASSETS, INCLUDING WITH RESPECT TO: (A) LOCATION; (B), QUANTITY, QUALITY, SIZE, CONDITION, STATE OF REPAIR, FITNESS, OR SUITABILITY FOR INTENDED USE; (B) OWNERSHIP, POSSESSION OR STATUS OF TITLE (PROVIDED, HOWEVER, THAT THE SALE IS CONTINGENT UPON THE SALE APPROVAL ORDER PROVIDING THAT ALL RIGHTS, TITLES AND INTERESTS OF SELLER, DEBTOR AND THE ESTATE IN AND TO THE SALE ASSETS ARE BEING SOLD, TRANSFERRED AND ASSIGNED FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (f)); (C) COMPLIANCE WITH LAWS; (D) REQUIREMENTS FOR, VALIDITY OF, OR COMPLIANCE WITH, GOVERNMENTAL PERMITS OR INSURANCE REQUIREMENTS; OR (E) PRESENCE, ABSENCE OR LEGALITY OF HAZARDOUS, TOXIC OR OTHER SUBSTANCES WITHIN OR MIGRATING FROM OR THROUGH THE SALE ASSETS (INCLUDING ASBESTOS, UREA-FORMALDEHYDE, OR ANY OTHER HAZARDOUS MATERIAL).  AS A MATERIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT, BUYER NOW AND FOREVER WAIVES ANY AND ALL IMPLIED WARRANTIES AND REPRESENTATIONS REGARDING THE SALE ASSETS, INCLUDING WITH RESPECT TO THE FORGOING MATTERS, AND NOW AND FOREVER WAIVES AND RELEASES ANY AND ALL CLAIMS AGAINST SELLER, SELLER'S AGENTS AND THE ESTATE REGARDING ANY SUCH MATTERS.  WITHOUT LIMITING THE FORGOING, BUYER WILL RELY SOLELY ON THE SALE APPROVAL ORDER AND UPON BUYER'S OWN INSPECTIONS, ANALYSIS AND DUE DILIGENCE WITH RESPECT TO ALL OTHER MATTERS RELATING TO THE SALE ASSETS.

**4.4    RELEASE OF CLAIMS AGAINST THE BUYER RELEASED PARTIES AND RELATED PARTIES**.  AS A MATERIAL INDUCEMENT TO BUYER AND ICE BEAR TO ENTER INTO THIS AGREEMENT, AND AS CONSIDERATION FOR THE WAIVER OF THE CONDITIONALLY WAIVED UNSECURED CLAIMS PURSUANT TO SECTION 3.7, THE TRUST AGREEMENT SET FORTH IN SECTION 2.3, BUYER'S AGREEMENT TO PAY ORDINARY COURSE EXPENSES, THE CARVE-OUT FROM BUYER'S SECURED LIEN, THE CONSENT TO SELLER'S USE OF THE INITIAL DEPOSIT TO PAY ORDINARY COURSE EXPENSES PURSUANT TO SECTION 3.3 AND THE AGREEMENT BY BUYER TO PROMPTLY REINSTATE ANY PORTIONS OF THE INITIAL DEPOSIT USED BY SELLER FOR SUCH PURPOSES, THE ASSUMPTION BY BUYER OF THE ASSIGNED LIABILITES, AND THE PERFORMANCE OF THE OTHER OBLIGATIONS OF BUYER AND ICE BEAR PURSUANT TO THIS AGREEMENT, SELLER, UPON THE CLOSING AND FOREVER THEREAFTER, UNCONDITIONALLY AND IRREVOCABLY WAIVES, RELEASES AND DISCHARGES ANY AND ALL CLAIMS OF DEBTOR AND/OR THE ESTATE AGAINST EACH OF THE BUYER RELEASED PARTIES, BUYER'S AGENTS, BUYER'S AFFILIATES, ICE BEAR'S AFFILIATES, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS OF ANY KIND OR NATURE, WHETHER AT LAW, IN EQUITY OR OTHERWISE, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, AND CONTINGENT OR NON-CONTINGENT, INCLUDING AVOIDANCE CLAIMS (**"BUYER RELEASED CLAIMS"**); PROVIDED THAT THE BUYER RELEASED CLAIMS WILL NOT INCLUDE ANY CLAIM TO ENFORCE THE TERMS OF THIS AGREEMENT; AND PROVIDED FURTHER THAT, IF PRIOR TO THE ENTRY OF THE SALE APPROVAL ORDER, SELLER DETERMINES, AFTER WORKING IN GOOD FAITH WITH BUYER AND ICE BEAR TO ASSESS THE VALUE OF THE BUYER RELEASED CLAIMS, THAT THE BUYER RELEASED CLAIMS APPEAR TO BE OF SUFFICIENT VALUE TO THE ESTATE TO WARRANT THE TERMINATION OF THIS AGREEMENT, SELLER,

AT SELLER'S OPTION, MAY, UPON TWO (2) BUSINESS DAYS' PRIOR WRITTEN NOTICE TO BUYER, TERMINATE THIS AGREEMENT WITHOUT BEING DEEMED IN BREACH OR DEFAULT, OR TO HAVE ACTED IMPROPERLY OR IN BAD FAITH, BY REASON OF THE TERMINATION, BUT THE TERMINATION WILL NOT IMPAIR BUYER'S RIGHT TO RECEIVE THE BREAK-UP FEE AND BUYER'S EXPENSE REIMBURSEMENT IF AN ALTERNATIVE TRANSACTION IS CONSUMMATED.  FOR THE AVOIDANCE OF DOUBT, THE FOREGOING SHALL NOT BE DEEMED A RELEASE OF ANY HOLDER OF A PURPORTED JUNIOR SECURED CLAIM OR ANY CURRENT OR FORMER OFFICER OR DIRECTOR OF DEBTOR.

**4.5** **RELEASE OF LIABILITY UNDER TRUST AGREEMENT**.  BUYER, ICE BEAR AND BUYER'S AGENTS, ARE HEREBY IMMEDIATELY RELEASED, WAIVED, AND DISCHARGED BY SELLER AND THE ESTATE FOR ANY CLAIMS ARISING UNDER THE TRUST AGREEMENT SO LONG AS BUYER COMPLIES WITH THE REQUIREMENTS THEREUNDER.

**4.6** **RELEASE OF CLAIMS AGAINST SELLER AND SELLER'S AGENTS**.  BUYER AND ICE BEAR, UPON CLOSING AND FOREVER THEREAFTER, UNCONDITIONALLY AND IRREVOCABLY, WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AGAINST SELLER AND SELLER'S AGENTS, OF ANY KIND OR NATURE, AT LAW, IN EQUITY OR OTHERWISE, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, AND CONTINGENT OR NON-CONTINGENT (COLLECTIVELY, **"SELLER RELEASED CLAIMS"**), PROVIDED THAT THE SELLER RELEASED CLAIMS WILL NOT INCLUDE ANY CLAIMS TO ENFORCE THE TERMS OF THIS AGREEMENT.  FOR THE AVOIDANCE OF DOUBT, THE FOREGOING SHALL NOT BE DEEMED A RELEASE OF ANY HOLDER OF A PURPORTED JUNIOR SECURED CLAIM OR ANY CURRENT OR FORMER OFFICER OR DIRECTOR OF DEBTOR.

**4.7** **California Civil Code Section 1542 Waiver.**  The Parties understand and hereby knowingly waive any benefits or protections afforded or intended by California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR OR RELEASED PARTY.

**4.8** **Truth, Accuracy, Survival and Waiver**.  Until the Closing occurs or this Agreement is terminated, each Party will cause its forgoing representations and warranties to be true and accurate in all material respects.  Each representation, warranty, indemnity, disclaimer, waiver and release in this Agreement will survive the Closing or any termination of the Agreement.  Buyer's Representations are for the benefit of Seller and may be waived only by Seller, and only in an express written waiver executed by Seller.  Seller's Representations are for the benefit of Buyer and may be waived only by Buyer, and only in an express written waiver executed by Buyer.

**4.9** **Reservation of Rights**.  The Parties acknowledge that Buyer's Offer to purchase the Sale Assets and its entry into this Agreement will not be deemed an admission of, or otherwise indicative of, Seller's ownership and title of the Sale Assets.  All of Buyer and Ice Bear's rights are reserved with respect to any Sale Assets that may be the property of Buyer or Ice Bear and, thus, not property of the Estate.

## ARTICLE 5
## BREACH, DEFAULT, REMEDIES AND RIGHTS OF TERMINATION

**5.1**    **Breach**.  A Party will be in breach (**"Breach"**) if the Party fails to: (a) make any payment or deposit when due; (b) cause any representation or warranty by the Party to be true and accurate in all material respects; or (c) perform any other act required of the Party pursuant to this Agreement when such performance is due.

**5.2**    **Default.**  A Party will be in default (**"Default"**) if any Breach by the Party continues uncured for a period of more than five (5) Business Days following the Notice Receipt Date for Notice of such Breach by the other Party; provided, however, that if the Breach is not of a type that can be cured by the payment of money and more than five (5) Business Days are reasonably required to cure the Breach, then there will be no Default by reason of the Breach if the Party in Breach: (a) commences a cure of the Breach within five (5) Business Days of the date of the Notice of the Breach; (b) diligently prosecutes the cure to completion, and (c) completes the cure within ten (10) Business Days following the date of the Notice.

**5.3**    **LIQUIDATED DAMAGES - SELLER'S REMEDY**.   IF THE SALE FAILS TO OCCUR BECAUSE OF A BUYER DEFAULT, THEN SELLER WILL SUFFER SIGNIFICANT DAMAGES AS A RESULT OF SUCH FAILURE, INCLUDING LOST OPPORTUNITY COSTS, INTEREST COSTS, LEGAL COSTS, AND OTHER DAMAGES, THE AMOUNT OF WHICH WOULD BE LARGE BUT DIFFICULT TO ASCERTAIN.   THE PARTIES THEREFORE DESIRE TO LIQUIDATE SUCH SELLER DAMAGES AS OF THE EXECUTION DATE.  ACCORDINGLY, THE PARTIES HEREBY COVENANT AND AGREE THAT IF THE SALE FAILS TO OCCUR BY REASON OF A BUYER DEFAULT, THEN SELLER WILL KEEP AND RETAIN, AS REASONABLE LIQUIDATED DAMAGES FOR SUCH BUYER DEFAULT, THE ENTIRE **THREE HUNDRED FIFTY THOUSAND DOLLAR ($350,000.00)** INITIAL DEPOSIT IN THE FULL AMOUNT SET FORTH IN SECTION 3.2(a), AND BUYER AND ICE BEAR WILL BE DEEMED TO HAVE CONSENTED TO THE CARVE-OUT FROM BUYER'S SECURED CLAIM PROVIDED FOR IN SECTION 5.4.

( _THC, Trust_ ) INITIALED ON BEHALF OF SELLER

( _____ ) INITIALED ON BEHALF OF BUYER

( _____ ) INITIALED ON BEHALF OF ICE BEAR

**5.4**    **Carve-Out and Subordinated Replacement Lien.**  In the event of a Default by Buyer and resulting forfeiture by Buyer of the Initial Deposit as "Liquidated Damages" pursuant to Section 5.4: (a) Buyer's Secured Claim will be deemed allowed in the amount of **One Million Two Hundred Ninety-Seven Thousand Six Hundred Sixty-Five Dollars and Forty-Nine Cents ($1,297,665.49)**; (b) Subject to the Carve-Out set forth in clause (c) of this Section 5.4, Buyer's Secured Claim will be deemed secured by a valid perfected senior (i.e., first priority) lien against all assets of the Estate; (c) Buyer and Ice Bear will be deemed to have consented to a carve-out (**"Carve-Out"**) from Buyer's Secured Claim in the amount of **Three Hundred Fifty Thousand Dollars ($350,000.00)**, for use by Seller first to pay the allowed administrative Claims in the Bankruptcy Case, excluding allowed administrative claims of Buyer, Ice Bear and/or any other Buyer Released Party, and second, to pay the allowed unsecured Claims in the Bankruptcy Case; and (d) in exchange for the Carve-Out, Buyer will receive a lien (**"Subordinated Replacement Lien"**), junior and subordinate to all other allowed secured Claims and accompanying liens in the Bankruptcy Case, against all assets of the Estate, excluding the proceeds of the Carve-Out, in the amount of **Three Hundred Fifty Thousand Dollars ($350,000.00)**.

EXHIBIT 1  PAGE  48

**5.5**     **Termination.**

**(a)**     This Agreement may be terminated at any time by mutual written consent of each of the Parties.

**(b)**     Upon the occurrence of a Default, the non-defaulting Party will have the right to terminate this Agreement by Notice to the defaulting Party with immediate effect.

**(c)**     If the Closing fails to occur by March 6, 2020 or such later date as the Parties may agree, either Party will have the right to terminate this Agreement by written Notice to the other Party with immediate effect; provided that neither Party may terminate this Agreement pursuant to this Section 5.5(c) if the Party is in Breach or Default, or the cause of the Closing failing to occur by such deadline.

**(d)**     Buyer may terminate this Agreement by giving Notice of such termination to Seller if: (a) the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order is not entered in the Bankruptcy Case and has become a Final Order by February 4, 2020, or such later date as may be agreed by the Parties, and the Notice Receipt Date for the Notice of the exercise of such right of termination occurs prior to the entry of the Bidding Procedures, Break-Up Fee and Expense Reimbursement Approval Order; (b) the Trust Agreement Approval Order has not been entered in the Bankruptcy Case and become a Final Order by January 29, 2020 or such later date as may be agreed by the Parties, and the Notice Receipt Date for the Notice of the exercise of such right of termination occurs prior to the entry of the Trust Agreement Approval Order, or (c) the Sale Approval Order has not been entered in the Bankruptcy Case and become a Final Order by February 28, 2020, or such later date as may be agreed by the Parties, and the Notice Receipt Date for the Notice of the exercise of such right of termination occurs prior to the entry of the Sale Approval Order. However, no Party will be required to exercise any such right of termination. This provision will not confer any such right of termination upon any person not a Party to this Agreement.

**5.6**     **Effect of Valid Termination.**  If this Agreement is validly terminated pursuant to Section 5.5, then except as set forth in this Section 5.6, the Parties will have no further obligations or liabilities under this Agreement.  The following portions of this Agreement will survive any such termination: (a) all factual background information set forth in the Recitals; (b) Article 1, except that the first sentence of Section 1.3 will be deemed deleted; (c) any right of Buyer to receive a Break-Up Fee or Buyer Expense Reimbursement pursuant to Section 2.2, (d) Section 2.3;  (e) Section 2.4; (f) Section 3.2(a); (g) Section 3.2(b)(3); (h) Section 3.2(b)(4); (i) the last sentence of Section 3.15; (j) the last sentence of Section 3.16;  (k) Section 3.18;  (l) Section 3.19;  (m) Section 4.5; (n) Section 4.7; (o) Section 5.1, provided, however, that "Breach" will be deemed to refer only to a breach of an obligation that, pursuant to this Section 5.6, survives the termination; (p) Section 5.7, provided, however, that "Default" will be deemed to refer only to a Default of a Breach as redefined in clause (o) of this Section 5.6; (q) Section 5.3; (r) Section 5.4; (s) Section 5.5; (t) this Section 5.6; and (u) Article 6; and furthermore, in no event will termination of this Agreement relieve any Party from liability for any knowing and intentional Breach prior to the termination of any material covenant or agreement by such Party under this Agreement if such Breach was intended to hinder, materially delay, or prevent the Closing.

## ARTICLE 6
## GENERAL PROVISIONS

**6.1    Integration**.  This Agreement sets forth the entire agreement between the Parties regarding the Sale.  All prior and contemporaneous negotiations understandings and agreements between the Parties, oral or written, regarding the Sale, are hereby superseded.  No person may orally modify this Agreement, or make any oral representation regarding this Agreement or the Sale.

**6.2    Amendment**.  No modification of, deletion from, or addition to this Agreement will be effective unless made in writing and executed by each Party.

**6.3    No Third Party Obligations**.  This Agreement will not confer any rights upon any person not a Party, or obligate any Party to any person not a Party, provided, however, that this provision will not limit the effect of the Sale Approval Order on persons not a Party to this Agreement.

**6.4    Further Assurances**.  Each Party will promptly execute and deliver all documents and take all actions, including the payment of money, reasonably required to effectuate the Sale and perform its duties pursuant to this Agreement.

**6.5    Expenses of Negotiation, Documentation and Performance**.  Each Party will bear all costs and expenses incurred by such Party in connection with the negotiation and documentation of this Agreement and in the performance of its obligations under this Agreement.

**6.6    Joint and Several Liability**.  The obligations of Buyer and Ice Bear under this Agreement will be joint and several, and the Breach or Default by one of Buyer or Ice Bear will be deemed a Breach or Default by the other.

**6.7    Time of the Essence**.  Time is of the essence with respect to all dates and time periods set forth in this Agreement, such that each Party will perform all acts required of such Party pursuant to this Agreement by the date or within the time period required pursuant to this Agreement; provided, however, that If the date by which any obligation otherwise must be performed pursuant to this Agreement, or any Notice otherwise must be given pursuant to this Agreement, occurs on a day other than a Business Day, then the date by which the obligation must be performed or the Notice must be given will be automatically extended until the next Business Day.

**6.8    Governing Law, Jurisdiction and Venue**.  This Agreement is made under and will be construed in accordance with and governed by the substantive laws of the State of California, without giving effect to the principles of conflicts of law.  The Parties consent to the jurisdiction of the Bankruptcy Court and to venue in Orange County, California, for the purpose of resolving any controversy or disagreement which may arise among the Parties with respect to this Agreement, the Sale or the Sale Assets.  It will be a material Breach of this Agreement to seek to resolve any such controversy or disagreement in any other forum.

**6.9    Waiver**.  The failure by any Party to enforce any provision of this Agreement will not constitute a waiver of the right to enforce the same provision, or any other provision of this Agreement, thereafter.  No waiver by any Party of any provision of this Agreement will be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor will any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

**6.10    Severability**.  If any provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement will nonetheless remain in force and effect, unless the portion of this Agreement found to be illegal,

invalid or unenforceable is so material and significant that its deletion would violate the obvious primary purpose and intent of the Parties.

**6.11**   **Enforcement**.  Subject to the provisions of this Agreement including those which relate to venue, jurisdiction and the limitation of remedies or damages, each Party will have the right to enforce by proceedings at law or in equity all of the provisions of this Agreement, including the right to prosecute proceedings at law or in equity against any person who violates or attempts to violate any of such provisions, to enjoin any such person from doing so, to cause such violation to be remedied, and to recover damages for such violation.

**6.12**   **Litigation Costs and Attorneys' Fees**.  If any Party commences legal proceedings against any other Party to enforce this Agreement or to declare any rights or obligations under this Agreement, then the prevailing Party will recover from the losing Party its costs of suit, including reasonable attorneys' fees, as will be determined by the court in such proceeding.

**6.13**   **Notices**.  A Notice must be made in writing and delivered to the address indicated below, until Notice of a change of address is given by the recipient Party, after which the Notice will be delivered to the address set forth in the recipient Party's most recent change of address Notice. Notices by personal service, including by FedEx, will be deemed received upon delivery.  Notices by first class mail, postage prepaid, addressed as required by this Section, will be deemed received three (3) Business Days following deposit with the United States Post Office.  Rejection of a Notice, refusal to accept a Notice, or inability to deliver a Notice because of a failure to give Notice of a change of address, will constitute delivery.  Notwithstanding the forgoing, except with respect to a Notice of a Breach or Default, unless and until a Party gives Notice in accordance with the forgoing requirements declaring a Beach or Default, or demanding that all future Notices be made in accordance with the forgoing provisions, Notices may be given by email correspondence to the email address indicated below, until Notice of a change of email address is given by the recipient Party, and thereafter, to the recipient Party's most recent change of email address. Telephone numbers are listed for convenience only and not for the purpose of giving Notice.

| | |
|---|---|
| **Seller:** | Thomas H. Casey, Trustee<br>Ref: Ice Energy Holdings Inc. - Case No. 8:19-bk-14865-MW<br>22342 Avenida Empresa - Suite 200<br>Rancho Santa Margarita, California 92668<br>Telephone:    (949) 766-8787, ext. 102<br>E-Mail:        tomcasey@tomcaseylaw.com |
| **Any Notice to Seller must also be sent to Seller's attorney at:** | Weiland Golden Goodrich LLP<br>Attention:    Michael J. Weiland<br>650 Town Center Drive - Suite 600<br>Costa Mesa, California 92660<br>Telephone:    (714) 966-1000<br>E-Mail:        mweiland@lwgfllp.com |
| **Buyer or Ice Bear:** | ACP Thule Investments LLC and Ice Bear SPV #1<br>c/o Argo Infrastructure Partners<br>Attention:    Brice Soucy<br>650 Fifth Avenue – 17th Floor<br>New York, New York 10019<br>Telephone:    (646) 887-9380<br>E-Mail:        brice.soucy@argoip.com |

| **Any Notice to Buyer and or Ice Bear must also be sent to their attorney at:** | Ballard Spahr LLP<br>Attention:    Craig Solomon Ganz<br>1 East Washington Street – Suite 2300<br>Phoenix, Arizona 85004-2555<br>Telephone:    (602) 798-5427<br>E-Mail:        ganzc@ballardspahr.com |
|---|---|
| | -and- |
| | White & Case LLP<br>Attention:    Andrew Zatz<br>1221 Avenue of the Americas<br>New York, NY 10020-1095<br>Telephone: (212) 819-8504<br>E-Mail:        azatz@whitecase.com |

**Exhibits**.  The following Exhibits are attached to this Agreement and incorporated into and made a part of this Agreement as though fully set forth herein:

Exhibit "A"    -    Description of Business Assets

Exhibit "B"    -    Description of Assigned Leases

Exhibit "C"    -    Description of Assigned Contracts

Exhibit "D"    -    Description of Buyer's Secured Claim

Exhibit "E"    -    List of Crucial Vendors

Exhibit "F"        Proposed Bidding Procedures

**6.14    Inurement**.  This Agreement will inure to the benefit of and be binding upon the Parties and their respective successors, assigns, grantees, administrators and trustees, including any successor trustee appointed in the Bankruptcy Case.

**6.15    Execution**.  This Agreement may be executed in any number of identical counterparts, each of which is an original, and all of which together will constitute one and the same agreement. The delivery of an executed counterpart of a signature page to this Agreement and an initialed counterpart of any "Liquidated Damages" clause contained in this Agreement by electronic mail (email), electronic facsimile transmittal (fax), telecopy or other electronic means will be as effective as the physical delivery of an executed counterpart of this Agreement.

**THE UNDERSIGNED PARTIES** made, executed, entered into and delivered this Agreement effective as of the Execution Date set forth in the Preamble to this Agreement.

**Seller:**  _____
Thomas H. Casey, Trustee

**Buyer:**  ACP Thule Investments LLC
a Delaware limited liability company

By:  _____
Michael Madia

Its:  Authorized Signatory

**Ice Bear:**  Ice Bear SPV #1, LLC,
a Delaware limited liability company

By:  _____
Michael Madia

Its:  Authorized Signatory

- 26 of 26 -   APA for All Assets

EXHIBIT 1  PAGE 53

**THE UNDERSIGNED PARTIES** made, executed, entered into and delivered this Agreement effective as of the Execution Date set forth in the Preamble to this Agreement.

**Seller:**

Thomas H. Casey, Trustee

**Buyer:**

ACP Thule Investments LLC
a Delaware limited liability company

By: _____
    Michael Madia

Its:    Authorized Signatory

**Ice Bear:**

Ice Bear SPV #1, LLC,
a Delaware limited liability company

By: _____
    Michael Madia

Its:    Authorized Signatory

APA for All Assets

EXHIBIT 1  PAGE 54

## Exhibit "A"

### Description of Business Assets

1. Units in Storage

    a.  Ice Bear Thermal Energy Storage Units: 249

2. Equipment in Storage

    a.  Heating, ventilating and air conditioning units (HVACs): 266

    b.  Installation and Service Parts: curbs, gutters, curbs and other miscellaneous parts: 11,943

3. Office Furniture, Fixtures and Equipment

    a.  Conference tables, desks and chairs etc.

    b.  Racking, Cooler Box for R&D

    c.  Computers, monitors, phones, etc.

4. Machinery, equipment, and vehicles

    a.  2005 Chevy WT5500 VIN J8BE5B16857300834

    b.  2006 Ford F150 VIN 1FTRF12W76NA34302

    c.  2010 Ford E250 Van VIN 1FTNE2EL6ADA55584

    d.  2010 Ford E250 Van VIN 1FTN2EL1ADA55587

    e.  2010 Ford F150 VIN 1FTEW1CW2AFC71733

    f.  Chevy Intercooled Turbo Diesel Flat Bed (CA Registration 7V36944)

5. Other machinery, fixtures, and equipment

    a.  Production Molds

    b.  Auto Braze Equipment

    c.  Machine Molds

    d.  IB 30 Machine Molds

    e.  Ice Bear 20

    f.  Ice Bear 40

EXHIBIT 1  PAGE 55

    g.  Ice Bear 20

    h.  Forklift

    i.  Refrigerator Leak Detector with Smart Probe

    j.  IB30 Tooling at Agri Plastics

    k.  Forklift

6.  Intangibles and intellectual property

    a.  16 US Patents and 32 International Patents, including:

        i.  United States Patent: 7124594

7.  Internet domain names and websites

    a.  20 domain names, including:

        i.  www.ice-energy.com

        ii.  www.ice-energy.org

        iii.  www.iceenergy.net

        iv.  www.iceenergy.org

        v.  www.thermalicestorage.com

        vi.  www.iceairconditioning.com

        vii.  www.iceairconditioner.com

8.  Licenses, franchises, and royalties

9.  Customer lists, mailing lists, or other compilations

    a.  As stored on SalesRabbit

10.  Other intangibles, or intellectual property

    a.  CoolData Dashboard

EXHIBIT 1  PAGE 56

**Exhibit "B"**

**Description of Assigned Leases**

1.  Address: 1575 Sunflower Avenue, Costa Mesa, CA 92626

    a.  End Date: June 30, 2020

    b.  Landlord: RREEF CPIF 1575 Sunflower LLC

    c.  Description: 16,931 square feet Industrial Warehouse, 3,500 square feet
        office, 40 parking spaces

    d.  Total Rent and Expenses (Estimate, Most Recent Payment): $17,507.83
        per month

        i.  Monthly Base Rent: $11,590.00

2.  Address: 710 Palmyrita Ave, Building K, Unit A, Riverside, CA 92507

    a.  End Date: August 31, 2020

    b.  Landlord: Prologis (DCT Palmiowa LLC - DCT Industrial Trust)

    c.  Description: 22,032 square feet, Industrial Warehouse

    d.  Total Rent and Expenses (Estimate, Most Recent Payment): $19,053.23
        per month

        i.  Monthly Base Rent: $13,748.00

**Description of Rejected Leases**

1.  Address: 14 East Market Street, Suite #204, Corning, NY 14840

    Landlord: BY Properties, LLC, 85 Denison Pkwy East, Ste 211, Corning, NY 14830

2.  Address: 120 El Paseo, Santa Barbara, CA 93101

    Landlord: SIMA El Paseo, LP, 1231-B State Street, Santa Barbara, CA 93101

EXHIBIT 1  PAGE 57

## Exhibit "C"

### Description of Assigned Contracts, If Any

1. Subcontractor Agreements (understood to be standard forum, but subject to Buyer review) entered into in 2019 with the following Installation Contractors:

   a. Sanfer Electric

   b. Gomez AC

2. Other Agreements:

   a. Energy Outlet: contract for site inspection services

EXHIBIT 1  PAGE 58

## Exhibit "D"

### Description of Buyer's Secured Claim

The Secured Claim is supported by the Security Interest held by Ice Bear in the Debtor as described in Ice Bear's agreement for the "Assignment of Credit Agreements and Security Interest" dated 12/17/2019 regarding the Credit Facility dated February 5, 2016 and the Initial Financing Statement (2016 0811040 Filed 2/10/2016) as perfected in the UCC-3 filing dated 12/17/2019 between DHN Capital, LLC and Ice Bear.

EXHIBIT 1  PAGE 59

## Exhibit "E"

## List of Crucial Vendors

| # | Vendor | Contact | Type |
|---|--------|---------|------|
| 1 | Kore / Wyless | Verizon | Cellular Data |
| 2 | AT&T Mobility EOD, IoT & M2M | AT&T | Cellular Data |
| 3 | Rackspace | Rackspace | Server |
| 4 | NetSuite | Oracle America Inc. | Software |
| 5 | Sharepoint | Microsoft | Software |
| 6 | Azure | Microsoft | Server |
| 7 | Costa Mesa Lease (1575 Sunflower Ave) | RREEF CPIF 1575 Sunflower LLC | Office & Warehouse Lease |
| 8 | Riverside Lease (710 Palmyrita Ave) | Prologis (DCT Palmiowa LLC - DCT Industrial Trust) | Warehouse Lease |
| 9 | West American Insurance Company | Liberty Mutual Insurance | Insurance |
| 10 | GoDaddy | GoDaddy | Software |
| 11 | Docusign | Docusign | Software |
| 12 | SalesRabbit | SalesRabbit Inc | Software |
| 13 | OSpi | OSISoft | Software |
| 14 | Quickbooks | Intuit | Software |
| 15 | iForm Builder | Zerion Software | Software |
| 16 | Firmex | Firmex | Software |
| 17 | Costa Mesa Overflow Lease (1040 W 17th Street, Unit B) | CMC Family, LLC | Warehouse Lease |
| 18 | Box.com | Box | Software |
| 19 | Lloyd's Syndicate | ANV Global Services, Inc. | Insurance |
| 20 | Bluebeam | Nemetschek | Software |
| 21 | Power BI | Microsoft | Software |
| 22 | Microsoft Office 365 | Microsoft | Software |

EXHIBIT 1  PAGE 60

**Exhibit "F"**

**Proposed Sale and Bidding Procedures For Sale of
Substantially All of the Assets of Ice Energy Holdings, Inc.**

Ice Energy Holdings, Inc. (the "**Debtor**") has filed a chapter 7 case pending in the United States Bankruptcy Court in the Central District of California (the "**Bankruptcy Court**"), Case No. 8:19-bk-14865-MW (the "**Bankruptcy Case**"). Thomas H. Casey was appointed as the chapter 7 trustee (the "**Trustee**").

On January 24, 2020, the Trustee entered into an asset purchase agreement (the "**Stalking Horse Purchase Agreement**"), subject to Bankruptcy Court approval, with ACP Thule Investments LLC (the "**Stalking Horse Bidder**"), pursuant to which the Stalking Horse Bidder has agreed to purchase certain assets of the Estate described in the Stalking Horse Purchase Agreement (the "**Sale Assets**") for a purchase price of $3,500,000.00.  The transaction contemplated by the Stalking Horse Purchase Agreement is referred to as the "**Sale**" and is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").

The Bankruptcy Court granted the Trustee's motion ("**Bid Procedures Motion**") for an order approving the process and procedures set forth below (the "**Bid Procedures**") to be employed in connection with the solicitation for higher or better bids at an auction for the sale (the "**Auction**") of the Sale Assets (as defined in the Stalking Horse Purchase Agreement), and entered its Order on _____ __, 2020 (the "**Bidding Procedures Order**"). The Bid Procedures are designed to facilitate a full and fair marketing and bidding process to maximize the value of the Sale Assets for the benefit of the Debtor's creditors and the Estate.  The Bid Procedures Order also approved certain procedures relating to the assumption and assignment of certain executory contracts and unexpired leases ("**Assignment Procedures**"), the assumption and assignment of which is contemplated by the Stalking Horse Purchase Agreement (collectively, the "**Assumed Contracts**").

1.    <u>Important Dates</u>

      **Bid Deadline**                        **February 18, 2020 at noon**

      **Objection Deadline**                **February 5, 2020**

      **Auction & Sale Hearing**          **February 19, 2020**

2.    <u>Assets to be Sold Free and Clear</u>

Except as otherwise provided in the definitive documentation with respect to the Sale, the Debtor's rights, title and interest in and to the Sale Assets shall be sold free and clear of liens and claims to the extent set forth in Section 363 of the Bankruptcy Code.

3.    <u>Stalking Horse</u>

The Stalking Horse Purchase Agreement provides that the Stalking Horse Bidder shall act as the "stalking-horse bidder" in the Auction and, if it is not the Successful Purchaser (defined below) shall be entitled to a break-up fee in the amount of $105,000.00 (the "**Break-Up Fee**") and

EXHIBIT 1  PAGE 61

the Buyer's Expense Reimbursement (as defined in the Stalking Horse Purchase Agreement) to be paid from the proceeds of an Alternative Transaction, in accordance with the Stalking Horse Purchase Agreement and the Bid Procedures Order (collectively, the "**Bid Protections**").

4.    Qualification of Bids and Bidders

        To participate in the bidding process and to have a bid considered by the Trustee, each potential bidder must deliver a written offer or offers satisfying the below criteria (an "**Initial Overbid**").  A "**Qualified Bidder**" is a potential bidder that delivers a binding bid that in the Trustee's sole discretion satisfies the following criteria set forth below (**"Qualified Bid**"):

(a)    it states that the bidder offers to purchase all or any number or combination of the Sale Assets for cash, and/or a valid credit-bid by a secured creditor of the Debtor, for a purchase price in an amount of at least $3,750,000.00 in U.S. Dollars ("**Minimum Bid**");

(b)    it contains a closing date no later than March 6, 2020;

(c)    it identifies the full legal name of the bidder(s) (including any members, shareholders or individuals with an interest in the entity);

(d)    it includes a signed writing that the offer to purchase the Sale Assets is binding and irrevocable until the selection of the Successful Bidder (defined below), provided that if such bidder is selected as the Successful Bidder or Back-Up Bidder, its offer shall remain irrevocable until the earlier of (i) the Closing of the Sale to the Successful Bidder, and (ii) the date that is fifteen (15) days after the Sale Order becomes a Final Order;

(e)    it contains confirmation that the bidder shall, if designated as such in accordance with these procedures, serve as the Back-Up Bidder (defined herein) until the consummation of the transaction pursuant to the Successful Bid;

(f)    it contains confirmation it is not subject to any due diligence or financing contingencies of any kind, and that there are no conditions precedent to the bidder's ability to enter into a definitive agreement;

(g)    it is on the same terms as the Stalking Horse Purchase Agreement, or terms that the Trustee deems no less favorable in his reasonable judgment;

(h)    it includes a proposed asset purchase agreement (the "**Competing Purchase Agreement**") in substantially the same form as the Stalking Horse Purchase Agreement, duly authorized and executed by the bidder, along with a redline showing all changes between the Competing Purchase Agreement and the Stalking Horse Purchase Agreement. The Trustee shall determine, in his sole discretion, whether any Competing Purchase Agreement that modifies the Stalking Horse Purchase Agreement is a Qualified Bid;

(i)    it includes such financial and other information that will allow the Trustee, in his sole discretion, to make a determination of the bidder's financial

EXHIBIT 1  PAGE 62

wherewithal and its ability to consummate the Sale, including its ability to perform under any Assumed Contracts, which proof may be in the form of: (A) a letter of credit or loan commitment issued to the bidder that incudes evidence of the ability of the counterparty to provide such financing; (B) a current bank account statement and balance sheet of the bidder; (C) if the bidder is an entity formed for the purpose of purchasing the Sale Assets, current bank account statements, current balance sheets, income statements for the last two years, and federal income tax returns for the last two years of each of the supporting equity or debt holders of such bidder; or (D) evidence in such other form reasonably acceptable to the Trustee;

(j)    it identifies with particularity which liabilities, executory contracts and unexpired leases the bidder agrees to have assumed and assigned, and is accompanied by evidence establishing to the Trustee's reasonable satisfaction, the bidder's ability to pay any cure amounts and provide adequate assurance of performance with respect to such liabilities, executory contracts and unexpired leases. Any counterparty to an unexpired lease or executory contract that is scheduled to be assumed or assigned by the buyer may request adequate assurance information from the Trustee's counsel, provided however that any party receiving adequate assurance information from the Stalking Horse Bidder or any other Qualified Bidder is required to maintain the confidentiality of such information;

(k)    it includes an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Sale Assets prior to making its bid; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Sale Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise) regarding the Sale Assets or the completeness of any information provided in connection therewith or with the Sale, except as expressly stated in the Competing Purchase Agreement;

(l)    it specifically disclaims any right of the bidder to receive a break-up fee, termination fee or similar type of payment in connection with its bid, and waives any claim to compensation, including under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(m)    it is accompanied by evidence establishing, in form and substance reasonably satisfactory to the Trustee, that (A) the bidder is capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement, and (B) all necessary internal, board, and shareholder approvals related to the submission, execution, delivery, and closing of the Competing Purchase Agreement, have been obtained prior to submission of the bid;

(n)    includes a good faith deposit in an amount equal to ten percent (10%) of the Qualified Bid purchase price ("**Bidder Deposit**") to Trustee's counsel in the form of a certified check or wire transfer at least one business day prior to the Sale Hearing and Auction, which shall be subject to the Deposit terms below;

EXHIBIT 1  PAGE 63

(o)      it contains such other information reasonably requested by the Trustee;

(p)      it is received prior to the Bid Deadline.

Notwithstanding the foregoing, the Trustee, in his sole discretion, may consider a bidder or bid presented before or at the Sale Hearing or Auction to be a Qualified Bidder and Qualified Bid, respectively. The Trustee shall notify potential bidders as soon as possible whether their bids have been determined to be a Qualified Bid.

The Stalking Horse Purchaser shall be deemed a Qualified Bidder and the bid reflected in the Stalking Horse Purchase Agreement shall be deemed a Qualified Bid without compliance with the foregoing requirements.

5.      <u>Bid Deadline and Auction Process.</u>

(a)      A Qualified Bidder that desires to make a bid will deliver written and/or electronic copies (where available) of its bid to the Trustee's counsel, Weiland Golden Goodrich, LLP, 650 Town Center Drive, Suite 600, Costa Mesa, CA 92626, Attn: Michael Weiland, mweiland@wgllp.com, and Kerry Moynihan, kerry@kamlegal.com, the Trustee not later than <u>noon (prevailing Pacific Time) on February 18, 2020</u> (the **"Bid Deadline"**) or such other date as established by the Bankruptcy Court.

(b)      Any Deposit of a Qualified Bidder (other than the Stalking Horse Bidder) shall be forfeited if (i) the Qualified Bidder withdraws or modifies its bid other than as provided herein or otherwise agreed to by the Trustee; (ii) the Qualified Bidder is the Back-Up Bidder and either withdraws its bid prior to the consummation of the Sale contemplated by the Successful Bid or breaches the Competing Purchase Agreement associated with its Back-Up Bid; or (iii) the bidder is the Successful Bidder and either withdraws the bid before the consummation of the sale contemplated by the Successful Bid or breaches the Competing Purchase Agreement associated with such bid. Otherwise, each Deposit will be returned to each bidder (i) as soon as practicable if the bidder is not determined to be a Qualified Bidder, (ii) no later than five (5) business days after the Sale Hearing if the bidder is not determined to be the Successful Bidder or Back-Up Bidder, or (iii) no later than five (5) business days after consummation of the Sale to the Successful Bidder if the bidder is determined to be the Back-Up Bidder. The Deposit is not required to be maintained in any interest-bearing account.

(c)      If the Trustee determines, in his sole discretion, that no other Qualified Bid is received by the Bid Deadline )(or at the Sale Hearing or Auction if the Trustee, in his sole discretion, deems it appropriate to consider any late bid presented after the Bid Deadline), the Stalking Horse Bidder will be named the Successful Bidder and the Trustee shall request at the Sale Hearing that the Bankruptcy Court approve the Trustee's entry into the Stalking Horse Purchase Agreement and consummation of the transactions contemplated thereby, and request that the Sale Order be immediately effective upon entry.

EXHIBIT 1  PAGE 64

(d)  If the Debtor receives one or more Initial Overbids the Debtor will conduct the auction (the "**Auction**") of the Sale Assets at the Sale Hearing at the United States Bankruptcy Court for the Central District of California, Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Suite 6135 / Courtroom 6C, Santa Ana, CA 92701-4593, on <u>February 19, 2020</u> or such other date as established by the Bankruptcy Court.

(e)  The Auction shall be governed by the following procedures:

(i)  Qualified Bidders shall be entitled to participate in the Auction in person or through counsel or such other arrangements acceptable to the Trustee. Nothing herein shall be interpreted to prevent the Debtor, creditors, or other interested parties from appearing at the Sale Hearing or otherwise objecting to the Sale;

(ii)  Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person;

(iii)  the identity of each Qualified Bidder will be disclosed on the record at the Auction;

(iv)  each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other Qualified Bidder with respect to the bidding or the Sale;

(v)  each Qualified Overbidder shall be required to confirm that its Initial Overbid is a good faith bona fide offer and that it intends to consummate the Sale if selected as the Successful Bidder;

(vi)  at least one (1) business day prior to the Auction, each Qualified Bidder must inform the Debtor whether it intends to attend and participate in the Auction; <u>provided</u> that in the event a Qualified Overbidder elects not to attend the Auction, such Qualified Overbidder's Initial Overbid shall nevertheless remain fully enforceable against such Qualified Bidder and such Initial Overbid may still be designated by the Trustee as the Leading Bid (defined below), Successful Bid or the Back-Up Bid;

(vii)  prior to the Auction, the Trustee will provide copies of the Initial Overbid to the Stalking Horse Bidder which the Trustee believes, in his reasonable discretion is the highest or otherwise best offer (the **"Starting Bid"**);

(viii)  bidding will begin with the Starting Bid and continue in bidding increments (each a **"Subsequent Bid"**) providing a net value to the estate of at least an additional $50,000.00 above the prior bid;

(ix)  only Qualified Bidders will be entitled to make Subsequent Bids at the Auction;

EXHIBIT 1  PAGE 65

(x)     bidding will be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid ("**Leading Bid**");

(xi)    except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Trustee will give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Estate;

(xii)   the Auction shall continue until, in the Trustee's reasonable judgment, there is a highest or otherwise best bid from among the Qualified Bids submitted prior to or at the Auction (the "**Successful Bid**", and the bidder(s) making such bid, collectively, the **"Successful Bidder"**), and communicate to those present at the Auction the identity of the Successful Bidder and the details of the Successful Bid; and

(xiii)  the next highest or otherwise best bid (the "**Back-Up Bid**"), as determined by the Trustee in his reasonable judgment shall be required to serve as a back-up bidder (the **"Back-Up Bidder"**) and keep such bid open and irrevocable until consummation of the Sale of the Assets to the Successful Bidder.

6.    <u>Selection of Successful Bid and Sale Hearing.</u>

(a)    The determination by the Trustee at the conclusion of the Auction of the Successful Bid and Back-Up Bid shall be final, subject only to approval by the Bankruptcy Court.

(b)    Unless otherwise acceptable to the Trustee, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

(c)    Within two (2) business days after the conclusion of the Auction, the Trustee shall file a notice with the Bankruptcy Court identifying the Successful Bidder and the Back-Up Bidder.

(d)    The Trustee will sell the Sale Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing (as defined below).

(e)    Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Trustee will consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court. The Successful Bidder or Back-Up Bidder with whom the Trustee consummates the sale of the Sale Assets shall be referred to as the "**Successful Purchaser**."

EXHIBIT 1  PAGE 66

 (f) Trustee specifically reserves the right to seek all available damages from a defaulting bidder, including the Successful Bidder or the Back-Up Bidder.

 (g) The Trustee will seek entry of an order (the "**Sale Order**") from the Bankruptcy Court at a hearing (the **"Sale Hearing"**) on or before February 19, 2020 (prevailing Pacific Time) or such other date as established by the Court, unless otherwise determined by the Court, to approve and authorize the Sale to the Successful Bidder on terms and conditions determined in accordance with these Bid Procedures, as approved by order of this Court (the "**Bid Procedures Order**").

 (h) Objections, if any, to the Sale Motion, the assumption and assignment of contracts, leases, and the cures thereunder (if any), and any filed supplements thereto, shall (i) be in writing; (ii) specify with particularity the basis of the objection, and (iii) be filed with the Court and simultaneously served on Trustee's counsel set forth in Paragraph 5(a), and any other parties entitled to notice, on or before February 5, 2020 (prevailing Pacific Time) ("**Objection Deadline**"), and shall otherwise conform to the applicable Local Bankruptcy Rules.

7. <u>Closing</u>

 Unless otherwise agreed by the Successful Bidder and the Trustee, the Sale will close (the "**Closing**") no later than five (5) business days following the Sale Order becoming a Final Order, subject to satisfaction or waiver of all of the conditions to Closing contained in the relevant asset purchase agreement approved by the Bankruptcy Court.

8. <u>Jurisdiction</u>

 The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Sale Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Back-Up Bid, and/or any other matter that in any way relates to the foregoing. All Qualified Bidders shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the foregoing matters.

9. <u>Additional Procedures</u>

 The Trustee reserves the right to adopt any other procedures reasonably necessary to implement the Bidding Procedures, to the extent not inconsistent with the foregoing.

EXHIBIT 1  PAGE 67



**SECRETARY OF STATE**
**STATE OF CALIFORNIA**

**Search Certificate**

SEARCH REQUESTED ON:                                                         01/02/2020
Organization Debtor:   **ICE ENERGY HOLDINGS, INC**

Address:  **NOT SPECIFIED**
Date Range From:  **NOT SPECIFIED**
Search:  **ALL**

**\* Indicates Filings that have been accepted after the Certification Date.**

| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **15-7460197848** | **State Tax Lien** | **04/16/2015** | **17:00** | **04/16/2025** | **1** |

**Debtor:**
**Organization:**       ICE ENERGY HOLDINGS, INC
                823 MILFORD ST, GLENDALE CA USA, 91203 1520
**Secured Party:**
**Organization:**       EMPLOYMENT DEVELOPMENT DEPARTMENT
                PO BOX 826880, SACRAMENTO CA US, 94280

| Amendment Filing # | Filing Type | File Date | File Time | # of Pages |
|---|---|---|---|---|
| **15-74702994** | **Erroneous Termination** | **06/16/2015** | **17:00** | **1** |

| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **15-7462310372** | **State Tax Lien** | **04/28/2015** | **17:00** | **04/28/2025** | **1** |

**Debtor:**
**Organization:**       ICE ENERGY HOLDINGS, INC
                823 MILFORD ST, GLENDALE CA USA, 91203 1520
**Secured Party:**
**Organization:**       EMPLOYMENT DEVELOPMENT DEPARTMENT
                PO BOX 826880, SACRAMENTO CA US, 94280

| Amendment Filing # | Filing Type | File Date | File Time | # of Pages |
|---|---|---|---|---|
| **15-74703023** | **Erroneous Termination** | **06/16/2015** | **17:00** | **1** |

Continue

| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7739635585** | **Financing Statement** | **10/09/2019** | **12:56** | **10/09/2024** | **1** |

**Debtor:**
Organization:   ICE ENERGY HOLDINGS INC.

1575 SUNFLOWER AVENUE, COSTA MESA CA USA, 92626

**Secured Party:**
Organization:   ICE BEAR SPV #1, LLC

650 FIFTH AVENUE, 17/F, NEW YORK NY USA, 10019


| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7752285268** | **Financing Statement** | **12/16/2019** | **14:17** | **12/16/2024** | **1** |

**Debtor:**
Organization:   ICE ENERGY HOLDINGS INC.

120 EL PASEO, SANTA BARBARA CA USA, 93101

**Secured Party:**
Individual:   DRAPER JOSEPH

50 SUNNIEHOLME DRIVE, FAIRFIELD CT USA, 06824


| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7752285400** | **Financing Statement** | **12/16/2019** | **14:19** | **12/16/2024** | **1** |

**Debtor:**
Organization:   ICE ENERGY HOLDINGS INC.

120 EL PASEO, SANTA BARBARA CA USA, 93101

**Secured Party:**
Individual:   HEATLEY DAVID

1031 W. MONTANA ST., CHICAGO IL USA, 60614


| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7752285521** | **Financing Statement** | **12/16/2019** | **14:20** | **12/16/2024** | **1** |

**Debtor:**
Organization:   ICE ENERGY HOLDINGS INC.

Continue

**Secured Party:**
**Organization:**

120 EL PASEO, SANTA BARBARA CA USA, 93101

MINAKAMI TRUST
50 SUNNIEHOLME DRIVE, FAIRFIELD CT USA, 06824

---

| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7752285763** | **Financing Statement** | **12/16/2019** | **14:22** | **12/16/2024** | **1** |

**Debtor:**
**Organization:**
ICE ENERGY HOLDINGS INC.
120 EL PASEO, SANTA BARBARA CA USA, 93101

**Secured Party:**
**Organization:**
VOYAGER OCEAN LIMITED
WICKHAMS CAY II, ROAD TOWN, TORTOLA   VGB, VG1110

---

| Original Filing # | Filing Type | File Date | File Time | Lapse Date | # of Pages |
|---|---|---|---|---|---|
| **19-7752285884** | **Financing Statement** | **12/16/2019** | **14:24** | **12/16/2024** | **1** |

**Debtor:**
**Organization:**
ICE ENERGY HOLDINGS INC.
120 EL PASEO, SANTA BARBARA CA USA, 93101

**Secured Party:**
**Individual:**
ZEZZA DAVID
28 PALACE GARDENS TERRACE, LONDON   GBR, W8 4RP

Continue

**Total Pages:        10**

The undersigned Filing Officer hereby certifies that the above listing is a record of all presently active financing statements, tax liens, attachment liens and judgement liens, including any change documents relating to them, which name the above debtor, subject to any above-stated search qualifiers and are on file in my office as of **12/23/2019 at 1700 hours**.

The search results herein reflect only the specific information requested. The results of this Debtor search will not reflect variances of this name. If the Debtor is known under other personal names, trade names, business entities, or addresses, separate searches of these names will have to be requested and conducted. The Secretary of State, his officers and agents disclaim any and all liability for claims resulting from other filings on which the name of the Debtor can be found in any other form than which was requested.

Alex Padilla
Secretary of State

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
888-745-3886

WHEN RECORDED MAIL TO:
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001

**15-7460197848**
**04/16/2015 17:00**

 **FILED**
CALIFORNIA
SECRETARY OF STATE
**SOS**


**48361220026**   UCC 1 FILING

## NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

ICE ENERGY HOLDINGS, INC
823 MILFORD ST
GLENDALE, CA 91203-1520

Secretary of State

Letter ID.   L0475328320

Certificate No. G001131137

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 01/01/2014 to 06/30/2014 | $3,434.42 | $704.90 | $85.88 | $4,225.20 |

Interest calculated through 04/10/2015

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 04/10/2015
At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

*Teresa Gage*

By _____

**Authorized Representative**
This agency has adopted the use of a facsimile signature as affixed above.

DE 2181 Rev. 5 (7-12)

2106507264_P1731_E18

EXHIBIT 2  PAGE  72

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
Employment Development Department
888-745-3886

WHEN RECORDED MAIL TO:
STATE OF CALIFORNIA
Employment Development Department
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001

**1574702994**
**06/16/2015  17:00**



**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS



49488460014  UCC 3 FILING

<u>**TO CANCEL ERRONEOUS LIEN**</u>
<u>**NO FEE REQUIRED**</u>

Recorded without fee per
Gov. Code Sec. 27361.3

## RELEASE OF LIEN
## IMPOSED UNDER A CERTIFICATE OR NOTICE OF STATE TAX LIEN

CERTIFICATE NO.   G001131137

LETTER ID.      L0068226240

The Director of the Employment Development Department of the State of California hereby releases and certifies that there has been released all property from any lien imposed thereon by the filing and recording of that certain Certificate or Notice of Amount of tax, penalty, and interest due under Section 1703 of the California Unemployment Insurance Code or Section 7171 of the Government Code from:

ICE ENERGY HOLDINGS, INC

In the amount of  $4,225.20          which was recorded on   04/16/2015

in volume/page   15-7460197848          of Official Records of the Secretary of State



THE DIRECTOR OF THE EMPLOYMENT
DEVELOPMENT DEPARTMENT OF THE
STATE OF CALIFORNIA HAS CAUSED
THIS RELEASE TO BE ISSUED BY THE
DULY AUTHORIZED REPRESENTATIVE.

Date: 06/09/2015
This document is produced on a laser printer.

*Teresa Gage*

By

Authorized Representative
This agency has adopted the use of a
facsimile signature as affixed above.

DE2184 Rev. 5 (7-12)                                           134725632_P42_E1

EXHIBIT 2  PAGE  73

**RECORDING REQUESTED BY:**
**STATE OF CALIFORNIA**
EMPLOYMENT DEVELOPMENT DEPARTMENT
888-745-3886

**WHEN RECORDED MAIL TO:**
**STATE OF CALIFORNIA**
EMPLOYMENT DEVELOPMENT DEPARTMENT
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001

**15-7462310372**
**04/28/2015 17:00**



**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS


48591460020  UCC 1 FILING

## NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

ICE ENERGY HOLDINGS, INC
823 MILFORD ST
GLENDALE, CA 91203-1520

Secretary of State

Letter ID.  L0531304640

Certificate No. G001079281

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 07/01/2014 to 09/30/2014 | $3,960.50 | $612.07 | $64.79 | $4,637.36 |

Interest calculated through 04/21/2015

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 04/21/2015
At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

*Teresa Gage*

By _____

**Authorized Representative**
This agency has adopted the use of a facsimile signature as affixed above.

DE 2181 Rev. 5 (7-12)

1789927424_P1030_E17

EXHIBIT 2  PAGE  74

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
Employment Development Department
888-745-3886

WHEN RECORDED MAIL TO:
**STATE OF CALIFORNIA**
**Employment Development Department**
**LIEN GROUP, MIC 92G**
**PO BOX 826880**
**SACRAMENTO, CA 94280-0001**

**1574703023**
**06/16/2015 17:00**

 **FILED**
CALIFORNIA
SECRETARY OF STATE
**SOS**


**49488460025** UCC 3 FILING

<u>**TO CANCEL ERRONEOUS LIEN**</u>
<u>**NO FEE REQUIRED**</u>

Recorded without fee per
Gov. Code Sec. 27361.3

## RELEASE OF LIEN
## IMPOSED UNDER A CERTIFICATE OR NOTICE OF STATE TAX LIEN

CERTIFICATE NO.  G001079281

LETTER ID.      L0940641472

The Director of the Employment Development Department of the State of California hereby releases and certifies that there has been released all property from any lien imposed thereon by the filing and recording of that certain Certificate or Notice of Amount of tax, penalty, and interest due under Section 1703 of the California Unemployment Insurance Code or Section 7171 of the Government Code from:

## ICE ENERGY HOLDINGS, INC

In the amount of  $4,637.36          which was recorded on   04/28/2015

in volume/page   15-7462310372        of Official Records of the Secretary of State

 THE DIRECTOR OF THE EMPLOYMENT
DEVELOPMENT DEPARTMENT OF THE
STATE OF CALIFORNIA HAS CAUSED
THIS RELEASE TO BE ISSUED BY THE
DULY AUTHORIZED REPRESENTATIVE.

Date: 06/09/2015
This document is produced on a laser printer.

*Teresa Gage*

By

Authorized Representative
This agency has adopted the use of a
facsimile signature as affixed above.

DE2184 Rev. 5 (7-12)                                                    134725632_P53_E1

EXHIBIT 2  PAGE  75

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Dirk Michels, Esquire |
| (410) 528-5600 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
| --- |
| Dirk Michels, Esquire |
| Ballard Spahr LLP |
| 2029 Century Park East, SUite 800 |
| Los Angeles, CA 90067 |
| USA |

**DOCUMENT NUMBER:** 82558610002
**FILING NUMBER:** 19-7739635585
**FILING DATE:** 10/09/2019 12:56

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| | Ice Energy Holdings Inc. | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 1575 Sunflower Avenue | Costa Mesa | CA | 92626 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| | Ice Bear SPV #1, LLC | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 650 Fifth Avenue, 17/F | New York | NY | 10019 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

Any and all Ice Bear Units (thermal energy storage units) now owned or hereafter acquired by Debtor, wherever located and however held,
including, without limitation, completed or partially completed units, any and all raw materials or other components used for the production of such units, now owned or hereafter acquired by Debtor, and all proceeds of the foregoing.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
| --- | --- |

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| --- | --- |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor |
| --- |

| 8. OPTIONAL FILER REFERENCE DATA: |
| --- |

FILING OFFICE COPY

EXHIBIT 2  PAGE  76

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Gwen Chang |
| 8885652837 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| Telos Legal Corp. |
| 1818 11th Street |
| Suite 101 |
| Sacramento, CA 95814 |
| USA |

**DOCUMENT NUMBER: 84532830002**
**FILING NUMBER: 19-7752285268**
**FILING DATE: 12/16/2019 14:17**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. **DEBTOR'S NAME**: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | Ice Energy Holdings Inc. | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |
| | 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 120 El Paseo | Santa Barbara | CA | 93101 | USA |

2. **DEBTOR'S NAME**: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | | |
| | 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | Draper | Joseph | | | |
| | 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 50 Sunnieholme Drive | Fairfield | CT | 06824 | USA |

4. **COLLATERAL**: This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)        ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

EXHIBIT 2  PAGE 77

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Gwen Chang
8885652837

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Telos Legal Corp.
1818 11th Street
Suite 101
Sacramento, CA 95814
USA

**DOCUMENT NUMBER: 84532830003**
**FILING NUMBER: 19-7752285400**
**FILING DATE: 12/16/2019 14:19**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Ice Energy Holdings Inc. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 El Paseo | Santa Barbara | CA | 93101 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Heatley | David | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1031 W. Montana St. | Chicago | IL | 60614 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

EXHIBIT 2  PAGE  78

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Gwen Chang |
| 8885652837 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| Telos Legal Corp. |
| 1818 11th Street |
| Suite 101 |
| Sacramento, CA 95814 |
| USA |

**DOCUMENT NUMBER: 84532830004**
**FILING NUMBER: 19-7752285521**
**FILING DATE: 12/16/2019 14:20**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ice Energy Holdings Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 El Paseo | Santa Barbara | CA | 93101 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Minakami Trust | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 50 Sunnieholme Drive | Fairfield | CT | 06824 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor |
|---|

| 8. OPTIONAL FILER REFERENCE DATA: |
|---|

**FILING OFFICE COPY**

EXHIBIT 2  PAGE  79

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Gwen Chang
8885652837

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Telos Legal Corp.
1818 11th Street
Suite 101
Sacramento, CA 95814
USA

**DOCUMENT NUMBER: 84532830005**
**FILING NUMBER: 19-7752285763**
**FILING DATE: 12/16/2019 14:22**

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| Ice Energy Holdings Inc. |  |  |  |

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
|  |  |  |  |  |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 El Paseo | Santa Barbara | CA | 93101 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
|  |  |  |  |

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
|  |  |  |  |  |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  |  |  |  |  |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| Voyager Ocean Limited |  |  |  |

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
|  |  |  |  |  |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Wickhams Cay II | Road Town, Tortola |  | VG1110 | VGB |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)    ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

EXHIBIT 2  PAGE  80

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Gwen Chang
8885652837

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Telos Legal Corp.
1818 11th Street
Suite 101
Sacramento, CA 95814
USA

**DOCUMENT NUMBER: 84532830006**
**FILING NUMBER: 19-7752285884**
**FILING DATE: 12/16/2019 14:24**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Ice Energy Holdings Inc. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 El Paseo | Santa Barbara | CA | 93101 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Zezza | David | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 28 Palace Gardens Terrace | London | | W8 4RP | GBR |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)    ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY

EXHIBIT 2  PAGE  81

# Delaware

*Page 1*

### The First State

*CERTIFICATE*

SEARCHED JANUARY 8, 2020 AT 2:50 P.M.
FOR DEBTOR, ICE ENERGY HOLDINGS, INC.

| 1 OF 10 | FINANCING STATEMENT | 20160811040 |

*EXPIRATION DATE: 02/10/2021*

| DEBTOR: | ICE ENERGY HOLDINGS INC. | | |
| | 3 EAST DE LA GUERRA STREET | ADDED | 02-10-16 |
| | SANTA BARBARA, CA US 93101 | REMOVED | 01-05-18 |
| DEBTOR: | ICE ENERGY HOLDINGS INC. | | |
| | 120 EL PASEO | ADDED | 01-05-18 |
| | SANTA BARBARA, CA US 93101 | | |
| SECURED: | DHN CAPITAL, LLC | | |
| | PO BOX 18735 | ADDED | 02-10-16 |
| | IRVINE, CA US 92623 | | |
| SECURED: | ICE BEAR SPV # 1, LLC | | |
| | 650 FIFTH AVE, 17/F | ADDED | 12-17-19 |
| | NEW YORK, NY US 10019 | | |

*F I L I N G   H I S T O R Y*

Jeffrey W. Bullock, Secretary of State

20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  82

# Delaware

## The First State

20160811040    FILED 02-10-16    AT 2:19 P.M.    FINANCING STATEMENT

20180112819    FILED 01-05-18    AT 1:06 P.M.    AMENDMENT

20199004560    FILED 12-17-19    AT 6:09 P.M.    FULL ASSIGNMENT


2 OF 10          FINANCING STATEMENT              20172633136
              EXPIRATION DATE: 04/21/2022
DEBTOR:      ICE ENERGY HOLDINGS, INC.

             3 EAST DE LA GUERRA STREET          ADDED    04-21-17

             SANTA BARBARA, CA US 93101
SECURED:     DIANE STEWART

             19111 BAYTREE LANE                  ADDED    04-21-17

             SONOMA, CA US 95476


*F I L I N G   H I S T O R Y*

20172633136    FILED 04-21-17   AT 8:00 P.M.    FINANCING STATEMENT


3 OF 10          LEASE                           20172910468
              EXPIRATION DATE: 05/03/2022
DEBTOR:      ICE ENERGY HOLDINGS INC.





Jeffrey W. Bullock, Secretary of State

20201541971-UCC11                          Authentication: 202146382
SR# 20200148613                            Date: 01-08-20
You may verify this certificate online at corp.delaware.gov/authver.shtml

EXHIBIT 2  PAGE  83

# Delaware

*Page 3*

## The First State

```
            3 E DE LA GUERRA STREET              ADDED    05-03-17

            SANTA BARBARA, CA US 93101

SECURED:    ROYAL BANK AMERICA LEASING,LP

            550 TOWNSHIP LINE ROAD, SUITE 425    ADDED    05-03-17

            BLUE BELL, PA US 19422
```

### F I L I N G   H I S T O R Y

```
 20172910468     FILED 05-03-17    AT 12:32 P.M.   LEASE


    4 OF 10         FINANCING STATEMENT              20180041836
                EXPIRATION DATE: 01/02/2023
DEBTOR:     ICE ENERGY HOLDINGS INC.

            3 E. DE LA GUERRA ST                ADDED    01-02-18

            SANTA BARBARA, CA US 93101

SECURED:    SECURED LENDER SOLUTIONS, LLC

            P.O. BOX 2576                       ADDED    01-02-18

            SPRINGFIELD, IL US 62708
```

### F I L I N G   H I S T O R Y



Jeffrey W. Bullock, Secretary of State

20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  84

# Delaware

*Page 4*

### The First State

*20180041836    FILED 01-02-18    AT 5:25 P.M.    FINANCING STATEMENT*

*5 OF 10        FINANCING STATEMENT            20197067171*

        *EXPIRATION DATE: 10/09/2024*
*DEBTOR:        ICE ENERGY HOLDINGS INC.*

        *1575 SUNFLOWER AVENUE                ADDED    10-09-19*

        *COSTA MESA, CA US 92626*

*SECURED:       ICE BEAR SPV #1, LLC*

        *650 FIFTH AVENUE, 17/F               ADDED    10-09-19*

        *NEW YORK, NY US 10019*

*F I L I N G   H I S T O R Y*

*20197067171    FILED 10-09-19    AT 3:46 P.M.    FINANCING STATEMENT*

*6 OF 10        FINANCING STATEMENT            20198956562*

        *EXPIRATION DATE: 12/16/2024*
*DEBTOR:        ICE ENERGY HOLDINGS INC.*

        *120 EL PASEO                         ADDED    12-16-19*

        *SANTA BARBARA, CA US 93101*



Jeffrey W. Bullock, Secretary of State

20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  85

# Delaware

*Page 5*

### The First State

SECURED:       DRAPER, JOSEPH

50 SUNNIEHOLME DRIVE              ADDED   12-16-19

FAIRFIELD, CT US 06824


*F I L I N G   H I S T O R Y*

20198956562    FILED 12-16-19   AT 4:58 P.M.    FINANCING STATEMENT


7 OF 10          FINANCING STATEMENT          20198956786

EXPIRATION DATE: 12/16/2024

DEBTOR:      ICE ENERGY HOLDINGS INC.

120 EL PASEO                   ADDED   12-16-19

SANTA BARBARA, CA US 93101

SECURED:     HEATLEY, DAVID

1031 W. MONTANA ST.            ADDED   12-16-19

CHICAGO, IL US 60614


*F I L I N G   H I S T O R Y*

20198956786    FILED 12-16-19   AT 5:02 P.M.    FINANCING STATEMENT





Jeffrey W. Bullock, Secretary of State

20201541971-UCC11                     Authentication: 202146382
SR# 20200148613                              Date: 01-08-20
You may verify this certificate online at corp.delaware.gov/authver.shtml

EXHIBIT 2  PAGE  86

# Delaware

*Page 6*

## The First State

```
     8 OF 10          FINANCING STATEMENT              20198956968
                  EXPIRATION DATE: 12/16/2024
  DEBTOR:       ICE ENERGY HOLDINGS INC.

                120 EL PASEO                    ADDED   12-16-19

                SANTA BARBARA, CA US 93101

  SECURED:      MINAKAMI TRUST

                50 SUNNIEHOLME DRIVE            ADDED   12-16-19

                FAIRFIELD, CT US 06824



                  F I L I N G   H I S T O R Y

    20198956968    FILED 12-16-19   AT 5:04 P.M.   FINANCING STATEMENT



     9 OF 10          FINANCING STATEMENT              20198957131
                  EXPIRATION DATE: 12/16/2024
  DEBTOR:       ICE ENERGY HOLDINGS INC.

                120 EL PASEO                    ADDED   12-16-19

                SANTA BARBARA, CA US 93101

  SECURED:      VOYAGER OCEAN LIMITED

                WICKHAMS CAY II                 ADDED   12-16-19
```



20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  87

# Delaware

*Page 7*

## The First State

ROAD TOWN, TORTOLA,   VG VG1110

*F I L I N G   H I S T O R Y*

20198957131    FILED 12-16-19   AT 5:07 P.M.    FINANCING STATEMENT

10 OF 10      FINANCING STATEMENT            20198957214

EXPIRATION DATE: 12/16/2024

DEBTOR:      ICE ENERGY HOLDINGS INC.

120 EL PASEO                  ADDED    12-16-19

SANTA BARBARA, CA US 93101

SECURED:    ZEZZA, DAVID

28 PALACE GARDENS TERRACE        ADDED    12-16-19

LONDON,   GB W84RP

*F I L I N G   H I S T O R Y*

20198957214    FILED 12-16-19   AT 5:10 P.M.    FINANCING STATEMENT

*E N D   O F   F I L I N G   H I S T O R Y*

THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE
LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS,



Jeffrey W. Bullock, Secretary of State

20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  88

# Delaware

*Page 8*

### The First State

*FEDERAL TAX LIENS AND UTILITY SECURITY INSTRUMENTS FILED IN THIS OFFICE WHICH NAME THE ABOVE DEBTOR, ICE ENERGY HOLDINGS, INC. AS OF JANUARY 6, 2020 AT 11:59 P.M.*



Jeffrey W. Bullock, Secretary of State

20201541971-UCC11
SR# 20200148613
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202146382
Date: 01-08-20

EXHIBIT 2  PAGE  89

████████████
████████████
████████████
████████████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |

```
┌                                              ┐
  CT Corporation
  555 Capitol Mall, Suite 1000
  Sacramento, CA 95814
└                                              ┘
```

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 02:19 PM 02/10/2016**
**U.C.C. Initial Filing No: 2016 0811040**

**Service Request No:  20160722754**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Ice Energy Holdings Inc.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **3 East De La Guerra Street** | **Santa Barbara** | **CA** | **93101** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **DHN Capital, LLC** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **PO Box 18735** | **Irvine** | **CA** | **92623** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
**All present and future assets of the Debtor.**

**Notice – Pursuant to an agreement between debtor and secured party, debtor has agreed not to grant a security interest in the collateral, described herein and in any future commercial tort claims to any other secured party. Accordingly, the acceptance of any such security interest by anyone other than the above secured party may constitute the tortious interference with secured party's rights.**

**In the event that any entity is granted a security interest in debtor's accounts, chattel paper or general intangibles contrary to the above, the secured party asserts a claim to any proceeds thereof received by such entity.**

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility  6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA: **DE** |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

EXHIBIT 2  PAGE  90

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:06 PM 01/05/2018**
**U.C.C. Initial Filing No: 2016 0811040**
**Amendment No: 2018 0112819**
**Service Request No:  20180085284**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER **20160811040   Filed 02/10/2016** | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME **Ice Energy Holdings Inc.** | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME **Ice Energy Holdings Inc.** | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS **120 El Paseo** | CITY **Santa Barbara** | STATE **CA** | POSTAL CODE **93101** | COUNTRY **USA** |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN collateral

Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME **DHN Capital, LLC** | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**DE SOS**

International Association of Commercial Administrators (IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

EXHIBIT 2  PAGE  91

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

CT Corporation
555 Capitol Mall, Suite 1150
Sacramento, CA 95814
ATTN: Lindsay Wilhite

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:09 PM 12/17/2019**
**U.C.C. Initial Filing No: 2016 0811040**
**Amendment No: 2019 9004560**
**Service Request No:   20198704132**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| **2016 0811040   Filed 02/10/2016** | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Ice Bear SPV # 1, LLC** | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| C/O Argo Infrastructure Partners, 650 Fifth Ave, 17/F | New York | NY | 10019 | USA |

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **DHN Capital, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**DE SOS    Debtor: Ice Energy Holdings Inc.**

International Association of Commercial Administrators (IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

EXHIBIT 2  PAGE  92

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address) |

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 08:00 PM 04/21/2017**
**U.C.C. Initial Filing No: 2017 2633136**

**Service Request No:  20172714719**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| **Ice Energy Holdings, Inc.** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **3 East De La Guerra Street** | **Santa Barbara** | **CA** | **93101** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| **Diane Stewart** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **19111 Baytree Lane** | **Sonoma** | **CA** | **95476** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:   ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility      6b. Check only if applicable and check only one box:   ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)      International Association of Commercial Administrators (IACA)

EXHIBIT 2  PAGE  93

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
GISELLA MELENDEZ 800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**
EFILING@WOLTERSKLUWER.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**
P.O. BOX 29071

GLENDALE, CA 91209-9071

US

Delaware Department of State
U.C.C. Filing Section
Filed: 12:32 PM 05/03/2017
U.C.C. Initial Filing No: 2017 2910468

Service Request No:  20173038709

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME ICE ENERGY HOLDINGS INC. | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 3 E DE LA GUERRA STREET | CITY SANTA BARBARA | STATE CA | POSTAL CODE 93101 | COUNTRY US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME ROYAL BANK AMERICA LEASING,LP | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 550 TOWNSHIP LINE ROAD, SUITE 425 | CITY BLUE BELL | STATE PA | POSTAL CODE 19422 | COUNTRY US |

**4. COLLATERAL:** This financing statement covers the following collateral:
**(1)Rotational Molding Equipment; "including all replacements, parts, substitutions, modifications, accessories, additions, attachments, accessions and tools of the debtor now or hereafter installed therein, afixed thereto or used or intended to be used in connection therewith."**

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☑ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:
DE-0-58744202-53246527

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT 2  PAGE  94

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Delaware Department of State
U.C.C. Filing Section
Filed: 05:25 PM 01/02/2018
U.C.C. Initial Filing No: 2018 0041836

Service Request No: 20180025460

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Corporation Service Company    1-800-858-5294

**B. E-MAIL CONTACT AT FILER** (optional)
SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

1407 76396

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

Filed In: Delaware
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME ICE ENERGY HOLDINGS INC. | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 3 E. DE LA GUERRA ST | CITY SANTA BARBARA | STATE CA | POSTAL CODE 93101 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME SECURED LENDER SOLUTIONS, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS P.O. BOX 2576 | CITY SPRINGFIELD | STATE IL | POSTAL CODE 62708 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
ALL ACCOUNTS, CHATTEL PAPER, DOCUMENTS, INSTRUMENTS, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, GOODS, INVENTORY, INVESTMENT PROPERTY, RENTS, INCOME, SECURITIES, FIXTURES AND OTHER PROPERTY, NOW EXISTING OR HEREAFTER ARISING, AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE PROCEEDS. ALL MACHINERY AND EQUIPMENT, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE PROCEEDS.

THE SECURED PARTY NAMED IN THIS RECORD IS ACTING IN A REPRESENTATIVE CAPACITY FOR PURPOSES OF FORWARDING NOTICES & INQUIRIES REGARDING THIS RECORD. FOR MORE INFORMATION, PLEASE CONTACT THE SECURED PARTY AT THE ADDRESS LISTED ABOVE OR AT UCCSPREP@CSCINFO.COM.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:** 1383062

1407 76396

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400

EXHIBIT 2  PAGE  95

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| ICE ENERGY HOLDINGS INC. | |
| OR | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) |  SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only _one_ additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | | |
| OR  10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  _or_  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only _one_ name (11a or 11b)

| | | | |
|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | |
| OR  11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

See Below additional collateral description, if applicable:

Collateral Includes but is not limited to Agricultural equipment FF&E

| | |
|---|---|
| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable) | 14. This FINANCING STATEMENT:  ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:
Special Instructions Paper File

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400

EXHIBIT 2  PAGE  96

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| DIRK MICHELS, ESQUIRE  (215) 665-8500 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| DARREILR@BALLARDSPAHR.COM |

| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |
|---|
| BALLARD SPAHR LLP |
| 1735 MARKET STREET, 51ST FLOOR |
| PHILADELPHIA, PA 19103-7599 |
| US |

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 03:46 PM 10/09/2019**
**U.C.C. Initial Filing No: 2019 7067171**

**Service Request No:  20197467573**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ICE ENERGY HOLDINGS INC. | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 1575 SUNFLOWER AVENUE | COSTA MESA | CA | 92626 | | US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ICE BEAR SPV #1, LLC | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 650 FIFTH AVENUE, 17/F | NEW YORK | NY | 10019 | | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
**Any and all Ice Bear Units (thermal energy storage units) now owned or hereafter acquired by Debtor, wherever located and however held, including, without limitation, completed or partially completed units, any and all raw materials or other components used for the production of such units, now owned or hereafter acquired by Debtor, and all proceeds of the foregoing.**

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrator

EXHIBIT 2  PAGE  97

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
(302) 483-7293

B. E-MAIL CONTACT AT FILER (optional)
GWEN.CHANG@TELOSLEGALCORP.COM

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

TELOS LEGAL CORP.

1012 COLLEGE ROAD, SUITE 201

DOVER, DE 19904

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:58 PM 12/16/2019**
**U.C.C. Initial Filing No: 2019 8956562**

**Service Request No:  20198670372**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ICE ENERGY HOLDINGS INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 EL PASEO | SANTA BARBARA | CA | 93101 | US |

2. DEBTOR'S NAME  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| DRAPER | JOSEPH | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 50 SUNNIEHOLME DRIVE | FAIRFIELD | CT | 06824 | US |

4. COLLATERAL: This financing statement covers the following collateral:
**All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products  thereof.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrato

EXHIBIT 2  PAGE  98

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(302) 483-7293

**B. E-MAIL CONTACT AT FILER (optional)**
GWEN.CHANG@TELOSLEGALCORP.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

TELOS LEGAL CORP.

1012 COLLEGE ROAD, SUITE 201

DOVER, DE 19904

US

Delaware Department of State
U.C.C. Filing Section
Filed: 05:02 PM 12/16/2019
U.C.C. Initial Filing No: 2019 8956786

Service Request No:  20198670545

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ICE ENERGY HOLDINGS INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 EL PASEO | SANTA BARBARA | CA | 93101 | US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| HEATLEY | DAVID | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1031 W. MONTANA ST. | CHICAGO | IL | 60614 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products  thereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | **6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrator

EXHIBIT 2  PAGE  99

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| (302) 483-7293 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| GWEN.CHANG@TELOSLEGALCORP.COM |

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

TELOS LEGAL CORP.

1012 COLLEGE ROAD, SUITE 201

DOVER, DE 19904

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:04 PM 12/16/2019**
**U.C.C. Initial Filing No: 2019 8956968**

**Service Request No:   20198670671**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| ICE ENERGY HOLDINGS INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 EL PASEO | SANTA BARBARA | CA | 93101 | US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| MINAKAMI TRUST | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 50 SUNNIEHOLME DRIVE | FAIRFIELD | CT | 06824 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:

**All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products  thereof.**

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
| --- |

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| --- | --- |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrator

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT 2  PAGE  100

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(302) 483-7293

**B. E-MAIL CONTACT AT FILER (optional)**
GWEN.CHANG@TELOSLEGALCORP.COM

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

TELOS LEGAL CORP.

1012 COLLEGE ROAD, SUITE 201

DOVER, DE 19904

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:07 PM 12/16/2019**
**U.C.C. Initial Filing No: 2019 8957131**

**Service Request No:  20198670805**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ICE ENERGY HOLDINGS INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 EL PASEO | SANTA BARBARA | CA | 93101 | US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| VOYAGER OCEAN LIMITED | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| WICKHAMS CAY II | ROAD TOWN, TORTOLA | | VG1110 | VG |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products thereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

International Association of Commercial Administrator

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

EXHIBIT 2  PAGE  101

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(302) 483-7293

**B. E-MAIL CONTACT AT FILER (optional)**
GWEN.CHANG@TELOSLEGALCORP.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

TELOS LEGAL CORP.

1012 COLLEGE ROAD, SUITE 201

DOVER, DE 19904

US

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:10 PM 12/16/2019**
**U.C.C. Initial Filing No: 2019 8957214**

**Service Request No: 20198670904**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ICE ENERGY HOLDINGS INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 120 EL PASEO | SANTA BARBARA | CA | 93101 | US |

**2. DEBTOR'S NAME** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZEZZA | DAVID | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 28 PALACE GARDENS TERRACE | LONDON | | W8 4RP | GB |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, whether now owned or hereafter acquired, wherever located, and the proceeds and products  thereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

EXHIBIT 2  PAGE  102

# FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT ("**Agreement**") is made as of February 5, 2016 by and between Ice Energy Holdings Inc. ("**Seller**") with its principal business office, as of this date, located at 3 East De La Guerra Street, Santa Barbara, CA 93101 and DHN Capital, LLC dba NATIONS INTERBANC, a Delaware limited liability company ("**Purchaser**").  This Agreement is made with reference to the following facts and circumstances:

## R E C I T A L S:

A.      The purpose of this Agreement and the financing provided herein is commercial in nature and is not for household, consumer, family, residential and/or personal use.

B.      The parties hereby enter into this Agreement, upon such terms and conditions as are hereinafter set forth, to provide for (i) the terms and conditions upon which Purchaser desires to purchase various accounts from, and provide accounts receivable financing to, Seller, and (ii) such other terms and conditions as the parties deem appropriate.

## A G R E E M E N T:

NOW THEREFORE, in consideration of the foregoing Recitals and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.      _Key Terms and Fees_.  As consideration for providing accounts receivable financing and other services to Seller herein, Purchaser shall be paid the fees and other charges on the terms set forth on Exhibit "A" and Exhibit "B" attached hereto.

2.      _Key Definitions_.  This Section 2 includes certain key definitions used in this Agreement.  All other capitalized terms used in this Agreement shall have the respective meanings assigned to such terms in Exhibit "C".  To the extent any capitalized term is not defined in Section 1 or Exhibit "C", such term shall have the respective meaning assigned to such term in the California version of the Uniform Commercial Code.

(a)      "**Account**" – All accounts as defined in the UCC and all goods represented therefrom, including the right of stoppage in transit, replevin and reclamation, and including the Proceeds thereof.

(b)      "**Account Debtor**" - a Person indebted to Seller pursuant to an Account subject to this Agreement.

(c)      "**Eligible Account**" - an Account, which means a right to payment for goods sold or services rendered, which is acceptable for purchase as determined by Purchaser in its sole and absolute discretion.

(d)      "**Factoring Fee**" - the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account at the time of purchase by Purchaser, for each Factoring Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the Purchase Date to and including the Late Payment Date.

(e)      "**Maximum Amount**" -  the maximum sum total of credit Purchaser shall extend to Seller and its Account Debtors at any one time as set forth on Exhibit "A".

(f)      "**Late Payment Date**" - the date which is the number of days after the Invoice Date, as defined as Repurchased in Exhibit "A".

(g)      "**Misdirected Payment Fee**" – fifteen percent (15%) of the amount of any payment on account or One Thousand Dollars ($1,000.00), whichever is greater, of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser on the next business day following the date of receipt by Seller.

Initials _CC_

EXHIBIT 3  PAGE  103

(h)    **"Rebates"** - The net reserve amount held by Purchaser and available to Seller for release for each Purchased Account paid during the preceding period.  Seller understands and agrees no Rebates are made by Purchaser if an Event of Default has occurred with respect to Seller.

(i)    **"Reserve Account"** - a bookkeeping account on the books of the Purchaser representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance of its duties and obligations under this Agreement.  No reserve amount is rebated if an Event of Default has occurred with respect to Seller.

(j)    **"Schedule of Accounts"** - a form supplied by Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement.

3.    <u>Sale; Purchase Price; Billing; Reserve.</u>

(a)    <u>Assignment and Sale</u>.

(i)    Seller hereby absolutely, irrevocably and unconditionally sells, transfers and delivers to Purchaser as absolute owner (and Purchaser hereby accepts on the terms set forth herein), such of Seller's Accounts as are listed from time to time on the Schedule of Accounts as determined in Purchaser's sole and absolute discretion.

(ii)    Seller shall execute a Schedule of Accounts form from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement.

(iii)    Each Schedule of Accounts shall be accompanied by such documentation supporting and evidencing the Account provided by Seller as Purchaser shall from time to time request.

(iv)    Purchaser shall have the right, but not the obligation, to purchase from Seller such Accounts as Purchaser determines in its sole and absolute discretion to be Eligible Accounts, so long as the unpaid balance of Purchased Accounts does not exceed, before and after such purchase, the Maximum Amount.  If Purchaser elects not to purchase an Account, then Purchaser may:  (i) return the Account and associated documentation to Seller, or (ii) propose to purchase the Account upon alternative terms and conditions than those set forth herein, or (iii) treat the Account as a Serviced Account to the identified Account Debtor for collection and payment.  Any payments received in connection with a Serviced Account by Purchaser shall be deposited into the Reserve Account.

(v)    Purchaser shall pay the Purchase Price, less any amounts due to Purchaser from Seller, including, without limitation, any amounts due under Section 3(c)(i), of any Purchased Account, to Seller within two (2) business days of the Purchase Date, whereupon the Account shall be deemed purchased hereunder.  Notwithstanding the Purchase Price and advance rate percentage indicated on <u>Exhibit "A"</u> attached hereto, Purchaser may, in its sole and absolution discretion, without notice to the Seller, advance any percentage less than the indicated advance rate.

(b)    <u>Billing</u>.  Purchaser shall have the right, but not the obligation, to send a monthly statement to all Account Debtors obligated on Purchased Accounts itemizing their account activity during the preceding billing period.  All such Account Debtors will be instructed to make payments to Purchaser via a Notice of Assignment to be supplied by Purchaser and signed by both Seller and Purchaser.

(c)    <u>Reserve Account</u>.

(i)    Purchaser shall pay to Seller monthly, any amount by which the Reserve Account exceeds the Required Reserve Amount.

(ii)    Purchaser may charge the Reserve Account with any Obligation at any time and without prior notice to Seller, including any amounts due from Seller to Purchaser under this Agreement.

(iii)    Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account and/or may demand payment to meet the Reserve Account minimum(s) stated herein;

Initials                                                     -2-

EXHIBIT 3  PAGE  104

(iv)     Seller hereby grants Purchaser a first priority security interest in the Reserve Account and agrees that the Reserve Account shall be subject to Purchaser's right of offset and shall not be deemed a special account under California law.

(v)     Upon termination of this Agreement, Purchaser may retain the Reserve Account:

(A)     for ninety (90) days following such termination to be applied to payment of any Obligations that were known or unknown to Purchaser at the time of termination; any amount not so applied shall be promptly remitted to Seller at the conclusion of such 90 day period, and

(B)     in the event of early termination of this Agreement or if the account is bought by another financier before the expiration of the Term, and

(C)     in the event Seller is in default of this Agreement in any manner including, without limitation, any Event of Default, and

(D)     Unless and until Seller has executed and delivered to Purchaser the Release.

(vi)     Exposed Payments.

(A)     Upon termination of this Agreement Seller shall pay to Purchaser (or Purchaser may retain), to hold in a non-segregated non-interest bearing account the amount of all Exposed Payments (the **"Preference Reserve"**).

(B)     Purchaser may charge the Preference Reserve with the amount of any Exposed Payments which Purchaser pays to the bankruptcy estate of the Account Debtor which made the Exposed Payment, on account of a claim asserted under Section 547 of the Bankruptcy Code.

(C)     Purchaser shall refund to Seller from time to time that balance of the Preference Reserve for which a claim under Section 547 of the Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Account Debtor or otherwise.

4.     Authorization for Purchases.  Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon facsimile, email or other instructions received from anyone purporting to be an officer, employee or representative of Seller without any further investigation or inquiry.

5.     Fees and Expenses.  Seller shall pay to Purchaser:

(a)     Factoring Fee.  The Factoring Fee on the date on which a Purchased Account is Closed as stated in Exhibit "A" attached hereto.

(b)     Misdirected Payment Fee.  Fifteen percent (15%) of the Face Amount of the Invoice or One Thousand Dollars ($1,000.00), whichever is greater, Misdirected to anyone but Purchaser unless received by Purchaser within one (1) business day of misdirection.

(c)     Out-of-pocket Expenses.  The out-of-pocket expenses as charged by Purchaser in the administration of this Agreement such as Account Debtor notification, wire transfer fees, postage, and courier fees (such as FedEx).  See Exhibit "B" for a schedule of charges as amended without prior notice from time to time.

6.     Repurchase Of Accounts.  Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account:

(a)     Any Purchased Account, the payment of which has been disputed by the Account Debtor obligated thereon, Purchaser being under no obligation whatsoever to determine the bona fides of such dispute;



EXHIBIT 3  PAGE  105

(b)     Any Purchased Account for with Seller has breached any warranty, covenant, duty or other obligation under this Agreement as stated herein, including any of the Exhibits attached hereto.

(c)     Any Purchased Account owing from an Account Debtor which Purchaser determines, in its sole and absolute discretion, has become insolvent;

(d)     All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination of this Agreement; and

(e)     Any Purchased Account which remains unpaid beyond the Late Payment Date.

7.     <u>Security Interest and Continuing Guaranty</u>.

(a)     As collateral securing the Obligations and as further inducement for Purchaser to enter into this Agreement, Seller hereby grants to Purchaser as collateral to secure the repayment of any and all Obligations and liabilities whatsoever of Seller a continuing security interest and first in priority lien, under the Uniform Commercial Code, in the Collateral. Seller shall not, without Purchaser's written consent (which may be withheld in Purchaser's sole and absolute discretion), grant a security interest in any of the Collateral to any other Person.

(b)     Notwithstanding the creation of the above security interest, the relationship of the parties shall be that of Purchaser and Seller of accounts, and not that of lender and borrower.

8.     <u>Clearance Days</u>. For all purposes under this Agreement, Purchaser reserves the right to add Clearance Days to the date on which any payment is received by Purchaser.

9.     <u>Authorization to Purchaser.</u>

(a)     Seller hereby irrevocably authorizes Purchaser at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

(i)     receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the Collateral or the Proceeds thereof,

(ii)     take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable (in Purchaser's sole and absolute discretion) to effect collection of or other realization upon the accounts and other Collateral,

(iii)     after an Event of Default, change the address for delivery of mail to Seller and to receive and open mail addressed to Seller,

(iv)     extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts or other Collateral which includes a monetary obligation and discharge or release any Account Debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such Account Debtor), without affecting any of the Obligations,

(v)     pay any sums necessary to discharge any lien, encumbrance, assessment, regulatory requirement or fine which is senior to Purchaser's security interest in the Collateral, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable,

(vi)     file in the name of Seller or Purchaser or both, (1) mechanics lien or related notices or (2) claims under any payment bond, surety bond and/or trust fund, in connection with goods or services sold by Seller, and

(vii)     notify any Account Debtor obligated with respect to any Purchased Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser, and

Initials                                          -4-

EXHIBIT 3  PAGE  106

(viii)    communicate directly with Seller's Account Debtors at any time to verify the amount and validity of any Account created by Seller and to collect and direct such payments as Purchaser deems necessary to protect its security interest therein, **however regular verifications will be handled differently if outlined as such in Exhibit "A".**

(b)    Seller authorizes Purchaser at any time and from time to time to file any initial UCC financing statements and amendments thereto that:

(i)    indicate the Collateral as all assets of Seller or words as agreed to and described in the Collateral description, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail;

(ii)    contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether Seller is an organization, the type of organization, the state of organization of Seller, and any organization identification number issued to Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates and to file any Correction Statement in the name of Seller under 9-518 of the Uniform Commercial Code that Purchaser deems necessary (in its sole and absolute discretion) to preserve or protect its rights hereunder; and

(iii)    contain a notification that the Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously interfering with Purchaser's rights;

(iv)    advises third parties that any notification of Seller's Account Debtors obligated on Purchased Accounts will interfere with Purchaser's collection rights.

(c)    Seller hereby releases and exculpates Purchaser, its direct and indirect officers, partners, members, managers, shareholders, officers, directors, trustors, trustees, beneficiaries, employees and designees of Purchaser (collectively, **"Covered Persons"**), from any liability arising from any acts under this Agreement or in furtherance thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for intentional and willful misconduct.  In no event will Purchaser or any Covered Person have any liability to Seller for lost profits or punitive or other special or consequential damages.  Without limiting the generality of the foregoing, Seller hereby releases Purchaser and each Covered Person from any claims which Seller may now or hereafter have arising out of Purchaser's endorsement and deposit of checks issued by Seller's customers stating that they were in full payment of an account, but issued for less than the full amount which may have been owed on the account.

(d)    Seller authorizes Purchaser to accept, indorse and deposit on behalf of Seller any checks tendered by an account debtor "in full payment" of its obligation to Seller.  Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under Section 3-311 of the Uniform Commercial Code, or otherwise.

(e)    Seller authorizes Purchaser to affix an electronic version of the signature of Seller to any notification of assignment or other communication sent by Purchaser to an Account Debtor.

(f)    Seller grants to Purchaser, at any time and in Purchaser's sole and absolute discretion, to notify the Account Debtor's of Seller to make payments for Seller directly to Purchaser, whether said payments are factored or non-factored Accounts, in each case, with respect to Purchased Accounts at any time and with respect to the other Accounts only after the occurrence of an Event of Default.

(g)    Seller shall defend title to the Collateral, and to the security interest of Purchaser therein, against any and all claims and demands of third parties.  Seller shall indemnify and save Purchaser harmless from all losses, costs, damages, liabilities or expenses, including reasonable attorneys' fees, that Purchaser may sustain or incur by reason of defending or protecting Purchaser's security interest in and to the Collateral or the priority thereof, except Claims caused by Purchaser's gross negligence or willful misconduct.

Initials                     -5-

EXHIBIT 3  PAGE  107

10.    <u>Automated Clearing House (ACH) Authorization</u>.  In order to satisfy any of the Obligations, Purchaser is hereby authorized by Seller to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller wherever located and Seller waives its right to protest any debit instituted by Purchaser performed to satisfy Seller obligations.

11.    <u>Covenants By Seller</u>.

(a)    Seller shall comply with all of the accounting, invoicing and other procedures set forth on <u>Exhibit "A"</u> attached hereto.

(b)    After written notice by Purchaser to Seller, electronically or otherwise, and automatically, without notice, after an Event of Default, Seller shall not, without the prior written consent of Purchaser (which may be withheld in Purchaser's sole and absolute discretion) in each instance, (a) grant any extension of time for payment of any of the Accounts, (b) compromise or settle any of the Accounts for less than the full amount thereof, (c) release in whole or in part any Account Debtor, or (d) grant any credits, discounts, allowances, deductions, reductions, return authorizations or the like with respect to any of the Accounts.

(c)    From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser or its designee shall have access, upon reasonable notice during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where the Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its representatives to make copies of such books and records or extracts therefrom as Purchaser may request.  In connection therewith, without expense to Purchaser, Purchaser may use (and Seller agrees to grant access to, including providing applicable pass codes) any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole and absolute discretion, deems appropriate.  Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller.

(d)    Before sending any Invoice to an Account Debtor obligated on a Purchased Account, Seller shall mark same with a notice of assignment as may be required by Purchaser.

(e)    Seller will grant no extensions or compromises with respect to the contents, terms or value of any Account, in each case, with respect to the Purchased Accounts at any time and with respect to the other Accounts only after the occurrence and during the continuance of an Event of Default.

(f)    Seller shall pay when due all payroll, income, property and other taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require.

(g)    Seller shall not create, incur, assume or permit to exist any lien upon or with respect to any Collateral now owned or hereafter acquired by Seller.

(h)    Seller is properly licensed under federal, state and local laws and regulations and agrees to maintain each license in good standing throughout the term hereof.

(i)    Seller shall maintain insurance on all insurable property owned or leased by Seller in the manner, to the extent and against at least such risks (in any event, including but not limited to fire and business interruption insurance) as usually maintained by owners of similar businesses and properties in similar geographic areas, including without limitation, all Collateral.   All such insurance shall be in amounts and form and with insurance companies acceptable to Purchaser in its sole and absolute discretion.  Seller shall furnish to Purchaser:  (a) upon written request, any and all information concerning such insurance carried; (b) as requested by Purchaser, lender loss payable endorsements (or their equivalent) in favor of Purchaser; and (c) as requested by Purchaser, certificates of insurance.  All policies of insurance shall provide for not less than thirty (30) days' (ten (10) days for non-payment of premium) prior written cancellation notice to Purchaser.

Initials                                                     -6-

EXHIBIT 3  PAGE  108

(j)     Notwithstanding that Seller has agreed to pay the Misdirected Payment Fee, Seller shall deliver in kind to Purchaser on the next banking day following the date of receipt by Seller of the amount of any payment on account of a Purchased Account.

(k)     <u>Avoidance Claims</u>.

(i)     Seller shall indemnify, defend (with counsel selected by Purchaser and reasonably acceptable to Seller) and hold wholly harmless Purchaser from any loss arising out of the assertion of any Avoidance Claim and shall pay to Purchaser on demand the amount thereof.

(ii)     Seller shall notify Purchaser within two (2) business days of it becoming aware of the assertion of an Avoidance Claim.

(iii)     This provision shall survive any termination of this Agreement.

12.     <u>Representations and Warranties</u>.  Seller represents and warrants that:

(a)     It is fully authorized to enter into this Agreement and to perform hereunder;

(b)     This Agreement constitutes its legal, valid and binding obligations enforceable against its terms;

(c)     Neither the execution and delivery of this Agreement, nor the incurrence of the obligations herein set forth, nor the consummation of the transactions herein contemplated, nor compliance with the terms of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of, constitute a default under, any bond, note or other evidence of indebtedness or any contract, indenture, mortgage, deed of trust, loan, agreement, lease or other agreement or instrument to which the Seller is a party or by which any of Seller's properties may be bound.

(d)     Seller's residence or principal place of business is set forth in the Preamble.  Seller shall notify Purchaser in writing at least fifteen (15) days prior to any change in Seller's residence or principal place of business.  Such notice shall include the following capitalized language:  "NOTE: THIS CHANGE OF ADDRESS MAY AFFECT UCC FILINGS OF PURCHASER."

(e)     Seller is solvent and in good standing in the State of its organization and has not voluntarily or involuntarily instituted any bankruptcy proceedings;

(f)     The Purchased Accounts:

(i)     Are and will remain bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business; and

(ii)     Are and will remain unconditionally owed and when sold to Purchaser will be without any defenses, disputes, offsets, counterclaims, or rights of return or cancellation;

(iii)     Will not include any sales to any Person which is affiliated in any manner whatsoever with Seller (or any of its members, partners, shareholders or other owners) or in any way not an "arm's length" transaction; and

(iv)     Will not include any Account Debtor as to which Seller has received notice of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of such Account Debtor regarding Purchased Accounts;

(g)     Seller will promptly notify Purchaser of any proposed change of Seller's name, identity, legal entity, entity structure, use of trade names, place of organization, place of business and any proposed change in officers, principals, partners, owners and office address;

Initials                                                     -7-

EXHIBIT 3  PAGE  109

(h)     Seller has good and marketable title to the Collateral and has not subjected the Collateral to any mortgage, pledge, lien, encumbrance or charge, and no other Person has any right, title, interest, claim or lien in or to the Collateral except for the rights created by this Agreement. Seller hereby covenants that neither the Collateral nor any portion thereof shall be transferred, conveyed, assigned or encumbered except in favor of Purchaser as contemplated by this Agreement. Seller agrees that Seller will not consent to the placement of any lien, security interest or encumbrance upon the Collateral;

(i)     Seller will not sell, lease, transfer or otherwise dispose of all or substantially all of its property or assets, or consolidate or merge into or with any other Person without thirty (30) days writing notice to Purchaser;

(j)     All funds and Proceeds provided as a result of this Agreement are not for, and will not be used for, household, consumer, family, residential or personal use and the financing herein shall be commercial in nature and thus governed by the Uniform Commercial Code as adopted in California; and

(k)     Seller acknowledges and agrees that it shall have no right, title, or interest in or to any Account purchased by Purchaser or the funds or instruments constituting payment in connection therewith, that the Proceeds of the Account are the sole property of Purchaser, and that any use or interference with said Proceeds by Seller may result in criminal and civil liability.

13.     <u>Account Disputes</u>. Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense. Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "**Resolve**") the dispute upon such terms as Purchaser in its sole and absolute discretion deem advisable, for Seller's account and risk and at Seller's sole expense. Upon the occurrence of an Event of Default Purchaser may resolve such issues with respect to any Account of Seller.

14.     <u>Default</u>.

(a)     <u>Events of Default</u>. Each of the following events will constitute an "**Event of Default**" hereunder:

(i)     Seller defaults in the payment of any Obligations or in the performance of any provision contained in this Agreement (including the Exhibits attached hereto) or of any other agreement now or hereafter entered into with Purchaser, any warranty, representation, covenant or duty contained herein is false, unfulfilled or violated in any way, howsoever minor,

(ii)     Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings,

(iii)     any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser under the Continuing Guaranty or notifies Purchaser of such guarantor's intention to rescind, modify, terminate or revoke the Continuing Guaranty of the Guaranteed Obligations (as defined in the Continuing Guaranty), or the Continuing Guaranty shall cease to be in full force and effect for any reason whatever,

(iv)     Purchaser in its reasonable business judgment deems itself insecure with respect to the prospect of repayment or performance of the Obligations,

(v)     Seller attempts to terminate this Agreement prior to the expiration date,

(vi)     Seller terminates this Agreement without proper notice,

(vii)     Seller, or any of its partners, members, managers, shareholders, officers, directors, employees, trustees, trustors, beneficiaries or other representatives misappropriates or embezzles funds, commits a felony, or commits any negligence, fraud or willful misconduct in carrying out its duties hereunder,

(viii)     Purchaser receives a report or other notice indicating that another Person claims a secured interest in all or any portion of the Collateral; and

Initials                                     -8-

EXHIBIT 3  PAGE  110

(ix)     Seller or guarantor files for bankruptcy or becomes subject to an involuntary bankruptcy proceeding.

(b)     Notice of Default.  Immediately upon discovery of a Default, Purchaser shall notify, by means of either email or facsimile, that Seller is in Default of the Factoring And Security Agreement.

(c) Effect of Default.

i.     Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement and/or applicable law (or in equity), Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become due and payable without notice, institute default pricing on any and all open invoices and retain reserve account funds.

ii.     Upon an Event of Default, Purchaser may:  (a) Notify Account Debtors, (b) take possession of Collateral with or without judicial process, (c) require Seller to assemble Collateral and records pertaining to Accounts, (d) take control of goods relating to any Account, (e) enter the premises of Seller and take possession of books and records, (f) hold Seller liable for deficiency, (g) not marshal assets in favor of Seller or any guarantor, (h) electronically withdraw funds through the ACH or EFT system, (i) terminate this Agreement, (j) grant extensions, compromise claims and settle Accounts for less than face value, without prior notice to Seller, (h) advance any amount less than the stated advance rate as shown on the attached Exhibit "A", and (i) exercise any and all other rights and remedies that may be available under the UCC, at law, in equity or otherwise.

15.     Account Stated.  Purchaser may render to Seller a statement setting forth the transactions arising hereunder.  Each statement shall be considered correct and binding upon Seller as an account stated, except to the extent that Purchaser receives, within sixty (60) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement, and then it shall be binding against Seller as to any items to which it has not objected.

16.     Waiver.  No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Purchaser may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver by Purchaser of any breach or default by Seller hereunder be deemed a waiver of any default or breach subsequently occurring.  All rights and remedies granted to Purchaser hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy.  The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have.  Any waiver, permit, consent or approval by Purchaser of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

17.     Termination; Effective Date.

(a)     This Agreement shall continue in full force and effect until terminated by written notice for an initial term of six (6) months or one hundred eighty (180) days (whichever is greater) from the date hereon and shall automatically renew for successive six (6)-month periods.  This Agreement may be terminated prior to the end of the initial term or any renewal term (each, a "**Term**") as follows: (a) Seller may terminate this Agreement at the end of the Term or any renewal term, provided Seller gives at least thirty (30) days' written notice prior to the end of the Term; Any such termination shall be effective upon payment to Purchaser in full of all Obligations.  This Agreement may automatically terminate following the occurrence of an Event of Default (as described above).  Upon any such termination following an Event of Default, all Obligations, shall be due and payable in full and such Obligations shall survive this Agreement or any termination hereof.

Initials _CellL_                                                    -9-

EXHIBIT 3  PAGE  111

(b)     Notwithstanding the foregoing, any termination of this Agreement shall not affect Purchaser's security interest in the Collateral and Purchaser's ownership of the Purchased Accounts or its rights hereunder until Complete Termination has occurred. Until such time, this Agreement shall continue in full force and effect, and Purchaser's rights and remedies hereunder shall survive until all Obligations incurred hereunder or in connection herewith have been completed and satisfied by the Seller in full and Seller executes the Release. Until complete termination, Seller must continue to carry out all of its obligations under this agreement.

18.     Amendment. Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by all parties to this Agreement. Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

19.     No Lien Termination without Release. In recognition of the Purchaser's right to have its attorneys' and expert witness fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, to the maximum extent allowed by law, Purchaser shall not be required to record or file any terminations or satisfactions of any of Purchaser's liens on the Collateral (including, without limitation, any UCC 3 Financing Statement Amendment) unless and until Seller has executed and delivered to Purchaser the Release. Seller understands that this provision constitutes a waiver of its rights under Section 9-513 of the UCC.

20.     Conflict. Unless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control.

21.     Survival. All representations, warranties and agreements herein contained shall be effective so long as any portion of this Agreement remains executory.

22.     Severability. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

23.     Enforcement. This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each party and its respective attorneys, and each party states that this agreement is fair and reasonable in all respects and shall be construed accordingly. The parties waive the provisions of California Civil Code Section 1654 and any amendments thereto.

24.     Relationship of Parties. The relationship of the parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser.

25.     Attorneys' Fees. Seller agrees to reimburse Purchaser on demand for the actual amount of all costs and expenses, including reasonable attorneys' and expert witness fees, which Purchaser has incurred or may incur in enforcing this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof; protecting, preserving or enforcing any lien, security interest or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims; the actual costs, including photocopying, travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Seller is a party; the actual amount of all costs and expenses, including reasonable attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan thereunder.

26.     Entire Agreement. This Agreement supersedes all other agreements and understandings between the parties hereto, verbal or written, express or implied, relating to the subject matter hereof. No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement. No course of dealing, course of

Initials                                      -10-

EXHIBIT 3  PAGE  112

performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

27.     Choice of Law.  This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of California, regardless of the location or organization of the Parties or the Collateral.

28.     Venue; Jurisdiction.  Subject to Section 29, the parties agree that any arbitration, suit, action or proceeding arising out of the subject matter hereof, or the interpretation, performance or breach of this Agreement, shall, if Purchaser so elects, be instituted solely in the JAMS location described in Section 29 or any court sitting in Orange County, California (the "**Acceptable Forums**").  Each party agrees that the Acceptable Forums are convenient to it, and each party irrevocably submits to the jurisdiction and venue of the Acceptable Forums, irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement, and, to the maximum extent allowed by law, waives any and all objections to jurisdiction or venue that it may have under the laws of California or otherwise in JAMS or those courts in any such suit, action or proceeding.  Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser as a consequence of such proceeding having been commenced in a forum other than an Acceptable Forum.

29.     Alternative Dispute Resolution.  Notwithstanding the provisions of Section 28, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by final, binding, non-public arbitration at the Irvine, California office of JAMS (or, if that office is closed, the JAMS office that is closest to Irvine, California) before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules, with the exception that Rule 16.2(h) shall not apply, and the Parties expressly agree that one (1) dispositive motion per side shall be permitted.  Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  The arbitrator shall be selected in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.  The arbitrator shall award to the prevailing party the costs reasonably incurred by the prevailing party in connection with the arbitration, including attorneys' and expert witness fees and costs, and the costs of the arbitrator.

30.     Assignment.  Purchaser may assign its rights and delegate its duties hereunder without any prior notice to Seller.  Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser.  Seller shall not assign or encumber all or any portion of this Agreement and/or its duties or obligation hereunder and any assignment or encumbrance shall be deemed to be null and void ab initio.

31.     Disclaimer of Liability.  In no event will Purchaser be liable to Seller for any lost profits, lost savings or other consequential, incidental, punitive or special damages resulting from or arising out of or in connection with this agreement, the transactions or relationships contemplated hereby or Seller's performance or failure to perform hereunder, even if Seller has been advised of the possibility of such damages.

32.     Indemnification.  Seller agrees to indemnify and defend (with counsel selected by Purchaser) Purchaser against and hold Purchaser wholly harmless from any and all manner of suits, claims, liabilities, demands and expenses (including reasonable attorneys' and expert fees and collection costs) (collectively, "Claims") resulting from or arising out of this Agreement, whether directly or indirectly, including the transactions or relationships contemplated hereby (including the enforcement of this Agreement), any breach or violation (or threatened breach or violation) of this Agreement by Seller, and/or any other failure by Seller to perform or observe its obligations under this Agreement.

33.     Nonrecourse Nature of the Agreement.  No direct or indirect partner, member, manager, shareholder, officer, director, trustee or beneficiary of Purchaser (collectively, the "**Nonrecourse Parties**") shall be personally liable in any manner or to any extent under or in connection with this Agreement, and Seller shall not have any recourse to any assets of any of the Nonrecourse Parties to satisfy any liability, judgment or claim that may be obtained or made against any such Nonrecourse Party under this Agreement.  The foregoing limitation of liability is in addition to, and not in

Initials                                                     -11-

EXHIBIT 3  PAGE  113

limitation of, any limitation on liability applicable to any Nonrecourse Parties provided by law or by this Agreement or any other contract, agreement or instrument.

34. Notice.

(a) All notices required to be given to Seller shall be deemed given upon the first to occur of (i) deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means to a receiver under the control of such party; or (iii) actual receipt by such party or an employee or agent of such party.

(b) All notices to Purchaser hereunder shall be deemed given upon actual receipt by a responsible officer of Purchaser.

35. Counterparts. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written.

SELLER:                           Ice Energy Holdings Inc.
                                  a Delaware Corporation

                                  By: _____
                                      Name: Charles Michael Costenbader
                                      Title: Chief Financial Officer

PURCHASER:                        NATIONS INTERBANC
                                  a Delaware Limited Liability Company

                                  By: _____
                                      Name: Thomas H. Neigor
                                      Title: President/CEO

Initials _____

-12-

EXHIBIT 3  PAGE  114

**TERM AND RATE SHEET**

**Maximum Amount**: One Million Dollars ($1,000,000.00) is the maximum amount of Accounts Purchaser will purchase from Seller at any one time. Purchaser shall have the right, but not the obligation, to periodically raise or lower the Maximum Amount in its sole and absolute discretion.

**Advance Rate**: Eighty percent (80%), with Advances provided on a periodic basis based on submitted Accounts. Advance payments will be done via ACH, unless special request for wire transfer.

**Factoring Fee**: Purchaser will charge the following rates for accounts based on the number of days from the Advance Date through and including the Close Date:

| Factoring Fee Periods | | Factoring Fee Percentages Charged |
|---|---|---|
| 0-30 days | ➔ | 1.8% of Gross Face Amount |
| Every days thereafter | ➔ | Daily Proration (.06% or 6 basis points per day) |
| 90 days after Invoice Date ➔ | | Invoice Repurchased |

**Rebate**: Every month, Purchaser will return to Seller the reserve on each account paid during the preceding period, net of any factoring fees, chargebacks, creditbacks and fee assessments, as applicable.

**Re-Purchase**: Seller shall be required to re-purchase any account sold to Purchaser that is not paid by the account debtor ninety (90) days after its Invoice Date.

**Monthly Minimum**: No monthly minimum.

**Documentation**: Each time an account is sold to Purchaser, Seller must submit any and all documentation, original or copy, as requested, necessary to process and receive payments in the regular course of business. Seller will submit invoices to their Customers, with copies provided to Purchaser along with a Schedule of Accounts.

**Term**: This Agreement is in effect for the stated term of six (6) months, renewing in successive six (6) month periods thereafter if Seller does not notify Purchaser of cancellation within thirty (30) days prior to a six (6) month renewal term.

**Miscellaneous**:

1) Invoice payments will be mailed to Nations Interbanc's lockbox and deposited into Nations Interbanc's deposit account, however checks will continue to be made payable to Ice Energy Holdings Inc.

2) Access to Ice Energy Holdings Inc.'s customers' online tools to verify purchase orders and invoices will be required if available. For those customers that don't have these online tools, an appropriate invoice verification process will be established. Our objective is to operate "behind the scenes" with the Seller's customers throughout the verification process and we likely will accomplish this by Seller establishing a group email ID such as billing@ice-energy.com, and using this email to submit invoices to, and request payment status from, their customers. Nations Interbanc will be included in the group email distribution list.

3) Purchaser will require Seller to provide updated financial information on a periodic basis such as monthly accounts receivable aging reports and other financial statements.

4) All invoices for a factored customer will be passed through Purchaser, even if a specific invoice was not factored (i.e., all "non-factored" invoices will still be passed through Purchaser). Payments received for these non-factored invoices will be passed through to the Seller as soon as possible upon clearance of the funds at Purchaser's bank. Note: the Purchaser does not require the Seller to factor all of their customers' accounts and Purchaser will work with Seller to confirm which customers are to be factored.

Initials 

EXHIBIT 3  PAGE  115

## EXHIBIT "B"

## FEE SCHEDULE

*Effective 01/01/2015*

| As Utilized, Fees: | Unit Price: |
|---|---|
| Wire Transfers | $15.00 |
| Airborne/Federal Express | $13.00 |
| ComChecks/Money Orders | $10.00 |
| Return Checks (NSF) | $30.00 |
| Application Fee (One Time Only) | $500.00 |

Initials *cc*

EXHIBIT 3  PAGE  116

**DEFINITIONS AND INTERPRETATIONS**

1) **"Account"** – All accounts as defined in the UCC and all goods represented therefrom, including the right of stoppage in transit, replevin and reclamation, and including the Proceeds thereof.

2) **"Account Debtor"** - a Person indebted to Seller pursuant to an Account subject to this Agreement.

3) **"Avoidance Claim"** - any claim that any payment received by Purchaser from or for the account of an Account Debtor is avoidable under the Bankruptcy Code or any other debtor relief statute.

4) **"Clearance Days"** - (i) Three (3) business days for checks drawn on banks located within California and for all electronic funds transfers, and (ii) Five (5) business days for all other payments.

5) **"Closed"** - a Purchased Account is closed upon the first to occur of (i) receipt of full payment by Purchaser or (ii) the unpaid Face Amount has been charged to the Reserve Account by Purchaser pursuant to the terms hereof.

6) **"Collateral"** - all now owned and hereafter acquired personal property and fixtures, and Proceeds thereof (including Proceeds of Proceeds) including without limitation, Accounts, Chattel Paper, Deposit Accounts, Goods, Inventory, Equipment, Intellectual Property, Instruments, including Promissory Notes, Investment Property, Documents, General Intangibles, all other collateral described herein and the Proceeds thereof.

7) **"Complete Termination"** – Complete Termination occurs upon the satisfaction of the following conditions:

    a)      Payment in full of all Obligations to Purchaser; and

    b)      If Purchaser has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Seller, acknowledgement from any beneficiaries thereof that Purchaser or any other issuer has no outstanding direct or contingent liability therein; and

    c)      Seller has executed and delivered to Purchaser the Release.

8) **"Eligible Account"** - an Account, which means a right to payment for goods sold or services rendered, which is acceptable for purchase as determined by Purchaser in the sole and absolute discretion.

9) **"Exposed Payments"** – Payments received by Purchaser from an Account Debtor which has become subject to a bankruptcy proceeding, to the extent such payments cleared said Account Debtor's deposit account within ninety (90) days of the commencement of said bankruptcy case.

10) **"Event of Default"** - See Section 14 of the Agreement.

11) **"Face Amount"** - the face amount due on an Account at the time of purchase.

12) **"Factoring Fee"** - the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account at the time of purchase by Purchaser, for each Factoring Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the Purchase Date to and including the Late Payment Date.

13) **"Factoring Fee Percentage"** – See Exhibit "A" attached to the Agreement.

14) **"Factoring Fee Period"** – See Exhibit "A" attached to the Agreement.

EXHIBIT 3  PAGE  117

15) **"Invoice"** - the document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates, whether in electronic or paper form, relating to or supporting an Invoice.

16) **"Invoice Date"** - the date of the Invoice.

17) **"Late Payment Date"** - the date which is the number of days after the Invoice Date, as defined as Repurchased in Exhibit "A".

18) **"Maximum Amount"** - the maximum sum total of credit Purchaser shall extend to Seller and its Account Debtors at any one time as set forth on Exhibit "A" to the Agreement.

19) **"Misdirected Payment Fee"** – fifteen percent (15%) of the amount of any payment on account or One Thousand Dollars ($1,000.00), whichever is greater, of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser on the next business day following the date of receipt by Seller.

20) **"Notice of Assignment"** – in form to be supplied by Purchaser, if applicable.

21) **"Obligations"** - all present and future obligations owing by Seller to Purchaser whether or not for the payment of money, whether or not evidenced by any note, Invoice or other instrument, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, whether arising before, during or after the commencement of any bankruptcy case in which Seller is a debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations.

22) **"Parties"** - Seller and Purchaser.

23) **"Person"** - a natural person, partnership (whether general or limited), limited liability company, trust, estate, association, corporation, custodian, nominee, or any other individual or entity, in its own or any representative capacity.

24) **"Proceeds"** – all "proceeds" (as such term is defined in the UCC) and shall include, but not be limited to, (i) any and all payments (in any form whatsoever) made or due and payable to Seller from time to time in connection with any seizure or forfeiture of all or any part of the Collateral by any governmental body, authority, bureau or agency (or any person acting under color of governmental authority), (ii) any and all amounts paid or payable to Seller for or in connection with any sale or other disposition of Seller's interest in Collateral, (iii) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

25) **"Purchase Date"** - the date on which Seller has been advised in writing, electronically or otherwise, that Purchaser has agreed to purchase an Account or Purchaser advances funds against such Account.

26) **"Purchase Price"** - the Face Amount of the Invoice.

27) **"Purchased Accounts"** - Accounts purchased hereunder which have not been Repurchased.

28) **"Rebate"** - The net reserve amount held by Purchaser and available to Seller for release for each Purchased Account paid during the preceding period. Seller understands and agrees no Rebates are made by Purchaser if an Event of Default has occurred with respect to Seller.

29) **"Release"** – the General Release in the form to be supplied by Purchaser.

30) **"Repurchased"** - an Account has been repurchased when Seller has paid to Purchaser the then unpaid Face Amount.

EXHIBIT "C"

EXHIBIT 3  PAGE  118

31) **"Reserve Account"** - a bookkeeping account on the books of the Purchaser representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance with the provisions hereof. No reserve amount is rebated if an Event of Default has occurred with respect to Seller.

32) **"Required Reserve Amount"** - the difference between (i) the Advance Rate multiplied by the Face Amount, and (ii) the Purchase Price, with such resulting amount held by the Purchaser until the Purchased Account is paid by the Account Debtor and the next Rebate is due.

33) **"Schedule of Accounts"** - a form supplied by Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement.

34) **"Serviced Account"** - an Account that is not purchased by Purchaser hereunder, but for which Seller sends an invoice to the Account Debtor for payment on behalf of Seller and payment is made pursuant to notification of assignment (aka, "non factored" account).

35) **"Uniform Commercial Code"** or **"UCC"** – The Uniform Commercial Code (UCC) as adopted in California.

36) **Interpretations**. Whenever under this Agreement Purchaser is entitled to exercise its sole and absolute discretion (or no standard is otherwise provided), Purchaser may exercise such discretion in its sole, absolute and subjective discretion taking into account those interests or factors as Purchaser desires, including Purchaser's own interests, without having any duty or obligation to consider the interests of Seller. Time is of the essence of this Agreement. The consent, approval or determination of Purchaser required or permitted under this Agreement may be withheld or granted in Purchaser's sole and absolute discretion, unless this Agreement otherwise expressly provides that such consent, approval or determination may not be unreasonably withheld or otherwise requires such consent, approval or determination to be reasonable. The Recitals and each of the Exhibits attached hereto are incorporated herein by reference and expressly made a part of this Agreement for all purposes. References to any Recital or Exhibit made in this Agreement shall be deemed to include this reference and incorporation. Where the context so requires, the use of the neuter gender shall include the masculine and feminine genders, the masculine gender shall include the feminine and neuter genders, the feminine gender shall include the masculine and neuter genders, and the singular number shall include the plural and vice versa. The Section headings of this Agreement are used herein for reference purposes only and shall not govern, limit, or be used in construing this Agreement or any provision hereof. Whenever a provision in this Agreement uses the words "include," "including," or words of similar meanings, the words shall not be construed so as to be limiting but shall be treated as a illustrative and shall be deemed to also include the words "without limitation." Any agreement to pay any amount and any assumption of liability herein contained, express or implied, shall be only for the benefit of the parties and their respective successors and assigns, and such agreements and assumptions shall not inure to the benefit of the obligees of any indebtedness or any other party, whomsoever, deemed to be a third-party beneficiary of this Agreement. Each party hereto acknowledges that (i) each party hereto is of equal bargaining strength; (ii) each such party has actively participated in the drafting, preparation and negotiation of this Agreement; and (iii) any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement, any portion hereof, or any Exhibits attached hereto. This Agreement, together with the Exhibits attached hereto, contain the entire understanding among the parties hereto, and supersede any prior or contemporaneous understanding, correspondence, negotiations or agreements among the parties respecting the within subject matter. Each party hereto agrees to perform any further acts, and to exercise and deliver any further documents and instruments, as may be reasonably necessary or desirable to implement the provisions of this Agreement.

EXHIBIT 3  PAGE  119

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address) |

CT Corporation
555 Capitol Mall, Suite 1000
Sacramento, CA 95814

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 02:19 PM 02/10/2016**
**U.C.C. Initial Filing No: 2016 0811040**

**Service Request No:  20160722754**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Ice Energy Holdings Inc.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **3 East De La Guerra Street** | **Santa Barbara** | **CA** | **93101** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **DHN Capital, LLC** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **PO Box 18735** | **Irvine** | **CA** | **92623** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**All present and future assets of the Debtor.**

**Notice – Pursuant to an agreement between debtor and secured party, debtor has agreed not to grant a security interest in the collateral, described herein and in any future commercial tort claims to any other secured party. Accordingly, the acceptance of any such security interest by anyone other than the above secured party may constitute the tortious interference with secured party's rights.**

**In the event that any entity is granted a security interest in debtor's accounts, chattel paper or general intangibles contrary to the above, the secured party asserts a claim to any proceeds thereof received by such entity.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**DE**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

EXHIBIT 4  PAGE  120

███████████
███████████
███████████

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO:   (Name and Address) |
|---|

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:06 PM 01/05/2018**
**U.C.C. Initial Filing No: 2016 0811040**
**Amendment No: 2018 0112819**
**Service Request No:   20180085284**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**2016081040    Filed 02/10/2016**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

OR

6a. ORGANIZATION'S NAME
**Ice Energy Holdings Inc.**

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

OR

7a. ORGANIZATION'S NAME
**Ice Energy Holdings Inc.**

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 El Paseo | **Santa Barbara** | **CA** | **93101** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

OR

9a. ORGANIZATION'S NAME
**DHN Capital, LLC**

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA:
**DE SOS**

International Association of Commercial Administrators (IACA)

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

EXHIBIT 4  PAGE  121

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CT Corporation
555 Capitol Mall, Suite 1150
Sacramento, CA 95814
ATTN: Lindsay Wilhite

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:09 PM 12/17/2019**
**U.C.C. Initial Filing No: 2016 0811040**
**Amendment No: 2019 9004560**
**Service Request No: 20198704132**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
**2016 0811040   Filed 02/10/2016**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR
6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
**Ice Bear SPV # 1, LLC**

OR
7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS
C/O Argo Infrastructure Partners, 650 Fifth Ave, 17/F | CITY New York | STATE NY | POSTAL CODE 10019 | COUNTRY USA

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**DHN Capital, LLC**

OR
9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
**DE SOS    Debtor: Ice Energy Holdings Inc.**

International Association of Commercial Administrators (IACA)

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

EXHIBIT 5  PAGE  122

## ASSIGNMENT OF CREDIT AGREEMENTS AND SECURITY INTEREST

THIS ASSIGNMENT OF CREDIT AGREEMENTS AND SECURITY INTEREST (this "Agreement") is entered effective as of December 17, 2019 (the "Closing Date"), by and between Ice Bear SPV #1, LLC (the "Purchaser"), and DHN Capital, LLC, d/b/a Nations Interbanc ("Seller").

### R E C I T A L S :

WHEREAS, Seller has made certain revolving Credits and a term Credit (collectively, the "Credit") to Ice Energy Holdings, Inc. ("Borrower") pursuant to that certain Factoring and Security Agreement, dated as of February 5, 2016 between Seller and the Borrower (as amended, the "Credit Facility"), which Credit Facility evidences the Borrower's obligations under the same.

WHEREAS, the Credit Facility has been secured by a first priority security interest ("Security Interest" evidenced by that certain UCC-1 Filing in favor of Seller filed with the Delaware Department of Stated under initial filing number 20160811040.

WHEREAS, Purchaser desires to purchase from Seller all of Seller's interest in the Credit Facility, and all other documents and instruments evidencing, securing, guarantying or otherwise entered into in connection with the Credit Facility, including the Security Interest (collectively, together with the Credit Facility, the "Credit Agreements"), in each case upon the terms and conditions contained in this Agreement.

NOW, THEREFORE, in consideration of the payment of the Purchase Price (as defined below), the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby covenant and agree as follows:

1.      Purchase and Transfer of Credit Agreements.  In consideration of the payment by Purchaser to Seller of the sum set forth on the closing statement set forth on Schedule I hereof (the "Purchase Price") by wire transfer to Seller's in accordance with the wire transfer instructions set forth on Exhibit A hereto on the Closing Date in immediately available funds and satisfaction of all of the terms and conditions set forth herein, Seller hereby sells, assigns and transfers on an as-is, where-is basis, without recourse, representation or warranty, expressed or implied, except the representations and warranties expressly made by Seller in favor of Purchaser in Sections 2.1 and 2.2 of this Agreement (collectively, the "Express Warranties"), all of Seller's right, title and interest in and to the Credit Agreements.

2.      Representations and Warranties.

2.1      Seller hereby represents and warrants to Purchaser as follows:

(a)      Seller (i) is a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, and (ii) has all requisite authority to sell and assign the Credit Agreements to Purchaser and to perform its obligations hereunder.  This Agreement has been duly and validly executed and delivered by

EXHIBIT 6  PAGE  123

Seller and constitutes the valid and binding agreement of it, enforceable against it in accordance with its terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

(b)    There are no actions or proceedings against, or investigations of, the Seller pending, or, to the knowledge of the Seller, threatened, before any court, arbitrator, administrative agency or other tribunal (i) asserting the invalidity of this Agreement or (ii) seeking to prevent the sale of the Credit or the consummation of the transaction contemplated by this Agreement by the Seller.

(c)    Attached hereto as Exhibit A is a true, correct and complete listing of all of the Credit Agreements as of the Closing Date. Except as set forth on Exhibit A, each Credit Agreement, including without limitation the Security Interest, is in full force and effect and no Credit Agreement, including without limitation the Security Interest has been modified, amended, altered, satisfied, canceled, subordinated or rescinded.

(d)    Borrower is in default under the terms and provisions of the Credit Agreements.  The currently outstanding payment obligations of Borrower under the Credit Agreements (the "Claim") are correctly reflected under number 1. on Exhibit B attached hereto.

(e)    The Claim is a bona fide outstanding claim against Borrower, and is an enforceable obligation arising in the ordinary course of business for Seller, for services rendered to Borrower by Creditor in good faith.

(f)    The Claim amount is the total amount due to Creditor with respect to the Claim, net of any applicable discounts, reserves, allowances or other deductions to which Borrower is lawfully entitled.  The Claim is currently due and owing and is payable in full.

(g)    Creditor is the sole owner of the Claim and, to Creditor's knowledge, the Claim is free and clear of any liens, encumbrances or rights of third parties.

(h)    Creditor has not previously sold, transferred, encumbered or released any part of the Claim.

2.2    The Credit Facility, Credit Agreements and Security Interest are being sold and assigned on an "AS IS", "WHERE IS" basis, "WITH ALL FAULTS" and "WITHOUT RECOURSE" as of the Closing Date.  Except for the Express Warranties, Seller makes no warranties or representations of any type, kind, character or nature, whether expressed or implied, statutory or otherwise, in fact or in law.

**WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER MAKES NO REPRESENTATION OR WARRANTY CONCERNING THE DUE EXECUTION OF ANY OF THE CREDIT AGREEMENTSS BY BORROWER, ANY GUARANTOR OR ANY OTHER PERSON OR ENTITY; THE LEGALITY, VALIDITY OR ENFORCEABILITY OF ANY OF THE CREDIT AGREEMENTS; THE EXISTENCE, LOCATION, QUANTITIES, QUALITY OR VALUE OF ANY**

2

EXHIBIT 6  PAGE  124

**COLLATERAL REFERRED TO IN ANY OF THE CREDIT AGREEMENTSS; THE TITLE TO ANY OF THE COLLATERAL; THE NEGOTIABILITY OF ANY INSTRUMENT INCLUDED IN ANY OF THE CREDIT AGREEMENTSS; THE SUFFICIENCY OF ANY OF THE CREDIT AGREEMENTS TO CREATE OR PERFECT A SECURITY INTEREST IN, LIEN UPON OR SECURITY TITLE TO ANY COLLATERAL REFERRED TO IN ANY OF THE CREDIT AGREEMENTS; THE PRIORITY OF ANY SECURITY INTEREST OR OTHER LIEN PURPORTED TO BE CREATED BY ANY OF THE CREDIT AGREEMENTSS; THE COLLECTABILITY OF ANY INDEBTEDNESS DUE UNDER ANY OF THE CREDIT AGREEMENTSS; OR THE SOLVENCY OR FINANCIAL RESPONSIBILITY OR CAPACITY OF BORROWER OR ANY GUARANTOR.**

      2.3     Purchaser represents and warrants to Seller as follows:

      (a)     Purchaser (i) is a limited liability company, duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, (ii) has all requisite authority to own, lease and operate its properties and to carry on its business as now being conducted and (iii) is duly qualified or licensed and otherwise authorized to transact business in each jurisdiction in which the properties owned, leased or operated by it or the nature of the business conducted by it makes such qualification or license necessary.

      (b)     Purchaser has the requisite power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereunder. The execution and delivery of this Agreement by Purchaser, the performance by it of its obligations hereunder and the consummation by it of the transactions contemplated hereunder have been duly and validly authorized. This Agreement has been duly and validly executed and delivered by it and constitutes the valid and binding agreement of it, enforceable against it in accordance with its terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

      (c)     Neither the negotiation, execution or delivery of this Agreement by Purchaser nor the performance by Purchaser of its obligations hereunder nor the consummation by such entity of the transactions contemplated hereunder has or will (i) constitute a breach or violation under Purchaser's constituent documents, (ii) constitute a breach, violation or default (or be an event which, with notice or lapse of time or both, would constitute a default) under, or result in the termination of, or result in the creation of any lien upon any of Purchaser's properties or assets under, any material note, bond, mortgage, indenture, deed of trust, license, lease, agreement or other instrument to which Purchaser is a party or by which any of its properties or assets are bound or (iii) constitute a violation of any order, writ, injunction, decree, statute, rule or regulation of any court or governmental authority applicable to it or any of its properties or assets, in each case except for such breaches, violations, defaults, terminations or liens that could not reasonably be expected to have a material adverse effect on the ability of Purchaser to perform its obligations hereunder.

3

EXHIBIT 6  PAGE  125

(d)     No authorization, consent or approval of, or filing with, any court or any public body or authority and no consent or approval of any third party or parties is necessary for the consummation by Purchaser of the transactions contemplated by this Agreement.

(e)     There are no actions or proceedings against, or investigations of, the Purchaser pending, or, to the knowledge of the Purchaser, threatened, before any court, arbitrator, administrative agency or other tribunal (i) asserting the invalidity of this Agreement or (ii) seeking to prevent the purchase of the Credit or the consummation of the transaction contemplated by this Agreement by the Purchaser.

(f)     Purchaser has received and reviewed the Credit Agreement and the other Credit Agreements and such other documents and information deemed appropriate by it to make its own credit analysis and decision to purchase the Credit Agreements and the Credit.

All representations and warranties made by the parties in this Section shall survive the closing of this transaction and/or any termination of this Agreement.

3.    <u>Payment of the Purchase Price; Purchaser Covenants.</u>

3.1    On the Closing Date, Purchaser shall pay the Purchase Price to Seller by wire transfer of immediately available funds as shown on the attached Exhibit B. From and after the date hereof, Purchaser expressly assumes and undertakes to perform all of the obligations of Seller under the Credit Agreements.

3.2    Seller shall record the assignments of Credit Agreements with the Secretary of State of the State of Delaware on the Closing Date. Should the filing of Credit Agreements assignment be effective later than the effective date and time of any bankruptcy filing of Borrower, Seller shall return the Purchase Price to Purchaser promptly upon Purchaser's written request thereof, and Purchaser shall transfer the Credit Agreements back to Seller upon receipt of payment from Seller.

4.    <u>Credit Assumption; Indemnification.</u>    Seller hereby assigns all rights, responsibilities and obligations with respect to the Credit and the Credit Agreements to Purchaser and Purchaser hereby expressly assumes all responsibilities and obligations with respect to the Credit and the Credit Agreements, arising on and after the Closing Date. Purchaser shall indemnify Seller and, solely in their capacity as such, Seller's attorneys, successors, assigns, servicers and sub-servicers, parent, subsidiary and/or affiliated companies and the shareholders, trustees, officers, directors, partners, members, employees, agents, representatives and attorneys of all of the foregoing and their respective heirs, executors, administrators, attorneys, successors, legal representatives and assigns (collectively, the "<u>Seller Parties</u>") against, and hold them harmless from, any loss, liability, claim, damage or expense (including reasonable legal fees and expenses) suffered or incurred by any such Seller Party to the extent arising out of the Credit or the duties, responsibilities, or obligations of the "Lender" under the Credit Agreements ("<u>Seller Claims</u>"), in each case solely to the extent such Seller Claims arise or accrue after the Closing Date and are based on facts first existing after the Closing Date. Each of

4

EXHIBIT 6  PAGE  126

Purchaser's obligations under this Section shall survive the closing of this transaction and/or any termination of this Agreement.

5.    <u>Further Assurances</u>.  Purchaser and Seller hereby agree to execute and deliver, both at and after the Closing Date, such instruments and take such further actions as another party hereto may, from time to time, reasonably request in order to effectuate the purposes and to carry out the terms of this Agreement.  Seller agrees, for a period of 90 days after the Closing Date, to support Purchaser in the transitioning of Claims and Credit Agreements as Purchaser may reasonably request, and in the management of Purchaser's relationship with Borrower.  In addition, Seller shall cooperate with the transition of the lockbox to a bank specified by Purchaser. For a period of 90 days after the Closing Date, Seller shall instruct its lockbox bank ("Lockbox Bank") to forward to Purchaser at the address below, and at Purchaser's expense, any remittances, mail or other items that Lockbox Bank subsequently receives in lockboxes located at Lockbox Bank, in connection with Borrower's collateral.  In the event that any payment that is the subject of remittance by Seller to Purchaser pursuant to this paragraph is sought to be recovered by the payor or a representative thereof (including a trustee in bankruptcy or assignee for the benefit of creditors) on the grounds of preference or any other avoidance theory, then Seller shall promptly advise Purchaser in writing.  Thereafter, Purchaser shall have the exclusive right and obligation, at its sole cost and expense, to contest, defend or settle such claim. Purchaser hereby indemnifies and holds Seller harmless from any loss or expense arising out of the assertion of such claims.

6.    <u>Returned Items</u>.  Purchaser acknowledges that all of Seller's rights are reserved (a) in and to any checks or similar instruments for the payment of money heretofore received by Seller in connection with its lending arrangement with Borrower or otherwise received by Seller from Borrower and its account debtors (such checks or instruments collectively referred to as the "Instruments"), (b) in and to any money due or to become due under or by any reason with respect to the Instruments, and (c) in and to any right to claim that such moneys are due. Purchaser hereby agrees to pay to Seller, upon Seller's demand (if made within 90 days of the Closing Date), the amount of any Instrument for which Borrower was given credit in computing the balance of its indebtedness to Seller if such Instrument is hereafter returned unpaid for any reason whatsoever, together with all expenses incident to the processing and return of any such Instrument.  The obligations of Purchaser under this paragraph shall not be conditioned upon prior demand by Seller upon Borrower or any other person or entity with respect thereto.

7.    <u>Waiver of California Civil Code Section 1542</u>.  The Obligors acknowledge that there is a risk that subsequent to the execution of this acknowledgement, reaffirmation and release they may incur or suffer losses, damages or injuries which are in some way caused by the transactions referred to in the Credit Agreement or other Credit Agreements, but which are unknown and unanticipated at this time. Obligors do hereby assume the above mentioned risks and agree that this acknowledgement, reaffirmation and release shall apply to all unknown or unanticipated results of the transactions and occurrences described herein, as well as those known and anticipated, and upon advice of counsel, Obligors do hereby knowingly waive any and all rights and protections under California Civil Code Section 1542 which section has been duly explained and reads as follows:

5

EXHIBIT 6  PAGE  127

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

8.  Legal Advice Obtained.  The advice of legal counsel has been obtained by each party prior to signing this Amendment and each party executes this Amendment voluntarily, with full knowledge of its significance, and with the express intention of effecting the legal consequences provided by Section 1541 of the California Civil Code, namely, the extinguishment of obligations except for the executory provisions of this Amendment.

9.  Choice of Law; Submission to Jurisdiction.  The laws of the State of California shall govern the rights and obligations of the parties to this Agreement, and the interpretation and construction and enforceability thereof, and any and all issues relating to the transactions contemplated herein.  Each party hereto hereby consents to the non-exclusive jurisdiction of any United States Federal Court sitting in or with direct or indirect jurisdiction over the Southern District of California or any California state court sitting in Los Angeles, California in any action, suit or other proceeding arising out of or relating to this Agreement, and each party hereto irrevocably agrees that all claims and demands in respect of any such action, suit or proceeding may be heard and determined in any such court and irrevocably waives any objection it may now or hereafter have as to the venue of any such action, suit or proceeding brought in any such court or that such court is an inconvenient forum.

10.  Broker Fees.  There are no brokers involved in this transaction.

11.  Final Agreement.  This Agreement (including the exhibits hereto) constitutes the final and entire agreement and understanding of the parties with respect to the purchase and sale of the Credit, and any terms and conditions not set forth in this Agreement are not a part of this Agreement and the understanding of the parties hereto may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.  No variation, modification, or changes hereof shall be binding on either party hereto unless set forth in a document executed by both parties.

12.  Severability.  If any paragraph, section, sentence, clause or phrase contained in this Agreement shall become illegal, null or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining paragraphs, sections, sentences, clauses or phrases contained in this Agreement shall not be affected thereby to the extent that the intent of the parties hereto can be carried out absent such provision.

13.  Counterparts.  This Agreement may be executed in separate counterparts, each of which shall be an enforceable document, but all of which together shall constitute one and the same document.

14.  Benefit of Agreement.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

6

EXHIBIT 6  PAGE  128

15.    <u>No Third-Party Beneficiaries</u>.    There are no third-party beneficiaries of this Agreement.

16.    <u>Time of the Essence</u>.    Time is of the essence in the execution and performance of this Agreement.

17.    <u>Rule of Construction</u>.    The parties acknowledge that each party and its counsel have reviewed this Agreement and the parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

18.    <u>Waiver of Jury Trial</u>.    TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, PURCHASER AND SELLER HEREBY IRREVOCABLY AND EXPRESSLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE CREDIT AGREEMENT, ANY OTHER CREDIT AGREEMENTS, THE OBLIGATIONS OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY OR EITHER PARTY'S ACTIONS IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT HEREOF OR THEREOF.    EACH OF PURCHASER AND SELLER ACKNOWLEDGES THAT SUCH WAIVER IS MADE WITH FULL KNOWLEDGE AND UNDERSTANDING OF THE NATURE OF THE RIGHTS AND BENEFITS WAIVED HEREBY, AND WITH THE BENEFIT OF ADVICE OF COUNSEL OF ITS CHOOSING.

19.    <u>Judicial Reference</u>.

19.1    The parties prefer that any dispute between them be resolved in litigation subject to a Jury Trial Waiver as set forth in Section 20 herein, but the California Supreme Court has held that such pre-dispute jury trial waivers are unenforceable.    This Section will be applicable until: (i) the California Supreme Court holds that a pre-dispute jury trial waiver provision similar to that contained in Section 20 herein is valid or enforceable; or (ii) the California Legislature passes legislation and the governor of the State of California signs into law a statute authorizing pre-dispute jury trial waivers and as a result such waivers become enforceable.

19.2    Other than the exercise of provisional remedies (any of which may be initiated pursuant to applicable law), any controversy, dispute or claim (each, a "Claim") between the parties arising out of or relating to this Agreement will be resolved by a reference proceeding in California in accordance with the provisions of Section 638 et seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including whether the Claim is subject to the reference proceeding.    Venue for the reference proceeding will be in the Superior Court or Federal District Court in Los Angeles County, California (the "Court").

19.3    The referee shall be a retired Judge or Justice selected by mutual written agreement of the parties.    If the parties do not agree, the referee shall be selected by the Presiding Judge of the Court (or his or her representative).    A request for appointment of a referee may be

7

EXHIBIT 6  PAGE  129

heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted.  The referee shall be appointed to sit with all the powers provided by law.  Pending appointment of the referee, the Court has power to issue temporary or provisional remedies.

19.4    The parties agree that time is of the essence in conducting the reference proceedings.  Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (a) set the matter for a status and trial-setting conference within fifteen (15) days after the date of selection of the referee, (b) if practicable, try all issues of law or fact within ninety (90) days after the date of the conference and (c) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

19.5    The referee will have power to expand or limit the amount and duration of discovery.  The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever.  Unless otherwise ordered based upon good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service.  All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

19.6    Except as expressly set forth in this Agreement, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding.  All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript.  The party making such a request shall have the obligation to arrange for and pay the court reporter.  Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial.

19.7    The referee shall be required to determine all issues in accordance with existing case law and the statutory laws of the State of California.  The rules of evidence applicable to proceedings at law in the State of California will be applicable to the reference proceeding.  The referee shall be empowered to enter equitable as well as legal relief, provide all temporary or provisional remedies, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a trial, including without limitation motions for summary judgment or summary adjudication.  The referee shall issue a decision pursuant to CCP Section 644 the referee's decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court.  The final judgment or order or from any appealable decision or order entered by the referee shall be fully appealable as provided by law.  The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this provision.

8

EXHIBIT 6  PAGE  130

19.8    If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or Justice, in accordance with the California Arbitration Act Section 1280 through Section 1294.2 of the CCP as amended from time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

19.9    THE PARTIES RECOGNIZE AND AGREE THAT ALL DISPUTES RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY.  AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY DISPUTE BETWEEN THEM WHICH ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

IN WITNESS WHEREOF, the parties have executed this Assignment of Credit Agreements as of the date first written above.

PURCHASER:

ICE BEAR SPV #1, LLC

By: _____
Name: _____Michael Madia_____
Title: _____Authorized Person_____

SELLER:

DHN Capital, LLC dba NATIONS INTERBANC

By: _____
Name: _____Tom Meiser_____
Title: ____CEO/President_____

9

EXHIBIT 6  PAGE  131

# SCHEDULE I

### Closing Statement

|   |   |   |
|---|---|---|
| 1. | Outstanding Obligations: | $1,297,665.49 |
| 2. | Estimated bank charges, legal fees and recording charges for UCC terminations and satisfaction/releases and other expense reserves (collectively, the "Expense Reserve"): | $2,000.00 |
|   | TOTAL PURCHASE PRICE AMOUNT | $1,299,665.49 |

Schedule I - 1

BN 17354586v4

EXHIBIT 6  PAGE  132

**EXHIBIT A**

**LIST OF CREDIT AGREEMENTS**

See attached

A-1

EXHIBIT 6  PAGE  133

**EXHIBIT B**

**WIRE TRANSFER INSTRUCTIONS**



A-2

EXHIBIT 6  PAGE  134

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*):   **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:(1)APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (f);(2)APPROVING COMPROMISE OF SECURED CREDITOR'S CLAIM PURSUANT TO F. R. BANKR. PROC. 9019;(3)REJECTING OR ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES;(4)APPROVING BUYER, SUCCESSFUL BIDDER, AND ANY BACK-UP BIDDERS, AS GOOD-FAITH PURCHASERS PURSUANT TO 11 U.S.C. § 363(m);(5)AUTHORIZING PAYMENT OF UNDISPUTED LIENS AND OTHER ORDINARY COSTS OF SALE, EXCEPT AS TO PURPORTED JUNIOR SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF THOMAS H. CASEY IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **January 24, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) **January 24, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 24, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Mark Wallace, 411 W. 4th Street, Santa Ana, CA  92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 24, 2020 | Kelly Adele | *Kelly Adele* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
0.0

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**VIA U.S. MAIL**
Ice Energy Holdings, Inc.
1575 Sunflower Avenue
Costa Mesa, CA 92626-1532
**Debtor**

ACP Thule Investments LLC,
C/O ARGO Infr
650 Fifth Ave, 17/F
New York, NY 10019-6108

Ice Bear SPV #1, LLC
650 Fifth Ave, 17th Floor
New York, NY 10019-6108

T.C. Collins & Associates, Inc.
c/o James E. McCormick III, , Esq.
Agent for Service of Process
3 Corporate Plaza Drive, Suite 240
Newport Beach, CA  92660

T.C. Collins & Associates, Inc.
3600 Birch Street, Suite 220
Newport Beach, CA  92660

**Electronic Mail Notice List**
Thomas H Casey (TR)     msilva@tomcaseylaw.com, thc@trustesolutions.net
Caroline Djang     caroline.djang@bbklaw.com,
evelyn.gomez@bbklaw.com;sansanee.wells@bbklaw.com
Glen Dresser     gombd@aol.com
Craig S Ganz     ganzc@ballardspahr.com,
BKTDocket_West@ballardspahr.com;hartt@ballardspahr.com
Jeffrey I Golden     jgolden@wgllp.com,
kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov